UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 13-30185

---

LUTHER SCOTT, JR., for himself and all other persons similarly situated; LOUISIANA STATE CONFERENCE OF THE NAACP, for themselves and all other persons similarly situated,

*Plaintiffs – Appellees*

v.

TOM SCHEDLER, in his official capacity as Louisiana Secretary of State,

*Defendant – Appellant*

---

On Appeal from the United States District Court
For the Eastern District of Louisiana

---

# BRIEF OF *AMICUS CURIAE* DĒMOS IN SUPPORT OF APPELLEES

---

JOHN CUSHMAN
Stern, Shapiro, Weissberg & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02144
(617) 742-5800

LISA J. DANETZ
DAVID RUBINO
DEMOS
358 Chestnut Hill Ave.
Suite 303
Brighton, MA 02135
(617) 232-5885

# CERTIFICATE OF INTERESTED PARTIES

Case No. 13-30185

LUTHER SCOTT, JR., for himself and all other person similarly situated; LOUSIANA STATE CONFERENCE OF THE NAACP, for themselves an all other persons similarly situated,

*Plaintiffs – Appellees,*

v.

TOM SCHEDLER, in his official capacity as the Louisiana Secretary of State,

*Defendant – Appellant.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of First Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal.

1. All persons listed by the Appellant
2. Tom Schedler, in his official capacity as Louisiana Secretary of State, Appellant
3. Celia R. Cangelosi, Counsel for Appellant
4. Carey T. Jones, Counsel for Appellant
5. Luther Scott, Jr. Appellee
6. Louisiana State Conference of the NAACP, Appellee
7. NAACP Legal Defense &educational Fund, Inc., Counsel for Appellees

8. Sherrilyn Ifill, Counsel for Appellees
9. Ryan P. Haygood, Counsel for Appellees
10. Natasha M. Korgaonkar, Counsel for Appellees
11. Leah C. Aden, Counsel for Appellees
12. Jonathan J. Smith, Counsel for Appellees
13. Elise C. Boddie, Counsel for Appellees in the District Court and Circuit Court proceedings until May 17, 2013
14. Dale E. Ho, Counsel for Appellees in the District Court and Circuit Court proceedings until April 29, 2013
15. Kristen M. Clarke, Counsel for Appellees in the District Court proceedings until August 5, 2011
16. Project Vote, Counsel for Appellees
17. Sarah Brannon, Counsel for Appellees
18. Niyati Shah, Counsel for Appellees
19. Michelle Rupp, Counsel for Appellees
20. Brian Mellor, Counsel for Appellees
21. Nicole Kovite Zeitler, Counsel for Appellees in the District Court proceedings until February 6, 2012
22. Ronald L. Wilson, Counsel for Appellees
23. Fried, Frank, Harris, Shriver & Jacobson LLP, Counsel for Appellees
24. Michael B. de Leeuw, Counsel for Appellees
25. Israel David, Counsel for Appellees
26. Jesse R. Loffler, Counsel for Appellees
27. David S. Yellin, Counsel for Appellees

28. Erica Sollie, Counsel for Appellees in the District Court proceedings
29. Bruce D. Greenstein, in his official capacity as Secretary of the Louisiana Department of Health and Hospitals, former Defendant in the District Court proceedings
30. Kathy H. Kliebert, in her official capacity as Interim Secretary of the Louisiana Department of Health and Hospitals, Defendant in the District Court proceedings
31. Ruth Johnson, in her official capacity as Secretary of Louisiana Department of Children and Family Services, former Defendant in District Court proceedings
32. Suzy Sonnier, in her official capacity as Secretary of Louisiana Department of Children and Family Services, Defendant in District Court proceedings
33. Louisiana Department of Health & Hospitals, Bureau of Legal Services, Counsel for former Defendant Bruce D. Greenstein and Defendant Kathy H. Kliebert
34. Douglas L. Cade, Counsel for former Defendant Bruce D. Greenstein and Defendat Kathy H. Kliebert
35. Brandon J. Babineaux, Counsel for former Defendant Bruce D. Greenstein and Defendant Kathy H. Kliebert
36. David L. McCay, Counsel for former Defendant Bruce D. Greenstein and Defendant Kathy H. Kliebert
37. Kimberly L. Humbles, Counsel for former Defendant Bruce D. Greenstein and Kathy H. Kliebert
38. Rebecca C. Clement, Counsel for former Defendant Bruce D. Greenstein and Kathy H. Kliebert
39. Stephen R. Russo, Counsel for former Defendant Bruce D. Greenstein and Defendant Kathy H. Kliebert
40. Taylor, Porter, Brooks & Phillips LLP, Counsel for former Defendant Bruce D. Greenstein, Defendat Kathy H. Kliebert, and Defendant Suzy Sonnie

41. Amy C. Lambert, Counsel for former Defendant Bruce D. Greenstein, Defendant Kathy H. Kliebert, and Defendant Suzy Sonnier

42. Harry J. Phillips, Jr., Counsel for former Defendant Bruce D. Greenstein Defendant Kathy H Kliebert and Suzy Sonnier

43. Katia Desrouleaux, Counsel for former Defendant Bruce D. Greenstein Defendant Kathy H Kliebert and Suzy Sonnier

44. State of Louisiana Department of Children and Family Services, Bureau of General Counsel, Counsel for Defendant Suzy Sonnier

45. Amy Colby, Counsel for Defendant Suzy Sonnier

46. Celia m. Williams-Alexander, Counsel for Defendant Suzy Sonnier

47. Eboni M. Townsend, Counsel for Defendant Suzy Sonnier

48. Charles L. Dirks, III, Counsel for Defendant Suzy Sonnier

49. United States of America, Interested Party in District Court proceedings

50. U.S. Department of Justice, Civil Rights Division, Counsel for the United states

51. Anna M. Baldwin, Counsel for the United States

52. U.S. Attorney's Office, New Orleans, Counsel for the United States

53. Sandra E. Gutierrez, Counsel for the United States

54. Dēmos, A*micus Curiae*

55. Lisa J. Danetz, Counsel for *Amicus Curiae*

56. David Rubino, Counsel for *Amicus Curiae*

57. Stern, Shapiro, Weissberg & Garin, LLP, Counsel for *Amicus Curiae*

58. John Cushman, Counsel for *Amicus Curiae*

Counsel is unaware of any other persons with an interest in this brief.

Dated: May 28, 2013

Respectfully submitted,

Lisa J. Danetz
*Counsel for Amicus Curiae*

## TABLE OF CONTENTS

Certificate of Interested Parties……………………………………………………ii

Table of Contents…………………………………………………………………..vii

Table of Authorities………………………………………………………………...ix

Interest of *Amicus Curiae* ..........................................................................................1

Summary of Argument..................................................................................................2

Argument.......................................................................................................................4

I. PUBLIC ASSISTANCE AGENCIES HAVE GROWN INCREASINGLY RELIANT UPON REMOTE COVERED TRANSACTIONS.........................................................................................4

II. SECTION 7 OF THE NVRA COVERS REMOTE TRANSACTIONS..........................................................................................8

III. STATES THROUGHOUT THE COUNTRY HAVE SUCCESSFULLY IMPLEMENTED REMOTE COVERED TRANSACTION SYSTEMS THAT PROVIDE FOR VOTER REGISTRATION...........................................................................17

Conclusion ..................................................................................................................233

Certificate of Service………………………………………………………………24

Certificate of Compliance with Rule 32(a)…………………………………………27

Appendix

Letter from Duane Berger, Michigan Department of Human Services, to Lisa J. Danetz *et al.* (January 27, 2013)……...………………...A

Texas Works Bulletin 11-01 (Sept. 9, 2010)………………………………..B

Texas Integrated Eligibility Redesign System (TIERS) Training Build 81, Lesson 1……………………………………………………..C

Defendant Willden's Answers to First Set of Interrogatories, *National Council of La Raza v. Miller,* No. 3:12-cv-00316-RCJ-VPC (D.Nev. September 10, 2012) (excerpt)………………………..………...D

Virginia Department of Social Services, NVRA (National Voter Registration Act) (June 2008)….……………………………………………E

Memorandum from Brian Moe, Deputy Secretary of State, to Members of the Interdepartmental NVRA Section 7 Work Group (April 28, 2008)…………………………………………………...F

Letter from Duane Berger, Chief Deputy Director to Lisa J. Danetz *et al.* (March 29, 2012)……………………………………………..G

Delbertt Hosemann, Secretary of State, National Voter Registration Act Agency Guide and Training Manual (updated 2010)…….H

State Board of Elections, National Voter Registration Act Agency Voter Registration Training Manual and Guide, at 16 (February 28, 2007)………………………………………………………………………I

State Board of Elections, NVRA Update for County Department of Social Services………………………………………………………J

# TABLE OF AUTHORITIES

## CASES:

*Attar v. UNUM Life Ins. Co. of Am.*, CA 3-96-CV-367-R, 1998 WL 574885 (N.D. Tex. Aug. 31, 1998) . . . . . . . . . . 14

*Carparts Distrib. Ctr., Inc. v. Auto Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994) . . . . . . . . . . 14, 15

*Condon v. Reno,* 913 F. Supp. 946 (D.S.C. 1995) . . . . . . . . . . 2, 4, 11

*National Coalition for Students with Disabilities Education and Legal Defense Fund v. Scales*, 150 F.Supp.2d 845 (D.Md. 2001). . . . . . . . . . 4, 11

*Georgia State Conference of N.A.A.C.P. v. Kemp*, 841 F.Supp.2d 1320 (N.D. Ga. 2012). . . . . . . . . . 8, 10, 11

*Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) . . . . . . . . . . 15

*Nken v. Holder*, 556 U.S. 418 (2009). . . . . . . . . . 10

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997). . . . . . . . . . 14, 15

*Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 33 (2nd Cir. 2000) . . . . . . . . . . 15

*Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279 (11th Cir. 2002). . . . . . . . . . 14-15

## STATUTES, RULES, AND REGULATIONS:

42 U.S.C. § 1973gg-2 ("Section 4 of the NVRA") . . . . . . . . . . 9, 10, 16

42 U.S.C. § 1973gg-5 ("Section 7 of the NVRA"). . . . . . . . . . *passim*

Ala. Admin. Code 820-2-2-.14 . . . . . . . . . . 21

Cal. Elec. Code § 2408 . . . . . . . . . . 18

**OTHER AUTHORITIES:**

Agency Based Voter Registration Pursuant to Section 7 of the NVRA – Implementation Guide for Colorado Public Assistance Agencies. . . . . . . . 19

Associated Press, "Judge: State agencies must provide voter forms," *New Orleans City Business* (May 7, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Beth Morrow, *Harnessing Technology to Improve Medicaid and SCHIP Enrollment and Retention Practices*, The Kaiser Commission on Medicaid and the Uninsured (May 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Bradford L. Smith, *The Third Industrial Revolution: Policymaking for the Internet,* 3 Colum. Sci. & Tech. L. Rev. 1, 107 (2001) . . . . . . . . . . . . . . . . 15

Center on Budget & Policy Priorities, *Online Services for Key Low-Income Benefit Programs* (revised May 1, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Colin Crawford, *Cyberplace: Defining A Right to Internet Access Through Public Accommodation Law*, 76 Temp. L. Rev. 225, 233 & n.31 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15-16

Consent Decree, *United States v. Rhode Island*, No. 1:11-cv-00113-S-LDA (D. R.I. March 18, 2011), Dkt. No. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 19

Consent Order Regarding Plaintiff's Claims Asserting Violations of Section 7 of the National Voter Registration Act, *Valdez v. Duran*, No. 1:09-cv-668-JCH-DJS (D. N.M. Feb. 24, 2011), Dkt. No. 148. . . .13, 21

Defendant Willden's Answers to First Set of Interrogatories, National Council of La Raza v. Miller, No. 3:12-cv-00316-RCJ-VPC (D.Nev. September 10, 2012) (Answer to Interrogatory No. 11) . . . . . . . . . . . . . . . 20

Delbertt Hosemann, Secretary of State, National Voter Registration Act Agency Guide and Training Manual (updated 2010) . . . . . . . . . . . . . . . . . .21

Findings of Fact and Conclusions of Law, *Scott v. Schedler*, CIV.A. 11-926, 2013 WL 264603 (E.D. La. Jan. 23, 2013). . . . . . . . . . . . . . . . . . . . . . . . . .22

H.R.Rep. No. 103–9, 103rd Cong., 1st Sess. (1993), reprinted in 1993 U.S.Code Cong. & Admin.News 105. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Joint Notice of Settlement, *Black Political Empowerment Project v. Aichele*, No. 5:12-cv-03808-CMR (E.D. Pa. August 22, 2012), Dkt. No. 51. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19, 21

Letter from Duane Berger, Michigan Department of Human Services, to Lisa J. Danetz *et al.* (January 27, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Letter from Duane Berger, Michigan Department of Human Services, to Lisa J. Danetz *et al.* (March 29, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

Liz Schott, *Applying Online: Using Technology to Enroll Low-Wage Workers in Public Benefits*, 4 Nw. J. L. & Soc. Pol'y 116 (2009). . . . . 5-6, 7

Memorandum from Brian Moe, Deputy Secretary of State, to Members of the Interdepartmental NVRA Section 7 Work Group (April 28, 2008) . . . . . . .21

Memorandum of Agreement By and Between the United States and the State of Illinois, Department of Human Services (Dec. 15, 2008) . . . . .18-19

National Voter Registration State Compliance Council Report on the National Voter Registration Act of 1993 (Feb. 4, 2013) . . . . . . . . . . . . . . . . . . . . . . 19

Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Motions for Partial Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment, *Ferrand v. Schedler*, No. 2:11-cv-00926-JTM-JCW (E.D.La. Jan. 31, 2012). . . . . . . . . . . . . . . . . . . . .5

Ronnie Cohen & Janine S. Hiller, *Towards A Theory of Cyberplace: A Proposal for A New Legal Framework*, 10 Rich. J.L. & Tech. 2 (2003) . . .15

Settlement Agreement, *Ass'n of Comm. Orgs. for Reform Now v. Levy*, No. 2:08-cv-04084-NKL (W.D. Mo. June 25, 2009), Dkt. No. 133 . . . 13, 19

Settlement Agreement, *Georgia State Conference of the NAACP v. Kemp*, No. 1:11-cv-1849-CAP (N.D. Ga. April 16, 2012), Dkt. No. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19, 20, 21

Settlement Agreement, *Harkless v. Brunner*, No. 1:06-cv-02284-PAG (N.D. Ohio Nov. 25, 2009), Dkt. No. 85. . . . . . . . . . . . . . . . . . . . 13, 19, 21

Settlement Agreement, *Indiana State Conf. of the NAACP v. Gargano*, No. 1:09-cv-0849-TWP-DML (S.D. Ind. May 12, 2011), Dkt. No. 143-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 19, 21

Shani Else, Note, *Courts Must Welcome the Reality of the Modern World: Cyberspace Is A Place Under Title III of the Americans with Disabilities Act*, 65 Wash. & Lee L. Rev. 1121, 1146 (2008). . . . . . . . . . . . . . . . . . . . . 15

State Board of Elections, National Voter Registration Act Agency Voter Registration Training Manual and Guide (February 28, 2007) . . . . . . . . . . 21

State Board of Elections, NVRA Update for County Department of Social Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . 21

Statement of Interest of the United States, *Georgia State Conference of the NAACP v. Kemp*, No. 1:11-cv-01849-CAP (N.D. Ga. Oct. 5, 2011), Dkt. No. 39. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Texas Health and Human Services, Texas Works Handbook § 1521 *et seq*.. . . . . 19

Texas Integrated Eligibility Redesign System (TIERS) Training Build 81, Lesson 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . .19

Texas Works Bulletin 11-01, at 5 (Sept. 9, 2010) . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S. Gov't Accountability Office, Publ'n No. GAO-07-573, *Food Stamp Program: Use of Alternative Methods to Apply for and Maintain Benefits Could Be Enhanced by Additional Evaluation and Information on Promising Practices* 1-2 (2007). . . . . . . . . . . . . . . . . . . . .6, 7

U.S. Department of Justice, *The National Voter Registration Act of 1993: Questions and Answers* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Virginia Department of Social Services, NVRA (National Voter Registration Act) (June 2008) . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . .20, 21

West Virginia Income Maintenance Manual (updated June 30, 2009). . . . . . .20, 21

**STATE ONLINE BENEFITS APPLICATIONS WEBSITES:**

ACCESS Arkansas, https://access.arkansas.gov/Welcome.aspx . . . . . . . . . . . . . .18

ACCESS Florida Online Application System, https://dcf-access.dcf.state.fl.us/access2florida/access/default.do?performAction =init. . . .. . . . . . . . . . . . . . . 19

ACCESS Nebraska, https://dhhs-access-neb-app.ne.gov/AccessNeApp/application/publik/submit/Review.xhtml . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Alabama Medicaid: Eligibility Forms and Applications, http://www.medicaid.alabama.gov/CONTENT/5.0_Resources/5.4_Forms_Library/5.4.2_Eligibility_Forms.aspx . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Arizona OneApp: How do I register to vote?, https://www.healthearizona.org/app/Learnmores.aspx?link_id=34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

Colorado PEAK: Program Eligibility and Application Kit, https://peak.state.co.us/selfservice/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Delaware Assist, https://assist.dhss.delaware.gov/SystemCompatibility.aspx?targetUrl=~/SM/AFS/AFB.aspx. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Georgia COMPASS: Common Point of Access to Social Services, https://compass.ga.gov/selfservice/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Kansas Department for Children and Families Portal, https://kscapportalp.srs.ks.gov/customer/start.swe?SWECmd=Start&SWEHo=kscapportalp.srs.ks.gov . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

Kentucky SNAP Web Portal, https://prd.chfs.ky.gov/SNAPPrescreen/SNAPLanding.aspx . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Maryland: Welcome to SAIL, https://www.marylandsail.org/Default.aspx . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Massachusetts Virtual Gateway Self Service, https://service.hhs.state.ma.us/ierhome/LandingPage.do?method=displayConsumer HomePage&pageSwitch=HOME. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Montana Online Services Demonstration, https://app.mt.gov/walkthrough/mtc/pages/other_information.html . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

My Maine Connection, https://www1.maine.gov/benefits/account/login.html . . .18

New Jersey OneApp, https://oneapp.dhs.state.nj.us/default.aspx. . . . . . . . . . . . . .18

New York Welcome to MyBenefits, https://www.mybenefits.ny.gov/ . . . . . . . . 19

Oklahoma SoonerCare Online Enrollment, http://www.okhca.org/individuals.aspx?id=14469&menu=40&parts=7453 . 20

South Carolina Multi-Agency Partnership Portal, https://scmapp.sc.gov/ . . . . . . .18

Tennessee Online Application Login Page, https://fabenefits.dhs.tn.gov/vip/website/signupservlet. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Utah myCase Online Application, https://jobs.utah.gov/mycase/web/rvw/oa . . . .20

Vermont Benefits Service Center, https://mybenefits.ahs.state.vt.us/Login.aspx. . . . . . . . . . . . . . . . . . . . . . . . 18

Virginia CommonHelp, https://commonhelp.virginia.gov/access. . . . . . . . . . . . . 20

Washington Connection, https://www.washingtonconnection.org/home/ . . . . . . 19

Welcome to Illinois Web Benefits Online Application System, https://wb.dhs.illinois.gov/wbpublic/register/wb/wbHomePre.do. . . . . . . . 19

West Virginia: Welcome to inROADS, https://www.wvinroads.org/inroads/PGM/ASP/SC001.asp. . . . . . . . . . . . .20

## INTEREST OF *AMICUS CURIAE*

Dēmos is a non-partisan public policy organization working for an America where we all have an equal say in our democracy and an equal chance in our economy. Toward that end, one of Dēmos' main areas of work is protecting and expanding the freedom to vote. Since 2004, Dēmos has conducted extensive research on compliance with Section 7 of the NVRA, including statistical analysis and field investigations; published reports on Section 7 of the NVRA; worked with public assistance and election officials in states across the country to improve their compliance with Section 7 of the NVRA; and served as counsel in several cases challenging states' failures to implement the law. With respect to state work specifically, Dēmos staff members have provided technical assistance regarding Section 7 implementation to election and agency officials in Alabama, Maryland, Michigan, Mississippi, North Carolina, West Virginia, and Virginia, and have served as counsel in Section 7 enforcement litigation against officials in the states of Ohio, Missouri, New Mexico, Indiana, Georgia, Pennsylvania, Massachusetts, and Nevada.

None of the parties' counsel has authored this brief in whole or in part. Neither the parties nor their counsel have contributed money that was intended to fund the preparation or submission of the brief. No persons other than the *amicus*

*curiae*, its members, or its counsel have contributed money or services that were intended to fund the preparation or submission of the brief.

## SUMMARY OF ARGUMENT

In passing the NVRA, Congress sought to increase voter participation "across the board, so that all segments of society would have equal opportunities." *Condon v. Reno,* 913 F. Supp. 946, 959 (D.S.C. 1995). To that end, Section 7's public agency registration procedures specifically target low-income citizens and those with disabilities, whom Congress deemed less likely to access voter registration opportunities at motor vehicles departments, by offering voter registration services through the government programs with which these such populations interact.

In recent years, there has been a marked decrease in the number of low-income clients who apply for or manage their government benefits in person – with many interacting with offices only via the Internet, by mail, or by telephone. The voter registration services required to be provided to an individual, however, do not change simply because the individual does not appear in-person at a physical office. The plain language of Section 7 of the NVRA imposes unambiguous duties on public assistance agencies to provide voter registration services "with each application, renewal, recertification, or changes of address with respect to the receipt of benefits," without limitation as to where such "covered transactions"

occur. Every authority that has considered the question at issue here has concluded that the obligations imposed by Section 7(a)(6) on public assistance agencies apply to remote as well as in-person transactions. Indeed, courts have routinely held that a party cannot subvert the goals of federal regulation simply by conducting an identical transaction online or by mail instead of in person, absent explicit statutory language to that effect.

Applying Section 7 to remote transactions is a feasible, appropriate, and important means of serving the goals underlying the NVRA. The overwhelming majority of states that allow remote covered transactions have recognized the applicability of Section 7 to such transactions and have incorporated the offer of voter registration. Indeed, the two non-appealing defendants from the case below — the Louisiana Department of Children and Family Services and the Louisiana Department of Health and Hospitals—have done so as well. The *amicus curiae* urges this Court to adopt a reading of the NVRA consistent with both the Congressional intent that gave birth to the Act and the plain language of the statute as interpreted by courts, federal agencies, and nearly every state that has proactively addressed the issue.

## ARGUMENT

### I. PUBLIC ASSISTANCE AGENCIES HAVE GROWN INCREASINGLY RELIANT UPON REMOTE COVERED TRANSACTIONS.

Congress passed the National Voter Registration Act (NVRA) in 1993 in a deliberate attempt to increase voter participation by using "its authority and responsibility to make the registration process for Federal elections as accessible as possible." H.R.Rep. No. 103–9, 103rd Cong., 1st Sess. (1993), reprinted in 1993 U.S.Code Cong. & Admin.News 105, at 107. "Congress was concerned not only with increasing voter participation, but increasing it across the board, so that all segments of society would have equal opportunities." *Condon,* 913 F. Supp. at 959. To that end, Congress put its intent into broad effect by requiring states to provide voter registration opportunities in a number of ways, including by providing agency-based registration. Section 7's public agency registration procedures specifically target low-income citizens and those with disabilities, segments of the population Congress deemed less likely to visit access voter registration opportunities at the motor vehicles department under Section 5 of the NVRA. *See, e.g., National Coalition for Students with Disabilities Education and Legal Defense Fund v. Scales*, 150 F.Supp.2d 845 (D.Md. 2001) (rejecting interpretation of Section 7 that would "exclude[] the very citizens the legislation was intended to benefit—eligible voters with disabilities."); *Condon,* 913 F. Supp.

at 959 (D.S.C. 1995) (finding agency-based registration designed to reach "minority and low-income Americans" and "disabled Americans").

In recent years, there has been a trend away from interactions in-person at public assistance offices and toward "remote transactions," *i.e.* those by telephone, Internet, or otherwise. The case at bar is an excellent example: While most Department of Health and Hospitals client interactions were face to face in 1993, today some 88% of the Medicaid applications received annually in Louisiana are by mail or online. Associated Press, "Judge: State agencies must provide voter forms," *New Orleans City Business* (May 7, 2012);[1] *see also* Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Motions for Partial Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment at 32, 33, *Ferrand v. Schedler*, No. 2:11-cv-00926-JTM-JCW, (E.D.La. Jan. 31, 2012).[2]

The trend is not limited to Louisiana. There has been a shift around the country toward remote applications, with commentators praising their potential to both reduce administrative costs and improve access to services. *See* Liz Schott,

---

[1] Available at http://neworleanscitybusiness.com/blog/2012/05/07/judge-state-agencies-must-provide-voter-forms.

[2] Available at http://www.naacpldf.org/files/case_issue/Brief%20in%20Support%20of%20PSJ%20 Motion%20(00027215)_1.PDF.

*Applying Online: Using Technology to Enroll Low-Wage Workers in Public Benefits*, 4 Nw. J. L. & Soc. Pol'y 116 (2009) ("Recent technological changes make it easier for states to develop and for applicants to access internet technology to apply for benefits from outside of the welfare office."); Beth Morrow, *Harnessing Technology to Improve Medicaid and SCHIP Enrollment and Retention Practices*, The Kaiser Commission on Medicaid and the Uninsured (May 2007) ("Technology can make it significantly easier for families to learn about, apply for, enroll in, and retain health insurance coverage.").[3] By 2007, the Government Accountability Office observed the broad emergence of such remote transactions:

> While completing the Food Stamp Program application and recertification process has traditionally involved visiting the local assistance office in person for interviews or to submit applications and other documentation, states have begun offering alternatives in the last several years, such as mail-in procedures, call centers, and on-line services.

U.S. Gov't Accountability Office, Publ'n No. GAO-07-573, *Food Stamp Program: Use of Alternative Methods to Apply for and Maintain Benefits Could Be Enhanced by Additional Evaluation and Information on Promising Practices* 1-2 (2007) ("GAO").[4]

---

[3] Available at http://kaiserfamilyfoundation.files.wordpress.com/2013/01/7647.pdf.

[4] Available at http://www.gao.gov/new.items/d07573.pdf.

By the time of the GAO report in 2007, *every* state had begun offering Food Stamp (now SNAP) applications by mail – mail-in forms having become substantially more useful now that they could be accessed and printed from the Internet by many people. *See* GAO at 3; Schott, 4 Nw. J. L. & Soc. Pol'y at *13. In addition, about half of states offered (or planned to offer) applications directly online or by phone. GAO at 3. While use of the services varied, in Florida as many as 90 percent of interviews were already conducted by telephone rather than in person. *Id.* at 14. And the trend has continued, with the number of states offering SNAP registration online growing to 39 – including two of the three states in the Fifth Circuit (Louisiana and Texas – since the GAO report was published. Center on Budget & Policy Priorities, *Online Services for Key Low-Income Benefit Programs*, at 2 tbl. 1 (revised May 1, 2013).[5]

Against this backdrop, the import of this appeal (the first on this issue) becomes clear: exempting remote transactions would drastically limit the ability of low-income citizens to access the voter registration opportunities required by Section 7 of the NVRA. In Louisiana and many other states, nine out of ten public assistance customers would lose the voter registration services they received under the Act a decade ago — all because of the formalistic distinction that agencies now allow clients to mail in their applications, or submit them online, or change their

[5] Available at http://www.cbpp.org/cms/index.cfm?fa=view&id=1414.

address over the phone, instead of handing the forms in or reporting the information in person.

## II. SECTION 7 OF THE NVRA COVERS REMOTE TRANSACTIONS.

The plain language of Section 7 imposes unambiguous duties on public assistance agencies without any limitation as to where covered transactions occur. As one court recently explained:

> [S]tate public assistance offices designated as VRAs are required to "distribute with *each* application for such service or assistance, and with *each* recertification, renewal, or change of address form" a mail voter registration application form and a voter preference form. 42 U.S.C. § 1973gg–5(a)(6) (emphasis added). The plain meaning of this statement is clear: if an assistance office supplies an application for assistance, it must, without limitation, also distribute a voter registration form and a voter preference form. There is no clear textual basis in the operative language of Section 7 paragraph (a)(6) for … limit[ing] the application of the mandatory distribution of forms to only those instances "when such application, recertification, renewal, or change of address is made *in person*." … To sustain [that] position, the court would be forced to ignore the ordinary meaning of the plain language of Section 7 paragraph (a)(6), and the court declines to do so.

*Georgia State Conference of N.A.A.C.P. v. Kemp*, 841 F.Supp.2d 1320, 1329 (N.D. Ga. 2012) (emphasis in original). This analysis applies to all of Section 7(a)(6) – not just the distribution of voter registration applications in Section 7(a)(6)(A), but also the voter preference form described in Section 7(a)(6)(B) and the assistance to "each" applicant in Section 7(a)(6)(C). *See* 42 U.S.C. § 1973gg-5(a)(6).

The defendant seeks to avoid the clear meaning of "each" covered transaction in Section 7 by seizing on language in another part of the statute, Section 4, which requires states to establish three mechanisms by which citizens can register to vote – including "by application in person at a voter registration agency designated under Section 7." *See* 42 U.S.C. § 1973gg-2(a). This argument is unavailing.

Sections 4 and 7 of the NVRA can easily be read in concert without the need for defendants' strained interpretation, which would require courts to ignore the plain language of Section 7. Section 4 describes the three general ways in which the NVRA expands voter registration opportunities (DMV registration, mail-in registration, and agency registration), but in no way limits the scope of the specific obligations that agencies must undertake under Section 7. For its part, Section 7 distinguishes two types of agencies that are subject to different duties – so-called "mandatory" agencies that include public assistance and disability offices as defined in Section 7(a)(2) – and "other offices" of the state's choosing as described in Section 7(a)(3). While both sets of offices must provide voter registration services to persons who appear in person, that is a floor and not a ceiling on the services that must be provided.

Indeed, Section 7(a)(4) of the NVRA establishes requirements that apply to *all* Section 7 agencies – whether designated under Section 7(a)(2) or (a)(3) – but

Section 7(a)(6) then goes on to prescribe further voter registration services that must be provided by agencies that "provide service or assistance in addition to providing voter registration." Those agencies must also provide a voter registration application and provide other specified services with "each" application for assistance, renewal, recertification, or change of address.[6] Section 7(a)(6) simply does not include the phrase "in person", and no such limitation on the scope of Section 7(a)(6) can properly be read into it. The Court in *Georgia State Conference of the NAACP v. Kemp* addressed this distinction directly noting, "[W]here, as here, Congress expressly chose to limit the mandates of [Section 4] of the NVRA" to in person interactions, but did not include such limiting language in Section 7, "[t]he court is bound to respect these different treatments by limiting the applicability of the former and declining to infer a limit where Congress chose not to include one in the latter." 841 F. Supp. 2d 1320 at 1331 (N.D. Ga. 2012). *See also Nken v. Holder*, 556 U.S. 418, 430 (2009) ("When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

---

[6] Examples of so-called "discretionary" offices designated under Section 7(a)(3) that might not be subject to Section 7(a)(6) could include public high schools or colleges, which may not typically engage in transactions covered by Section 7(a)(6).

Each authority that has considered the question at issue here has concluded that the obligations imposed by Section 7(a)(6) on public assistance agencies apply to remote as well as in-person transactions. In that regard, *Kemp* and the District Court in this case are joined by the United States Attorney General, the executive officer charged with enforcing the NVRA, who has interpreted Section 7(a)(6) to apply to remote transactions. *See* U.S. Department of Justice, *The National Voter Registration Act of 1993: Questions and Answers* (interpretive guidelines);[7] Statement of Interest of the United States, *Georgia State Conference of the NAACP v. Kemp*, No. 1:11-cv-01849-CAP (N.D. Ga. Oct. 5, 2011), Dkt. No. 39, at 8. Language in other case law regarding Section 7 also recognizes the requirement to offer voter registration services "with each" covered transaction. *See Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Scales*, 150 F. Supp. 2d 845, 854 (D. Md. 2001) ("[T]he NVRA expressly states that voter registrations services must be provided with '*each* application for such service or assistance, and with *each* recertification, renewal, or change of address form relating to such service or assistance. . . .'") (citations omitted; emphasis in original); *Condon*, 913 F. Supp. at 952 ("[A]gencies are required to distribute with each application for service or assistance (including renewals and change of address) not only the mail voter registration application described below, but also a standard form . . .").

[7] Available at http://www.justice.gov/crt/about/vot/nvra/nvra_faq.php.

Consistent with the unanimous interpretation that Section 7 applies to remote covered transactions, NVRA consent decrees and settlements since the emergence of remote transactions regularly have required compliance with Section 7 during those interactions. *See, e.g.*, Joint Notice of Settlement, *Black Political Empowerment Project v. Aichele,* No. 5:12-cv-03808-CMR (E.D. Pa. August 22, 2012), Dkt. No. 51, at 5-7 (telephone, mail, and online transactions);[8] Settlement Agreement, *Georgia State Conference of the NAACP v. Kemp*, No. 1:11-cv-1849-CAP (N.D. Ga. April 16, 2012), Dkt. No. 56, at 5-6 (telephone, mail, and online transactions);[9] Settlement Agreement, *Indiana State Conf. of the NAACP v. Gargano*, No. 1:09-cv-0849-TWP-DML (S.D. Ind. May 12, 2011), Dkt. No. 143-1, at 6-7 (telephone, mail, and online transactions);[10] Consent Decree, *United States v. Rhode Island*, No. 1:11-cv-00113-S-LDA (D. R.I. March 18, 2011), Dkt. No. 2,

[8] Available at http://www.lawyerscommittee.org/admin/site/documents/files/BPEP_v_Aichele_Settlement-22Aug2012.pdf.

[9] Available at http://www.demos.org/sites/default/files/publications/Final%20Signed%20Filed%20Settlement.pdf.

[10] Available at http://www.lawyerscommittee.org/admin/voting_rights/documents/files/Indiana-Settlement-Agreement-VOT.pdf.

at 10-11 (telephone, mail, and online transactions);[11] Consent Order Regarding Plaintiff's Claims Asserting Violations of Section 7 of the National Voter Registration Act, *Valdez v. Duran*, No. 1:09-cv-668-JCH-DJS (D. N.M. Feb. 24, 2011), Dkt. No. 148, at 8 (telephone, mail, and online transactions);[12] Settlement Agreement, *Harkless v. Brunner*, No. 1:06-cv-02284-PAG (N.D. Ohio Nov. 25, 2009), Dkt. No. 85, at 11 (telephone, mail, and online transactions);[13] Settlement Agreement, *Ass'n of Comm. Orgs. for Reform Now v. Levy*, No. 2:08-cv-04084-NKL (W.D. Mo. June 25, 2009), Dkt. No. 133, at 7-8 (telephone, mail, and online transactions).[14] The routine inclusion of remote transactions demonstrates a widespread understanding on the part of litigants and courts that Section 7 extends to such transactions — and that applying Section 7 to remote transactions is a

---

[11] Available at http://www.demos.org/sites/default/files/publications/US_v_RI_proposed_consent_decree.pdf.

[12] Available at http://www.lawyerscommittee.org/admin/voting_rights/documents/files/Docket-148-Consent-Order-re-Ptfs-Claims-Asserting-Violations-of-Sec.-7-NVRA.pdf.

[13] Available at http://www.demos.org/sites/default/files/publications/Settlement%20in%20Lawsuit%20against%20State%20of%20Ohio%20for%20NVRA%20Noncompliance.pdf.

[14] Available at http://moritzlaw.osu.edu/electionlaw/litigation/documents/ACORN-Stipulation-6-25-09.pdf.

feasible, appropriate, and important means of serving the goals underlying the NVRA.

Courts in other circumstances have held that the goals of federal regulation cannot be subverted by conducting identical transactions online or by mail instead of in person. For example, the District Court for the Northern District of Texas ruled that a "place of public accommodation" need not be a physical structure for purposes of the Americans with Disabilities Act, writing that "[i]t would be both unwise and unfounded to impose such a requirement. . . . 'It boggles the mind to think that Congress would include only the few people who walk into an insurance office to buy health insurance but not the millions who get such insurance at work.'" *Attar v. UNUM Life Ins. Co. of Am.*, CA 3-96-CV-367-R, 1998 WL 574885 (N.D. Tex. Aug. 31, 1998) (quoting *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1021 (6th Cir. 1997) (Merritt, J., dissenting)); *see also Carparts Distrib. Ctr., Inc. v. Auto Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 20 (1st Cir. 1994)[15]; *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1283-84 (11th

[15] The Court in *Carparts* observed that Congress appeared to be thinking primarily of physical interactions when it passed the ADA, but that this was no reason to exclude other transactions covered by the intent of the Act. "One who simply reads the Committee Report describing the operations of Title III could easily come away with the impression that it is primarily concerned with access in the sense of … physical access …. At the same time, there is nothing in that history that explicitly precludes an extension of the statute to the substance of what is being offered. … Many goods and services are sold over the telephone or by mail with customers never physically entering the premises …. To exclude this broad

Cir. 2002) (applying ADA to telephone hotline); *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) ("An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store."); *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 33 (2nd Cir. 2000). *But see Parker,* 121 F.3d at 1014.

Academic commentators likewise have widely observed and encouraged the equal application of pre-internet law to online and physical transactions. *See* Bradford L. Smith, *The Third Industrial Revolution: Policymaking for the Internet,* 3 Colum. Sci. & Tech. L. Rev. 1, 107 (2001) ("The spirit of existing rules should apply to online transactions no less than their off-line counterparts"); Shani Else, Note, *Courts Must Welcome the Reality of the Modern World: Cyberspace Is A Place Under Title III of the Americans with Disabilities Act*, 65 Wash. & Lee L. Rev. 1121, 1146 (2008) ("Cyberspace is a place not only because individuals think of cyberspace as a place but also because websites were *designed* to be a place and people *use* websites as places."); Ronnie Cohen & Janine S. Hiller, *Towards A Theory of Cyberplace: A Proposal for A New Legal Framework*, 10 Rich. J.L. & Tech. 2, 13 (2003) (common law tort of trespass to chattels widely applied to internet activity), and cases cited; Colin Crawford, *Cyberplace: Defining A Right*

---

category of businesses … would run afoul of the purposes of the ADA and would severely frustrate Congress's intent[.]" *Carparts,* 37 F.3d at 19-20.

*to Internet Access Through Public Accommodation Law*, 76 Temp. L. Rev. 225, 233 & n.31 (2003) ("many of the issues raised by the legal regulation of cyberspace are not terribly different from those raised by the earlier regulation of other kinds of property").

There is no reason Congress' goal to ensure broad access to voter registration opportunities by all segments of the population would be served by providing different requirements for different ways of conducting the same transaction. Rather, the logical legal interpretation is simply that Congress meant what it said in each part of the Act: states must establish procedures to provide and accept voter registration in a variety of ways pursuant to Section 4, 42 U.S.C. § 1973gg-2, and states also must proactively offer voter registration services with "each" application for public assistance pursuant to Section 7(a)(6), 42 U.S.C. § 1973gg-5. It would be inexplicable — and counter to the rules of statutory interpretation — for Congress to provide detailed instructions for a variety of services to be offered with "each" transaction in one part of the Act, and then by a few words of negative implication in another part of the Act exclude a large portion of those transactions. Instead, Sections 4 and 7(a)(6) are completely compatible, and the Court must therefore reject defendants' strained effort to read section 7(a)(6) as if it said "some" applications rather than "each" application.

## III. STATES THROUGHOUT THE COUNTRY HAVE SUCCESSFULLY IMPLEMENTED REMOTE COVERED TRANSACTION SYSTEMS THAT PROVIDE FOR VOTER REGISTRATION.

The practical reality of NVRA implementation is that states across the country integrate voter registration opportunities into covered transactions conducted by telephone, mail, Internet, and otherwise. Dēmos' experience working with states throughout the country is that, with the will to do so, states have little difficulty making sure that their low-income citizens receive voter registration opportunities no matter how they interact with state agencies.

From a review of the 43 states other than Louisiana that are subject to the NVRA, Dēmos is aware of 35 states that provide online applications, or are developing online applications, for at least some public assistance benefits. Specifically, Alabama, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, Montana, Nebraska, Nevada, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and West Virginia each allow individuals to apply for at least some benefits online.

Among those 36 states, we are aware of only five that do not incorporate voter registration,[16] and we have been unable to determine whether another three states include voter registration[17] because the relevant information regarding the content of the state's online benefits applications is not available to the public and has not been provided to Dēmos. The remaining twenty-eight states do provide at least some access to voter registration opportunities, or are in the process of incorporating such access, in connection with their online benefits application.[18]

---

[16] Maine, Nebraska, New Jersey, South Carolina, and Vermont offer online benefits applications without voter registration services. *See* ACCESS Nebraska, https://dhhs-access-neb-app.ne.gov/AccessNeApp/ application/ publik/submit/Review.xhtml (Nebraska); New Jersey OneApp, https://oneapp.dhs.state.nj.us/default.aspx (New Jersey); South Carolina Multi-Agency Partnership Portal, https://scmapp.sc.gov/ (South Carolina); Vermont Benefits Service Center, https://mybenefits.ahs.state.vt.us/Login.aspx (Vermont). An account must be created and logged into in order to view the Maine's online benefits application. *See* My Maine Connection, https://www1.maine.gov/benefits/account/login.html (Maine).

[17] The three states are Arkansas, Kentucky, and Massachusetts. *See* Access Arkansas, https://access.arkansas.gov/Welcome.aspx (Arkansas); SNAP Web Portal, https://prd.chfs.ky.gov/SNAPPrescreen/SNAPLanding.aspx (Kentucky); Virtual Gateway Self Service, https://service.hhs.state.ma.us/ierhome/LandingPage.do?method=displayConsumerHomePage&pageSwitch=HOME (Massachusetts).

[18] The remaining 28 states either include voter registration within their online benefits applications or are in the process of integrating voter registration into online benefits applications. *See* Medicaid: Eligibility Forms and Applications, http://www.medicaid.alabama.gov/CONTENT/5.0_Resources/5.4_Forms_Library/5.4.2_Eligibility_Forms.aspx (Alabama); Arizona OneApp: How do I register to vote?, https://www.healthearizona.org/app/Learnmores.aspx?link_id=34 (Arizona); Cal. Elec. Code § 2408 (California); Memorandum of Agreement By and Between

the United States and the State of Illinois, Department of Human Services, at 5 (Dec. 15, 2008), available at http://www.demos.org/sites/default/files/publications/Illinois%27%20Settlement%20with%20Department%20of%20Justice.pdf (Illinois); Welcome to Illinois Web Benefits Online Application System, https://wb.dhs.illinois.gov/wbpublic/register/wb/wbHomePre.do (Illinois); Settlement Agreement, *Indiana State Conf. of the NAACP v. Gargano*, *supra* note 10, at 6-7 (Indiana); Welcome to SAIL, https://www.marylandsail.org/Default.aspx (Maryland); Letter from Duane Berger, Michigan Department of Human Services, to Lisa J. Danetz *et al.*, at 1-2 (January 27, 2013), attached as Appendix A (Michigan); Settlement Agreement, *Ass'n of Comm. Orgs. for Reform Now v. Levy*, *supra* note 14, at 7-8 (Missouri); Online Services Demonstration, https://app.mt.gov/walkthrough/mtc/pages/other_ information.html (Montana); Welcome to MyBenefits, https://www.mybenefits.ny.gov/ (New York); Settlement Agreement, *Harkless v. Brunner, supra* note 13, at 11-12 (Ohio); National Voter Registration State Compliance Council Report on the National Voter Registration Act of 1993 (Feb. 4, 2013), available at https://olis.leg.state.or.us/liz/2013R1/Downloads/CommitteeMeetingDocument/641 (Oregon); Joint Notice of Settlement, *Black Political Empowerment Project et al. v. Aichele et al*, *supra* note 8, at 8 (Pennsylvania); Consent Decree, *United States v. Rhode Island*, *supra* note 11, at 10-11 (Rhode Island); Texas Health and Human Services, Texas Works Handbook § A-1521 *et seq.*, available at http://www.dads.state.tx.us/handbooks/texasworks/A/1500/1500.htm#secA-1521 (Texas); Texas Works Bulletin 11-01, at 5 (Sept. 9, 2010), attached as Appendix B (Texas); Texas Integrated Eligibility Redesign System (TIERS) Training Build 81, Lesson 1, attached as Appendix C (Texas); Washington Connection, https://www.washingtonconnection.org/home/ (Washington). An account must be created and logged into in order to view the voter registration opportunities in the following states' online applications: Colorado PEAK: Program Eligibility and Application Kit, https://peak.state.co.us/selfservice/ (Colorado); Agency Based Voter Registration Pursuant to Section 7 of the NVRA – Implementation Guide for Colorado Public Assistance Agencies, available at http://www.sos.state.co.us/pubs/elections/NVRA/files/colorado_agency_nvra_manual.pdf (Colorado); Delaware Assist, https://assist.dhss.delaware.gov/SystemCompatibility.aspx?targetUrl=~/SM/AFS/AFB.aspx (Delaware); ACCESS Florida Online Application System, https://dcf-access.dcf.state.fl.us/access2florida/access/default.do?performAction =init (Florida); Settlement Agreement, *Georgia State Conf. of NAACP et al. v. Kemp*, *supra* note 9, at 5-6 (Georgia); GA COMPASS: Common Point of Access to Social

Dēmos' experience with several specific states is instructive. In settlement agreements with Pennsylvania, Georgia, Indiana, New Mexico, Ohio, and Missouri, each state agreed to provide NVRA-compliant voter registration services with remote covered transactions. Georgia's COMPASS system and Michigan's MIBridges system each give public assistance applicants the choice either to print a downloadable online voter registration application or have a voter registration application mailed to them.[19] Alabama's regulations specifically provide that a

---

Services, https://compass.ga.gov/selfservice/ (Georgia); Kansas Department for Children and Families Portal, https://kscapportalp.srs.ks.gov/customer/start.swe?SWECmd=Start&SWEHo=kscapportalp.srs.ks.gov (Kansas); Defendant Willden's Answers to First Set of Interrogatories, at No. 11, *National Council of La Raza v. Miller,* No. 3:12-cv-00316-RCJ-VPC (D.Nev. September 10, 2012) (Answer to Interrogatory No. 11), attached as Appendix D (Nevada); Access Nevada: Division of Welfare and Supportive Services, https://dwss.nv.gov/ (Nevada); SoonerCare Online Enrollment, http://www.okhca.org/individuals.aspx?id=14469&menu=40&parts=7453 (Oklahoma); Online Application Login Page, https://fabenefits.dhs.tn.gov/vip/website/signupservlet (Tennessee); myCase Online Application, https://jobs.utah.gov/mycase/web/rvw/oa (Utah); Virginia Department of Social Services, NVRA (National Voter Registration Act), slide 3 (June 2008), attached as Appendix E (Virginia); Virginia CommonHelp, https://commonhelp.virginia.gov/access (Virginia); Welcome to inROADS, https://www.wvinroads.org/ inroads/PGM/ASP/SC001.asp (West Virginia); West Virginia Income Maintenance Manual, §1.2, at 2b-3, Chapter 1, available at http://www.wvdhhr.org/bcf/policy/imm/new_manual/IMManual/Manual_PDF_Files/Chapter_01/ch1_2.pdf (West Virginia).

[19] *See* Settlement Agreement, *Georgia State Conf. of NAACP et al. v. Kemp*, *supra* note 9, at 5-6; Letter from Duane Berger, Michigan Department of Human Services, to Lisa J. Danetz *et al.*, *supra* note 18, at 1-2, attached as Appendix A.

voter registration agency "shall mail the client filing [a telephonic] change of address a mail voter registration form." See Ala. Admin. Code 820-2-2-.14. Dēmos is aware that, at a minimum, the agencies in Indiana, Georgia, Maryland, Massachusetts, Michigan, Mississippi, New Mexico, North Carolina, Ohio, Pennsylvania, Virginia, and West Virginia — all states that we have advised or litigated against — send voter registration applications to individuals who change their address by telephone or other remote mechanisms.[20]

---

[20] Settlement Agreement, *Indiana State Conf. of the NAACP v. Gargano*, *supra* note 10, at 6-7 (Indiana); Settlement Agreement, *Georgia State Conference of the NAACP v. Kemp*, *supra* note 9, at 5-6 (Georgia); Memorandum from Brian Moe, Deputy Secretary of State, to Members of the Interdepartmental NVRA Section 7 Work Group, at 3 (April 28, 2008), attached as Appendix G (Maryland); Letter from Duane Berger, Chief Deputy Director to Lisa J. Danetz *et al.*, at 4 March 29, 2012), attached as Appendix F (Michigan); Delbertt Hosemann, Secretary of State, National Voter Registration Act Agency Guide and Training Manual, at 3 (updated 2010), attached as Appendix H (Mississippi); Consent Order Regarding Plaintiff's Claims Asserting Violations of Section 7 of the National Voter Registration Act, *Valdez v. Duran*, *supra* note 12, at 8 (New Mexico); State Board of Elections, National Voter Registration Act Agency Voter Registration Training Manual and Guide, at 16 (February 28, 2007), attached as Appendix I (North Carolina); State Board of Elections, NVRA Update for County Department of Social Services, slide 10, attached as Appendix J (North Carolina); Settlement Agreement, *Harkless v. Brunner*, *supra* note 13, at 11 (Ohio); Joint Notice of Settlement, *Black Political Empowerment Project v. Aichele*, *supra* note 8, at 5-7 (Pennsylvania); Virginia Department of Social Services, NVRA (National Voter Registration Act), slide 3 (June 2008), attached as Appendix K (Virginia); Department of Health and Human Resources, West Virginia Income Maintenance Manual, at §1.2.A.4 (updated June 30, 2009) (West Virginia), available at http://www.wvdhhr.org/bcf/policy/imm/new_manual/IMManual/Manual_HTM_Pages/IMChapter01.htm.

Based on the above information, Demos is confident that Louisiana agencies will have no more difficulty integrating voter registration services into their various remote processes than have the many other states that already have successfully done so. Indeed, the other defendants in the case below — the Louisiana Department of Children and Family Services and the Louisiana Department of Health and Hospitals — have already done so as is required by Section 7 of the NVRA.[21]

[21] Findings of Fact and Conclusions of Law, *Scott v. Schedler*, CIV.A. 11-926, 2013 WL 264603 (E.D. La. Jan. 23, 2013), at 21 and 26.

## CONCLUSION

For the foregoing reasons, the *amicus curiae* requests that the District Court judgment be affirmed.

Respectfully submitted,

Lisa J. Danetz
David Rubino
Demos
358 Chestnut Hill Ave., Suite 303
Brighton, MA 02135
p: (617) 232-5885
f: (617) 232-7251
ldanetz@demos.org

John Cushman
Stern, Shapiro, Weissberg & Garin, LLP
90 Canal Street, Suite 500
Boston, MA 02144
p: (617) 742-5800
f: (617) 742-5858

## CERTIFICATE OF SERVICE

Pursuant to Fifth Circuit Rule 25.2.1, I hereby certify that on May 28, 2013, an electronic copy of the foregoing *Motion For Leave to File Brief of Amicus Curiae Dēmos in Support of Appellees* and attached *Brief of Amicus Curiae Dēmos in Support of Appellees* was filed with the Clerk of Court and served on the following counsel through the Court's electronic filing system:

Ryan Paul Haygood
NAACP
Legal Defense & Educational Fund
Suite 1600
99 Hudson Street
New York, NY 10013-00000
Tel: 212.965.2200
Email: rhaygood@naacpledf.org

Leah Camille Aden, Esq.
NAACP
Legal Defense & Educational Fund
Suite 1600
99 Hudson Street
New York, NY 10013-00000
Tel: 212.965.2200
Email: laden@naacpldf.org

Natasha M. Korgaonkar, Esq.
NAACP
Legal Defense & Educational Fund
Suite 1600
99 Hudson Street
New York, NY 10013-0000
Tel: 212.965.2200
Email: nkorgaonkar@naacpldf.org

Israel David
Fried, Frank, Harris, Shriver & Jacobson, L.L.P.
1 New York Plaza
New York, NY 10004-0000
Tel: 212.859.8218
Email: israel.david.@friedfrank.com

Jesse Ryan Loffler
Fried, Frank, Harris, Shriver & Jacobson, L.L.P.
1 New York Plaza
New York, NY 10004-0000
Tel: 212.859.8216
Email: jesse.loffler@friedfrank.com

David Scott Yellin
Fried, Frank, Harris, Shriver & Jacobson, L.L.P.
1 New York Plaza
New York, NY 10004-0000
Tel: 212.859.8283
Email: david.yellin@friedfrank.com

Michael Birney de Leeuw
Fried, Frank, Harris, Shriver & Jacobson, L.L.P.
1 New York Plaza
New York, NY 10004-0000
Tel: 212.859.8247
Email: Michael.deleeuw@friedfrank.com

Ronald Lawrence Wilson
Suite 4100
701 Poydras street
1 Shell Square
New Orleans, LA 70139-0000
Tel: 504.525.4361
Email: cabral2@aol.com

*Counsel for Plaintiffs-Appellees*

Celia Rhea Cangelosi, Esq.
918 Government Street
Suite 101
Baton Rouge, LA 70821
Tel: 225.387.0511
Email: celiacan@bellsouth.net

Carey Thompson Jones, Esq.
1234 Del Este Avenue
Suite 803 Denham Springs, LA 70726
Tel: 225.664.0077
Email: tjones@tomjoneslaw.com

*Counsel for Defendant-Appellant*

Lisa J. Danetz
*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,

Typeface and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,925 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).
2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

Dated: May 28, 2013

Lisa J. Danetz
*Counsel for Amicus Curiae*

# Appendix A

STATE OF MICHIGAN
DEPARTMENT OF HUMAN SERVICES
LANSING

RICK SNYDER
GOVERNOR

MAURA D. CORRIGAN
DIRECTOR

January 27, 2012

Lisa J. Danetz
Demos
Suite 303
358 Chestnut Hill Avenue
Brighton, MA 02135

Nicole Zeitler
Project Vote
737 ½ 8th Street, NE
Washington, DC 20003

Mark Posner
Lawyers' Committee for Civil Rights Under Law
Suite 400
1401 New York Avenue, NW
Washington, DC 20005

Anson Asaka
NAACP
4805 Mount Hope Drive
Baltimore, MD 21215

On behalf of the Michigan Department of Human Services (DHS), we thank you for your willingness to work with us to address the concerns raised in your August 19, 2011, letter to Ruth Johnson, Michigan Secretary of State (SOS). Through our several discussions following your letter, we hope is it clear that DHS remains committed to ensuring that individuals receive proper voter registration opportunities in compliance with the National Voter Registration Act of 1993 (NVRA). While DHS expressly denies liability with respect to any alleged violations of Section 7 of the NVRA, we are cognizant that we must strive to continuously update and improve our processes when feasible. For example, as you are aware, DHS is working to incorporate voter registration opportunities into its automated benefits processes. Below is a detailed explanation of DHS's action plan to ensure continued NVRA compliance:

**MiBridges (Self-Serve Online Benefits Application System)**

DHS's MiBridges online system ensures that voter registration application forms are distributed to self-serve clients who wish to register to vote. MiBridges now incorporates a "hard stop" at the voter registration question so that an individual cannot proceed with the benefits application process unless he or she checks either "yes" or "no" in response to the voter registration application question. If "yes" is selected, a printable voter registration application form is provided at the end of the benefits application process. In addition, clients are instructed that they can request a voter registration application from their caseworker at any time and request help in filling out the form. After implementing these changes, DHS provided screen shots, which prompted further discussions.

As a result of your suggestions and our subsequent discussions, DHS will implement the following additional changes by March 31, 2012:

- The voter registration application question will be changed to reflect the exact language of 42 U.S.C. 1973gg-5(a)(6)(B): "If you are not registered to vote where you live now, would you like to apply to register to vote here today?"

- *Screen Shot 1 (the screen with the initial voter registration question).* The bolded language will be amended to read as follows: "If you checked "yes", a printable voter registration application form will be provided at the end of the benefits process. If you do not have the ability to print the voter registration application form, click here to request that a voter registration application be mailed to your home. You may also ask your worker for a voter registration application form at any time. DHS will assist you with completion of the voter registration application form (unless you decline such assistance) and submit your completed voter registration application form to the appropriate elections officials. If you experience any problems, you will have the opportunity to send DHS an email at the end of this process."

- *Screen Shot 2 (this screen appears after the client completes the benefits application process if the client checked "yes" in response to the voter registration question; it allows the client to click on a button to access a printable voter registration application form).* The word "printable" will be added in the second sentence between "the" and "Voter Registration Application Form."

- *Screen Shot 4 (this page is part of the electronic document provided to the client and the caseworker after the MiBridges assistance application is complete and shows the client's responses).* The bolded language will be amended so that it reads as follows: "If you checked "yes", a printable voter registration application form was provided at the end of the benefits application process. You also had the opportunity to request that a voter registration application form be mailed to your home. If you have any questions or experience any issues with the online application process or voter registration process, you can email DHS at MiBridges-tech-support@michigan.gov. You may also ask your worker for a voter registration application form at any time. DHS will assist you with completion of the voter registration application form (unless you decline such assistance) and submit your completed voter registration application form to the appropriate elections officials."

DHS will provide the same degree of assistance in completing voter registration applications as it does in completing online benefit forms. MiBridges users can email questions regarding benefits applications to a single email address: MiBridges-tech-support@michigan.gov. The questions are routed to the appropriate DHS location. The same applies to questions regarding voter registration applications.

**Bridges (Computerized System Used by DHS Caseworkers)**

In response to your suggestions and after our discussions, DHS is also making changes to its Bridges system, which DHS caseworkers use to administer benefits processes. By March 31, 2012, DHS will incorporate a "hard stop" in connection with the voter registration application question so that the worker must select one of four responses in order to proceed. The options

reflect the client's response to the voter registration application question and, for "yes" responses, describes the method of voter registration application distribution:

i. "Yes" - in-office transaction. A voter registration application form was distributed to the client in-person and the client was offered assistance in completing the voter registration application form.
ii. "Yes"- out-of-office transaction. A voter registration application will be mailed to the client automatically through DTMB Central Print.
iii. "Yes" - out-of-office transaction - MiBridges. A printable voter registration application form was provided to the client through MiBridges.
iv. "No"

By March 31, 2012, for client changes of residence address, Department of Technology, Management and Budget (DTMB) Central Print will automatically mail a voter registration application form to the client's new address. This is already in place for the Food Assistance Program.

**In-Office Transactions and Assistance**

DHS employees will distribute a voter registration application form with each benefits application, redetermination, renewal, or change of address unless the client declines a voter registration application in writing.

DHS employees will verbally advise clients during in-office interviews for benefits applications, redeterminations, renewals, and change of address that they may complete a voter registration application; that the employee is available to provide assistance in completing the form; and that DHS will forward the completed application to the appropriate election official. DHS employees will allow each client the time and opportunity to complete a voter registration application at the office.

DHS will provide the same degree of assistance in completing the voter registration application form and declination form as is provided for completing the department's own forms, unless the client declines such assistance.

**Office Signs**

DHS will continue to prominently post signs at every DHS office advising the public of the opportunity to register to vote at the location.

**Transmitting Voter Registration Application Forms**

Local office voter registration services coordinators (see "Staffing," *infra*) will continue to forward completed voter registration application forms to the clerk of the county, city, or township in which the client resides. Forms are forwarded within seven calendar days of receipt in the local office, except during the seven-day period preceding the registration deadline. During that period, forms are forwarded within one business day.

Incomplete forms are forwarded to the appropriate clerk in the same fashion.

**Staffing**

DHS has one central office voter registration services coordinator ("statewide coordinator"), a local office voter registration services coordinator ("local coordinator"), and a back-up coordinator for

each local DHS office. The statewide coordinator, along with the training office, is responsible for training local coordinators. The statewide coordinator maintains the list of local coordinators and back-up coordinators, and monitors the web-based reporting tool to ensure that local coordinators enter the data every month. There is a designated mailbox for questions regarding the NVRA, which the statewide coordinator monitors daily.

Local coordinators are responsible for overseeing voter registration activities in the local offices, including monthly reporting via the web-based tool, ensuring that there is an adequate supply of voter registration forms in the local office, answering questions from other local office staff members who have voter registration responsibilities, and forwarding completed voter registration application forms to the appropriate local election officials. Local coordinators are also responsible for ensuring that signs advising the public of the opportunity to register to vote are posted in the local DHS office.

**Training**

Training materials: DHS has two existing PowerPoint presentations detailing voter registration obligations and procedures – one for local coordinators and one for caseworkers. DHS also maintains training material and information regarding voter registration obligations on the DHS intranet. These materials will be updated to reflect Bridges and policy modifications by March 31, 2012.

Caseworker training: DHS caseworkers will be required to complete new NVRA training in connection with the release of the Bridges changes. Current caseworkers will be required to complete the training by April 9, 2012. DHS's four-week mandatory training program for new caseworkers is held on an as-needed basis as groups of new caseworkers are hired. NVRA training will be incorporated into the new caseworker training program by the date of the first new worker training beginning after March 31, 2012. In addition, DHS will implement mandatory annual NVRA refresher training for caseworkers.

Local coordinator training: DHS will require local coordinators to complete the updated NVRA training by April 9, 2012. Local coordinators will thereafter be required to complete NVRA training annually. Newly-designated local coordinators will be required to complete the NVRA annual training within one month of their appointment.

The statewide coordinator will also continue to communicate any changes or reminders to local coordinators on a more frequent basis, as appropriate.

**Language Provisions**

The agency voter registration application form (NSP-938B) is available in Spanish (NSP-938-SP). Like the English-language form, the Spanish-language form is available on the DHS website and at local DHS offices. MiBridges users also have the option of completing the entire assistance application, including the voter registration application question, in Spanish. This option provides access to a printable Spanish-language version of the voter registration application form.

The SOS is developing a Bangladeshi version of the NSP-938B for DHS.

In addition, DHS has a contract with "the language line" which is an 800 number caseworkers can call to have any material translated into any language.

**Policy**

DHS will amend BAM 125 to clarify voter registration responsibilities and to ensure that it is consistent with this action plan. The release of the revised policy will be coordinated with the release of the Bridges changes, which, as noted, will be implemented by March 31, 2012.

**Reporting**

DHS uses a web-based reporting tool. The statewide coordinator monitors the web-based tool, and local coordinators input monthly data into this system. DHS currently reports the following information using the web-based tool: (1) number of completed assistance applications, (2) number of redeterminations, (3) number of address changes, (4) number of completed voter registration forms that are submitted to clerks' offices. These numbers are entered in the reporting tool by the local coordinators, except for the number of address changes, which is entered as a statewide number by the statewide coordinator.

The reporting tool also tracks the number of clients who "declined." The system generates this number by "subtracting the number of clients who registered from the total voter registrations offered." "Total registrations offered" is the sum of the applications, redeterminations, address changes, and "local office adjustments" (voter registration applications the local office offered that are not otherwise captured).

You have suggested that DHS should track, on a monthly basis: (1) the number of applications, redeterminations, renewals, and changes of address during the month; (2) the number of completed voter registration forms received by each local/district office and transmitted to local election officials; (3) the number of voter registration questions to which respondents checked "no"; and (4) the number of blank voter registration applications distributed.

DHS already reports the first two numbers. Once the Bridges and MiBridges changes described above are in place, DHS will be able to track and report on the number of "no" responses and "yes" responses in Bridges and MiBridges.

This new reporting method will be implemented by May 31, 2012. On July 31, 2012, DHS will provide you with the first set of numbers which will include at least one month of the data it has collected. Regarding future reporting, under Michigan law, MCL 168.509ee, the SOS has authority to ask for data from the voter registration agencies on a quarterly basis. It is our understanding that SOS intends to ask DHS to submit data on quarterly basis (not monthly). Accordingly, based on the SOS's schedule, DHS will provide the data to SOS. It is our understanding that the SOS will then compile the reported information and will provide it to you upon request.

We welcome any additional input or suggestions you may have and believe would be beneficial to continue our dialog in the future. Once again, thank you for your helpful suggestions.

Duane Berger, Chief Deputy Director

c: Joseph Potchen
Christopher Thomas
Mike Senyko
Stan Bien

# Appendix B

TEXAS
Health and Human
Services Commission

THOMAS M. SUEHS
EXECUTIVE COMMISSIONER

**Date:** September 9, 2010 **Texas Works Bulletin Number: 11-01**

**To:** Eligibility Services – Regional Directors
Program Managers
Eligibility Services Supervisors
Regional Attorneys
Hearings Officers

**From:** Dee Church
Interim Associate Commissioner
Office of Family Services
State Office 2090

**Subject:**
1. **Temporary Assistance for Needy Families (TANF) Maximum Grant Amounts**
2. **Revised Supplemental Nutrition Assistance Program (SNAP) Deductions**
3. **Texas Works Documentation**
4. **Voter Registration**
5. **Children's Medicaid Alignment**
6. **(A) Adoption Assistance and (B) Permanency Care Assistance Programs**

---

This bulletin is being sent to supervisors and other regional managers. Supervisors must share this information with all Texas Works staff. Please ensure copies are provided to staff that do not have access to e-mail. If you have any questions regarding the policy information in this memo, follow regional procedures. Active bulletins are posted on the Texas Works Handbook (TWH) website at http://www.dads.state.tx.us/handbooks/TexasWorks/.

## 1. TANF Maximum Grant Amounts

State law requires that monthly TANF maximum grant amounts be approximately 17 percent of the Federal Poverty Income Limit (FPIL). The Health and Human Services Commission (HHSC) generally revises the TANF grant amounts effective October every year based on the current FPIL. The TANF maximum grant amounts will remain the same this year because the FPIL amounts did not change for 2010. Staff must continue to use the current TANF grant amounts listed in TWH C-111, Income Limits.

## 2. Revised SNAP Deductions

### Background

As part of the annual cost of living adjustment (COLA) for SNAP participants effective October 1, 2010, HHSC is revising the:

- standard deduction and
- maximum excess shelter deduction.

There are no changes to the homeless shelter standard, the standard medical expense, the standard utility allowance, the basic utility allowance, or the telephone standard.

The SNAP allotment amounts will remain the same this year due to the increase in the SNAP allotments previously authorized by the American Recovery and Reinvestment Act of 2009, as described in Texas Works Bulletin #09-17, SNAP Allotment Increases, released March 13, 2009. The SNAP income limits are also unchanged because the FPIL remained the same for 2010.

**Effective Date**

The changes to the SNAP deduction figures are effective October 1, 2010, and will be included in the October 2010 revision of the TWH.

**Policy for Cases or Eligibility Determination Groups (EDGs) Processed after September 15th for Households Eligible for Combined Allotments**

The procedures outlined below are used to determine eligibility when a household applies after September 15th, and meets the combined allotment eligibility criteria:

| For the benefit month of … | eligibility is determined by using the… |
|---|---|
| September 2010 | old standard deduction amount and the old maximum excess shelter deduction amount. |
| October 2010 or later | new standard deduction amounts and the new maximum excess shelter deduction. |

**Policy for Cases or EDGs Processed before September Cutoff for Households Not Eligible for Combined Allotments**

Use the old deduction figures to determine the amount of benefits. Enter these old amounts for the ongoing budget.

**Automation Action in September 2010**

The Texas Integrated Eligibility Redesign System (TIERS) and the System for Applications, Verifications, Eligibility Reports and Referral (SAVERR)/Generic Worksheet (GWS) are being updated to use the appropriate deductions for each benefit month, whether the month is before or after the October COLA (including combined allotment situations). TIERS ran a mass update for all active SNAP EDGs on Saturday, September 4, 2010, and Sunday, September 5, 2010. SAVERR conversion will occur at September cutoff (September 15th) for SNAP cases that are active or on hold for October.

For applications certified manually in SAVERR with combined allotment benefits for September and October processed after September 15th, the advisor must use the correct deductions for each month. State office will not update these cases in SAVERR at September cutoff.

SAVERR and TIERS will produce a notice with the following bilingual message to SNAP households who receive an increased or decreased allotment:

***Change in SNAP Benefits***

*Your benefit amount might have changed. The change is due to new federal and state laws or government rules. Changes go into effect October 1, 2010. Beginning October 2010, you will receive $ _______.*

*If you have any questions, please contact your advisor.*

*If you think the action taken on your case is incorrect, you may appeal the decision within 90 days from the date of this notice. You have the right to continue receiving SNAP until your appeal is decided. Contact your local eligibility determination office by phone, in writing, or in person to appeal the decision. Free legal help may be available to you. Contact your local eligibility determination office for more information.*

*If the hearing officer decides the department action is correct, you must repay any overpayment.*

SAVERR will produce a notice with the following bilingual message to SNAP households whose benefits are denied:

***SNAP Denial Notice***

*Beginning October 1, 2010 your SNAP case is denied due to changes in deductions allowed by the United States Department of Agriculture.*

*If you think your SNAP benefit was computed incorrectly or federal policy misapplied, you may request a fair hearing within 90 days. You may be able to continue receiving your current amount of benefits until your appeal is decided if you ask for a hearing within 13 days and if certain conditions are met.*

*If the hearing officer decides the department action is correct, you must repay the overpayment.*

TIERS is programmed to update the amount of benefits for SNAP EDGs that are in ongoing status and do not have an override designation. TIERS will produce a combined notice for any SNAP, TANF, or Medical Programs EDG with a benefit change. **Note:** TIERS will also produce an exception report for EDGs that are not updated that will be distributed to the regions for an advisor to complete the action. When a case is not updated along with the mass update, this is an exception. The next time action is taken on the case, TIERS produces a notice for that case with an explanation of the October COLA benefit change on the notice.

**Advisor Action on Cases Processed after September Conversion/Mass Update***

| For the benefit month of … | Use the … |
|---|---|
| September 2010 or earlier | old standard deduction amount and the old maximum excess shelter deduction amount. |
| October 2010 or later | new standard deduction amounts and the new maximum excess shelter deduction. |

*GWS and TIERS automatically use the correct amounts for each month.

**Standard or Maximum Deductions**

| Standard deduction | Effective October 1, 2009- September 30, 2010 | Effective October 1, 2010, if the amount changed |
|---|---|---|
| If the household size is three or less | $141 | $142 |
| If the household size is four | $153 | |
| If the household size is five | $179 | |
| If the household size is six or more | $205 | |

| Other deductions | Effective October 1, 2009-September 30, 2010 | Effective October 1, 2010, if the amount changed |
|---|---|---|
| Standard medical expense | $137 (minus $35) | |
| Maximum excess shelter | $459 | $458 |
| Standard utility allowance | $325 | |
| Basic utility allowance | $289 | |
| Telephone standard | $ 36 | |
| Homeless shelter standard | $143 | |

## 3. Texas Works Documentation

**Background**

In response to questions and some confusion about the documentation requirements for TIERS users, state office is providing clarification about instances which require Texas Works advisors to document information in TIERS Case Comments. Staff members from various HHSC areas conducted a review of the Texas Works policy documentation requirements and created *The Texas Works Documentation Guide for TIERS Users* that specifically addresses and compiles all of the documentation that staff must enter in TIERS Case Comments. Providing concise, consistent guidance may help staff who use TIERS to process cases more efficiently and spend less time on unnecessary documentation.

TIERS and the State Portal were designed to allow eligibility staff to comply with a vast percentage of the Texas Works policy documentation requirements by successfully completing all relevant Data Collection pages and by including supporting documents in the household's case record (either the one managed through document imaging or one that is a physical case record).

Documented information available in the case, either as a scanned or physical document or entered in a TIERS data entry field, does not need to be restated in case comments. For the remaining small percentage of documentation still required by policy, staff must enter the information in TIERS Case Comments.

The TWH contains the complete documentation policy for each eligibility point at the end of each handbook section. Eligibility staff must provide documentation in sufficient detail to support the eligibility determination, but it does not need to be redundant. Document in enough detail so others can understand all computations and advisor decisions on all case actions based on the information maintained in the case record or through other HHSC automated systems, readily accessible to a reviewer.

**The Texas Works Documentation Guide for TIERS Users**

*The Texas Works Documentation Guide for TIERS Users* outlines the requirements for documentation that must be entered in TIERS Case Comments. Case readers will use the guide when reading TIERS cases to ensure staff are meeting the stated requirements. Staff cannot modify these requirements or add to these requirements except through a regional corrective action plan approved by HHSC state office. Follow regional procedures regarding any requests for changes to the required documentation.

Please see *The Texas Works Documentation Guide for TIERS Users* attached to this bulletin.

**Automation**

There is no automation change associated with this guidance document.

**Effective Date**

Staff may begin using the guide upon its release

**Handbook Revision**

The documentation guide will added to the TWH with the January 2011 revision.

**Training**

Training associated with *The Texas Works Documentation Guide for TIERS Users* is mandatory for all Texas Works advisor staff. This training will be conducted on September 16, 2010, as a statewide stand down training.

## 4. Voter Registration

**Background**

The National Voter Registration Act of 1993 requires that all HHSC applications, renewal/recertification, and change of address (change report) forms contain specific language and information to provide clients with the opportunity to register to vote, or to decline to register to vote. Texas statutes also require these forms to have an "Agency Use Only" section for staff to document their actions regarding the client's opportunity to register to vote.

**Current and Ongoing Policy - All Programs**

This bulletin serves as a policy reminder to staff regarding procedures and requirements for voter registration and adds some new procedures. To comply with voter registration requirements staff must:

- Discuss with clients the opportunity to register to vote during interviews or reported address changes.
- Offer the client Form H0025, Voter Registration Application, to register to vote at application, renewal/recertification, and when reporting a change of address. Provide the form to the client if the client requests it. Mail Form H0025 to the client when completing applications or renewal/recertification interviews by telephone or when a client reports a change of address by telephone, mail, or fax. For advisors working in TIERS who allow the client's correspondence to be mailed through the batch process, this means that Form H0025 must be sent manually as separate correspondence from the advisor's office, since the form is not available in TIERS. The Form will be added to TIERS at a later date.
- If the applicant has not previously completed and signed Form 1350, Opportunity to Register to Vote, ask the client to complete, sign, and return the form if the client declines to register to vote. Mail Form H1350 to the client if the client declines to register to vote by telephone, mail, or fax. For advisors working in TIERS who allow the client's correspondence to be mailed through the batch process, this means that Form H1350 must be sent manually as separate correspondence from the advisor's office, since the form is not available in TIERS. The Form will be added to TIERS at a later date.
- Review Form H0025 for completeness when it is returned. Send an incomplete Form H0025 back to the client with a return envelope if it does not contain the required information or a client signature, with instructions of what is needed.
- Document in the "Agency Use Only" section of the application, renewal/recertification, change report, or Form H1350 the actions taken to provide the client with an opportunity to register to vote.

- Provide clients with the address of their local voter registrar and the toll free number for the Secretary of State - Elections Division if they have additional questions or complaints regarding voter registration. The local office liaison maintains the local voter registrar listing.
- Provide the same degree of assistance, including bilingual assistance, to complete voter registration forms as is provided for the completion of agency forms, at the client's request;
- Promptly forward all completed Forms H0025 to the local office liaison; and
- Keep confidential all information regarding registering or declining to register to vote.

HHSC staff will not:

- Display their own political preference or party affiliation,
- Influence the client's political preference or party affiliation,
- Make any statements to the client to discourage the client from registering to vote, or
- Affect the amount of assistance based on the client's decision to register or not register to vote.

Each local office will assign a voter registration liaison who has the responsibility to:

- Ensure the local office maintains a stock of Forms H0025 and H1350,
- Review each Form H0025 for completeness;
- Maintain the listing of the local voter registrar; and
- Send all completed Forms H0025 to the local voter registrar within five (5) days of receipt when left at the office or returned by mail.

Clients may return their completed Form H0025 in one of three ways:

- Deliver by hand or mail Form H0025 directly to their local voter registrar,
- Leave their completed Form H0025 with their advisor who will forward to the local office liaison, or
- Mail Form H0025 to their local office. The local office liaison will forward the application to the local voter registrar.

**Note:** If the client inadvertently returns a Form H0025 to the Midland document processing center, vendor staff will return the Form H0025 to the local office within one workday of receipt.

**Retention**

Retain Form H1350 in the case record for at least 22 months.

**Forms and Instructions**

The following forms will be updated to include the required voter registration language and Agency Use Only section for voter registration documentation:

H1010-E, H1010-R, H1010-RS, H1010-S, H1011, H1011-A, H1014, H1014-S, H1015, H1015-S, H1019, H1019-S, H1019-F, H1019-FS, H1034, H1840, H1841, H1841-S Spanish, H1842 SNAP-CAP, H1842-S SNAP-CAP Spanish, H1867, H1867-S, H1867-R, H1867-RS, H1868, H1868-S, H1869, H1869-S, H2340, Disaster SNAP Application and the Disaster SNAP Application Spanish.

**Automation**

GWS/SAVERR

Until the forms have been updated to include the required language and/or voter registration documentation "Agency Use Only" section, document any actions taken to provide the client an opportunity to register to vote in the GWS's "F5" documentation screen.

TIERS

Until the forms have been added to TIERS and/or updated to include the required language and voter registration documentation “Agency Use Only” section, document any actions taken to provide the client an opportunity to register to vote in TIERS Case Comments.

Document any actions taken to provide the client an opportunity to register to voter in TIERS Case Comments for all imaged forms.

**Effective Date**

Apply this policy immediately.

**Handbook**

The handbook will be clarified in the January 2011 revision. Forms and Forms Instructions will be updated upon completion of each form.

**Training**

All eligibility and support staff will receive refresher training through Program Area Learning Management System (PALMS) http://palms.hhsc.state.tx.us/login during the September 2010 stand down. Office of Eligibility Services will provide further instructions regarding the stand down training. Newly hired eligibility and support staff will receive voter registration training as a prerequisite web based training before their Basic Skills Training.

## 5. Children’s Medicaid Alignment

**Background**

The purpose of this section is to remind staff working in SAVERR to align the end dates for Children’s Medicaid cases as required by policy in TWH A-832, Continuous Medicaid Coverage, and to provide policy for how to align end dates for current Children’s Medicaid cases within the same household.

Currently, 33 percent of the Children’s Medicaid cases in SAVERR with two or more Children’s Medicaid cases within the same household have end dates that are not aligned. This adds an undue burden on the household since they receive multiple renewal applications and must submit verification multiple times. This is costly for the agency since multiple renewal applications must be mailed, and this causes an increase in workload as staff must process multiple renewals for the same household. This problem rarely occurs in TIERS; so this bulletin addresses only cases worked in SAVERR.

Advisors must continue to follow current policy in B-641 regarding the alignment of multiple Children’s Medicaid cases, and follow the temporary policy explained in this bulletin to correct current Children’s Medicaid cases that were not originally aligned as required.

**Continue to Follow the Current Policy in TWH B-641 Additions to the Household**

When a Children’s Medicaid case is active (Case A) and a new child is reported in the household resulting in a new Children’s Medicaid case for the newly added child (Case B), staff must align the certification end dates of the two cases. The file date for Case B is the date of the reported change. To align the end dates, the advisor must certify the new child on Case B. Then the advisor must process an **incomplete review** and enter the first calendar day of the Case A end month to shorten the certification period of the case worked later (Case B), to correspond with the end date of Case A.

For example, if Child A is on a Type Program (TP) 44 case with a January 2011 end date and Child B is reported in the household and is certified for a TP 48 with an end month of March 2011, the advisor must modify the certification period on Child B's TP 48 case by entering a new date of 01/01/11 in Item 141 and Code I in Item 131. This must be done on a paper Form H1000-B, Record of Case Action. It cannot be processed using GWS.

**Temporary Policy to Align Multiple Children's Medicaid Cases within the Same Household**

To align current Children's Medicaid cases, staff must determine if there are other active Children's Medicaid cases when processing a Children's Medicaid renewal. If so, staff aligns the certification periods. To align the certification periods, the advisor must first process the renewal that is due, and then extend the other Children's Medicaid case(s) to align with the Children's Medicaid case being renewed. This must be done on a paper Form H1000-B, Record of Case Action, following the instructions in the example below. It cannot be processed using GWS.

For example, if Child A is on a Type Program (TP) 44 case with a January 2011 end date and is renewed with a new end date of July 2011, and Child B is on a TP 48 with an end month of March 2011, the advisor must modify the certification period on Child B's TP 48 case by entering a new date of 07/01/11 in Item 141 and code I in Item 131. This must be done on a paper Form H1000-B, Record of Case Action. It cannot be processed using GWS.

If during the process of aligning the certification periods the Children's Medicaid being aligned with the Children's Medicaid renewal due is determined ineligible, **do not** deny the case but continue to process the Children's Medicaid renewal due. If the Children's Medicaid due for renewal is determined ineligible, deem to CHIP if appropriate, and do not take action on the other Children's Medicaid case. In trying to align the certification periods, a household's continuous eligibility must not be affected.

For example, Child A has a TP 48 renewal due in September 2010, and Child B has a TP 44 renewal due in January 2011. The advisor is following this temporary policy to try to align the certification periods. While processing the TP 48 renewal, the advisor determines the TP 44 would be ineligible using the updated information; therefore the advisor must only process the TP 48 renewal and must **not** process the TP 44 denial. The TP 44 child is continuously eligible. Look at aligning the cases at the TP 44 renewal due in January.

**Automation**

There is no automation change required to implement the new policy.

**Effective Date**

Apply this policy with the receipt of this bulletin.

**Handbook**

The new policy is based on a short-term need and will not be added to the handbook. Since, along with B-641, as the new policy is applied appropriately and certification alignments are corrected, the policy will no longer be required.

## 6. (A) Adoption Assistance and (B) Permanency Care Assistance Programs

**Background**

The Fostering Connections to Success and Increasing Adoptions Act of 2008 (Fostering Connections Act) amends the Social Security Act in order to promote permanency and to achieve better outcomes

for children who are at risk of entering or returning to foster care. The Fostering Connections Act offers vulnerable children meaningful family connections and important protection and support.

Texas House Bill (HB) 1151 and Senate Bill 2080, passed by the 81st Texas Legislature, required the Department of Family and Protective Services (DFPS) to create:

- A Permanency Care Assistance (PCA) Program that would provide assistance to relatives and other designated caregivers, who have served as verified foster parents for a child for six months and who have subsequently taken permanent managing conservatorship of the child.
- Extended adoption assistance and PCA payments that continue up to the time the young person turns 21 if:
  - agreements for such assistance were finalized after the young person turns 16, and
  - the young person meets additional DFPS eligibility criteria relating to educational or vocational activities.

HB 1151 mandates that DFPS implement these provisions by September 1, 2010. Agreements between DFPS and relatives or other designated caregivers will start after September 1, 2010. Cash payments will start October 1, 2010.

DFPS will determine eligibility for the PCA and Adoption Assistance programs and passes the eligibility determination to TIERS via an interface. TIERS creates and supports four new medical coverage types of assistance (TOA) for PCA and one new type program (TP) for Adoption Assistance:

- TA78 – PCA Medicaid – Federal Match – No Cash
- TA79 – PCA Medicaid – No Federal Match – No Cash
- TA80 – PCA Medicaid – Federal Match – With Cash
- TA81 – PCA Medicaid – No Federal Match – With Cash
- TP96 – Adoption Assistance – No Federal Match – With Cash

This bulletin explains how these new programs affect Texas Works eligibility.

**Note:** All of the recipient children from these programs should be processed in TIERS. None should be processed through GWS/SAVERR.

## (A) Adoption Assistance Program

### Current Policy

Adoption Assistance payments are received through the child's 18th birthday month. The payments are exempt for all Texas Works programs.

### New Policy

Effective October 1, 2010, Adoption Assistance may be extended to the end of the month of the young person's 21st birthday if the agreement, between DFPS and the relatives or other designated caregivers, is finalized after the young person turns 16 and meets the additional DFPS eligibility criteria. The extended Adoption Assistance payments are exempt for all Texas Works programs.

## (B) Permanency Care Assistance Program

### Current Policy

There is no Texas Works policy for the PCA Program.

**New Policy**

Effective October 1, 2010, the PCA Program provides medical assistance and/or cash payments to a child, as explained above.

**SNAP**

For SNAP, PCA cash payments are treated the same as foster care payments. Staff follow current foster care payment policy in TWH A-1326.4, Foster Care Payments.

SNAP households can choose to include or exclude a PCA child as a SNAP household member. Households with more than one PCA child can choose to include or exclude PCA children, even if related to each other or to the caregiver. The decision to include or exclude a PCA individual from the SNAP household is made by the caregiver.

If a PCA child is included as a SNAP household member, PCA cash payments are counted as unearned income. Advisors must verify PCA cash payments following normal verification policy for unearned income. A client's statement is not an acceptable source of verification for the amount of PCA cash payment. Typically, verification will require an oral or written statement from DFPS PCA staff. The following are acceptable verification sources for PCA cash payments:

- Agency contract/record
- DFPS advisor/representative statement
- Award letter
- Copy of check or check stub

Example: A SNAP household cares for two PCA children (child 1 and child 2). The household receives PCA cash payments of $400 a month for PCA child 1 and $500 a month for PCA child 2. The caregiver chooses to include PCA child 1 in the certified group and to exclude PCA child 2. In this example, count $400 as unearned income listing PCA child 1 as the recipient. Do not count the $500 received for PCA child 2, since PCA child 2 is excluded from the certified group. **Note:** All other income received by PCA child 2 is also excluded.

**Medical Programs and TANF**

For medical programs and TANF, PCA Medicaid and PCA cash payments are treated the same as foster care Medicaid/cash payments. Staff should follow current foster care Medicaid/cash payment policy in TWH A-1326.4, Foster Care Payments, as explained above.

Medical Programs

Do not include a person receiving PCA Medicaid or PCA cash payments in the Texas Works Medicaid budget or certified group. The caretaker may be eligible to receive Medicaid.

DFPS will use state funds to pay for the following PCA TOAs:

1. TA79 – PCA Medicaid – No Federal Match – No Cash
2. TA81 – PCA Medicaid – No Federal Match – With Cash

These two new programs are identified in TIERS as Medicaid; however, they are being funded entirely by the state and are legally not considered Medicaid. Therefore, newborn children of these recipients do not qualify for newborn Medicaid coverage as they would if the mother were receiving Medicaid coverage. If the pregnant woman does not get Medicaid coverage for the child's birth, she will have to apply for Medicaid coverage for the newborn.

**Note:** If a mother receiving TA79/TA81 applies for Medicaid for her newborn, on the Newborn Details page in TIERS, staff must answer “**No**” to the question, *“Was the mother eligible for and received coverage at the time of birth?”* as these two new TOAs are not considered Medicaid.

TANF

Do not include a child receiving PCA cash payments in the TANF budget or certified group. The caretaker may be eligible to receive TANF.

There might be some instances in which the child is not eligible for the PCA cash payments and only receives PCA Medicaid; these children may be eligible for TANF.

**Automation**

GWS/SAVERR

There are no changes to GWS. In the rare situation that SNAP eligibility for a PCA child is determined in GWS (and the caretaker chooses to include the child in the SNAP case), staff should enter the income in the following way:

Enter PCA income as “Other Income” under the child’s name. Enter the source of income as “PCA Income.” The details of the income should be “Ongoing Payments.” The purpose should be “PCA,” and the income should be tabbed to “Count in FS only.”




TIERS

All labels and titles that make reference to Foster Care are modified to read “Foster Care/PCA.” For SNAP purposes, TIERS displays the following message on the Program Details page:

> ***“Reminder: If the Foster/PCA Caregiver chooses to exclude the Foster/PCA child from Food stamps, enter 'No' to aid requested”***

An example of the reminder message is pictured in the TIERS screen which follows:




Further, TIERS is modified to capture PCA as a new type of unearned income. Choose “PCA” from the Unearned Income Type drop down menu as pictured below:



**Task List Manager (TLM) and Alerts**

The following alerts are modified to include PCA in the description:

| No. | Alert Message |
|---|---|
| Alert 270 | TANF Client Receives Foster Care, PCA, or Adoption Assistance Payments |
| Alert 271 | Agency Generated Change – FS client receives Foster Care, PCA, or Adoption Assistance Payments |
| Alert 750 | Foster Care/PCA added – FS action necessary |
| Alert 751 | Change in Foster Care/PCA caregiver – FS action necessary |
| Alert 752 | Foster Care/PCA terminated – FS action necessary |
| Alert 753 | Foster Care/PCA Change - cash from/to non-cash – FS action necessary |
| Alert 754 | Foster Care/PCA child aged out – FS action necessary |

The TLM supports the above listed alerts and creates a task using the same alert description.

**Effective Date**

This policy is effective October 1, 2010.

**Handbook**

This policy will be incorporated into the January 2011 handbook revision.

**Training**

Basic Skills Training will be updated to reflect the new policy.

# Appendix C

# Course Introduction

This course explains various TIERS and State Portal changes being implemented in Release 81.

The course contains these lessons:

Lesson 1 – Voter Registration

Lesson 2 – Client Address Change

Lesson 3 – Continuously Eligible Newborn

# Lesson 1 - Voter Registration

## Lesson Purpose and Objectives

The purpose of this lesson is to explain:

- how TIERS forms are being changed to reflect updated Voter Registration language.
- changes to the **Individual Demographics – Citizen** page to document the client's answers to voter registration questions and the actions you took to provide the individual with the opportunity to vote
- changes to the SSP for voter registration

After completing this lesson, you should be able to:

- Identify forms that are being updated with Voter Registration language
- Identify when the vendor will send the H0025
- Understand how TIERS prefills Voter Registration fields based on individual demographics
- Correctly complete the *Voter Registration* area on the **Individual Demographics – Citizen** page
- Understand how to enter voter registration information for SNAP-CAP cases
- Understand changes to SSP and how SSP voter registration information transfers to TIERS

## What is Changing

All TIERS application, redetermination and change report forms are being updated to include required voter registration language (in English and Spanish) and an "Agency Use Only – Voter Registration Status" section. This is being done to meet requirements of the National Voter Registration Act of 1993 and Texas statutes regarding voter registration. You will use the "Agency Use Only – Voter Registration Status" section to document the actions you took to provide the client with an opportunity to register to vote. This applies to forms returned to the office, before they are sent for imaging.

TIERS pages are changing to include questions asking if an individual wants to register to vote. If the answer is Yes, TIERS generates a request to send the Voter Registration form (H0025) and cover letter to the client. Use these new fields to document the client's decision regarding voter registration and the actions you took to provide the individual with the opportunity to vote. These are equivalent to the voter registration question and the Agency Use Only section on the forms.

## Updates to Correspondence

This is the text that will appear on TIERS forms:

**Signing up to vote:**
Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency.

**If you are not registered to vote where you live now, would you like to apply to register to vote here today?** ........................
☐ Yes ☐ No

IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME. If you would like help in filling out the voter registration application form, we will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private. If you believe that someone has interfered with your right to register or to decline to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with the Elections Division, Secretary of State, PO Box 12060, Austin, TX 78711. Phone: 1-800-252-8683

**Agency Use Only: Voter Registration Status**
☐ Already registered ☐ Client declined ☐ Agency transmitted ☐ Client to mail
☐ Mailed to client ☐ Other Agency staff signature: ______________________

Most paper versions of forms were already updated with these changes. In this release, TIERS forms are being updated to match the paper forms.

### Revised MERP Statement

Also, a revised MERP statement (in English and Spanish) is being added to these MEPD forms:

- H1200
- H1200 – A

- H1200 – PFS
- H1200 – SR
- H1200 – EZ-MSP

**Notice: Your estate might have to pay the state back for services you get.**
**Medicaid Estate Recovery Program:** If you get certain Medicaid long-term services, the state of Texas has the right to ask for money back from your estate after you die. In some cases, the state might not ask for anything back. The state will never ask for more money back than it paid for your services. The state can ask for money back from your estate only if: (1) you applied for and received certain Medicaid services on or after March 1, 2005, and (2) you were age 55 or older when you got the services. To learn more, call 1-800-458-9858.

## Automatic Generation of H0025

TIERS sends the H0025 Voter Registration Application, along with the cover letter, at application, redetermination, at client request and when the physical address is changed.

When a physical address is changed on the TIERS **Address** Page, TIERS generates a request to send the H0025 and address change cover letter.




## Changes to TIERS Pages

### TIERS Individual Demographics

A new area is being added to the TIERS **Individual Demographics – Citizen** page. This area is labeled *Voter Registration Information*.




### Does the client want to register to vote at this time?

The first question is *Does the client want to register to vote at this time?*




TIERS requires you to complete this field if the individual is at least over 17 yrs 10 months old and is a citizen. Choices are Yes, No or blank. If the individual is less than 17 years 10 months old, or is not a citizen, the question defaults to No and TIERS populates "Client Ineligible" in the *Valid Reason* field.

### Send Voter Registration Application?

If you answer Yes to the first question, you must then answer the question *Send Voter Registration Application?* If the client wants a voter registration application to be sent, answer Yes.




When you answer Yes, TIERS sends the general cover letter and the H0025.

### Valid Reason

You must enter a *Valid Reason* (the same as the Agency Use Only - Voter Registration section on the forms) based on the client's decision regarding registering to vote and the actions you took to provide the client with an opportunity to register to vote.






### Try It: Complete Voter Registration Information

### Entering Voter Registration Information for SNAP-CAP Cases

The SNAP-CAP driver flow does not go to the **Individual Demographics – Citizen** page. You must use the Left Navigation bar to access **Individual Demographics – Citizen** and complete the *Voter Registration* section.




### Self Service Portal Changes

If the client completes related voter registration questions on SSP, that information is carried over in the SSP process.

SSP displays the question *If you are not registered to vote where you live now, would you like to apply to register to vote here today?* The required voter registration language also appears after the question.

#### SSP Populates Voter Registration Fields

SSP stores the client's answer and transfers the answer to TIERS when the client submits the application through SSP. When you reach the **Individual Demographics – Citizen** page for an SSP application, the SSP record displays the answer in the TIERS question *Does the client want to register to vote at this time?*

If the client answered No or did not choose an answer, SSP defaults the answer to No and defaults the *Valid Reason* field to Client Declined.

If the client answered Yes, SSP displays the answer and also defaults Yes for the question *Send Voter Registration Application?* TIERS sends a request to generate the H0025 and general cover letter.

### Review/Summary

All TIERS application, redetermination and change report forms are being updated to include required voter registration language (in English and Spanish) and an "Agency Use Only – Voter Registration Status" section.

The **Individual Demographics – Citizen** page in TIERS is changing to include questions asking if an individual wants to register to vote. If the advisor enters the information from a non-SSP application and records Yes for the question "*Send Voter Registration Application?*",TIERS issues the Voter Registration form (H0025).

The voter registration question in the Self Service Portal is also being changed. SSP saves the response and displays it when you process an SSP application in TIERS. When an application comes from SSP and the applicant indicates a desire to register to vote,TIERS automatically answers Yes to the question "*Send Voter Registration Application?*" and issues an H0025 and general cover letter.

## This completes Lesson 1. Use the Course Table of Contents, on the left side of the page, to begin Lesson 2.

# Appendix D

CATHERINE CORTEZ MASTO
Attorney General
KEVIN R. BENSON
Deputy Attorney General
Bar No. 9970
Office of the Attorney General
100 N. Carson Street
Carson City, Nevada 89701
P: (775) 684-1100
F: (775) 684-1108
E-mail: kbenson@ag.nv.gov

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

NATIONAL COUNCIL OF LA RAZA, LAS VEGAS BRANCH OF THE NAACP (BRANCH 1111), and RENO-SPARKS BRANCH OF THE NAACP (BRANCH 1112),

Plaintiff,

v.

ROSS MILLER, *in his official capacity as Secretary of State of the State of Nevada*; and MICHAEL WILLDEN, *in his official capacity as Director of the Department of Health & Human Services of the State of Nevada,*

Defendant.

Case No. 3:12-cv-00316-RCJ-VPC

**DEFENDANT WILLDEN'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

TO: National Council of La Raza, et al Plaintiffs; and

TO: W. Chris Wicker, Esq. et al., Plaintiffs' attorney of record:

Pursuant to Fed.R.Civ.P. 33, Defendant MICHAEL WILLDEN answers the Plaintiffs' First Set of Interrogatories:

**INTERROGATORY NO. 1**: Identify, by month and LDHHS office, the number of initial applications, re-certifications, and changes of address for receipt of Public Assistance under the programs SNAP, TANF, WIC, Medicaid, Nevada Check-up, Kinship Care Program, and CCDF Child Care Program

**ANSWER TO INERROGATORY NO. 1**:

I do not have this information because the Department of Health and Human Services does not

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

**ANSWER TO INTERROGATORY NO. 11**:

I have assigned staff to review the allegations made by Demos as to non-compliance and have not been able to verify that any office was out of compliance. I have assigned staff in the Director's Office Department level and at the Division and local office level to monitor compliance and ensure training of employees. I have assigned staff to update policies to incorporate the 10th Circuit interpretation of the National Voter Registration Act. Because Division of Welfare and Supportive Services applications are disseminated prior to any face to face meeting, a voter application form has been incorporated into the application both on-line and with hard copies that are mailed or available to be picked up at a DWSS office as of August 13, 2012. The Secretary of State's Office developed a specific PDF voter registration application which should prevent any supply problems and may assist with tracking forms.

DATED this 10 day of September, 2012.

CATHERINE CORTEZ MASTO
Attorney General

By: [signature]
/s KEVIN E. BENSON
Deputy Attorney General
Bar No. 9970
100 N. Carson Street
Carson City, Nevada 89701

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

# VERIFICATION

STATE OF NEVADA )
) ss.
CARSON CITY )

I, MICHAEL WILLDEN do hereby swear under penalty of perjury that the assertions of the Answers to Interrogatories are true.

That Affiant is a plaintiff, herein and has read the within and foregoing Answers and know the contents thereof; the same is true of Affiant's own knowledge, except as to those matters stated on information and belief, and as to those matters Affiant believes them to be true.

MICHAEL WILLDEN

Subscribed and sworn to by MICHAEL WILLDEN
before me this 7th day of September, 2012.

Notary Public

ANNETTE M. ANDERSON
NOTARY PUBLIC
STATE OF NEVADA
No. 97-3992-3 My Appt. Exp. Aug. 12, 2016

# Appendix E

## Virginia Department of Social Services



# NVRA

(National Voter Registration Act)

# It's The Law

The National Voter Registration Act (NVRA) of 1993 requires local departments of social services to offer each applicant for, or recipient of, Temporary Assistance for Needy Families, Food Stamps, and Medicaid an opportunity to apply to register to vote.

**Compliance with the NVRA:**

**Not Optional**

# Application/Renewal/Address Change

A voter registration application and a certification form must be provided with each application for benefits, application for recertification/renewal, and change of address, even when a face-to-face interview is not conducted.

Unless the applicant refuses, the same level of assistance that is provided in the completion of your benefit application forms, including bilingual services when necessary, must be provided in completing a voter registration and/or certification form.

TANF: Chapter 400, Appendix II    FS: Part II, Appendix I    MED: M0110.300



# Prohibited Activities



**Agency personnel are prohibited from:**

Seeking to influence an applicant's party preference,

Displaying any political or candidate preference or party allegiance,

Making any statement or taking any action whose purpose or effect is to discourage the applicant from registering to vote, or

Making any statement or taking any action whose purpose or effect is to lead the applicant to believe that a decision whether or not to register has any bearing on the availability of services or benefits.




# Confidentiality

No information regarding a person's certification to register may be used for any purpose other than voter registration.

Similarly, if an individual does register to vote, the particular agency at which the applicant submits a voter registration application may not be publicly disclosed.

The application cannot be copied or used for any purpose other than voter registration in the Commonwealth of Virginia.

# Application for Benefits

Voter Registration language has been revised.

VOTER REGISTRATION

**If you are applying for TANF, Food Stamps or Medicaid,** check one of the following:

**If you are not registered to vote where you live now, would you like to register to vote here today?**

□ Yes, I would like to register to vote. (If you would like help filling out the voter registration application form, we will help you. The decision to accept help is yours. You also have the right to fill out your voter registration application form in private.)

□ I do not want to apply to register to vote today.

**IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.**

Applying to register or declining to register to vote will not affect the amount assistance or services that you will be provided by this agency. If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with: Secretary of the Virginia State Board of Elections, Ninth Street Office Building, 200 North Ninth Street, Richmond, VA 23219-3497, (804) 864-8901.

# The Voter Registration Agency Certification Form is a Standalone Document

Currently, 116,000 applications are housed in the warehouse with incorrect voter registration language. Once these are exhausted the VDSS will have new applications printed to reflect the correct NVRA language. In the meantime, local staff will have their customers complete the standalone certification document. Please instruct your customers to disregard the voter registration language in the current application and to complete the separate standalone certification document.



# Agency Administration

## The Voter Registration Agency Certification

## (available in English and Spanish)

### Commonwealth of Virginia
### Voter Registration Agency Certification

**If you are not registered to vote where you live now, would you like to apply to register to vote here today?**

☐ Yes. I would like to register to vote (please fill out the voter registration form).

☐ I do not want to register to vote.

**IF YOU DO NOT CHECK ANY BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.**

Applying to register to vote or declining to register to vote will not affect the assistance or services that you will be provided by this agency.

If you decline to register to vote, this fact will remain confidential. If you do register to vote, the office where your application was submitted will remain confidential, and may be used only for voter registration purposes.

If you would like help in filling out the voter registration application form, we will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private.

**If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register or in applying to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with:**

**Secretary of the Virginia State Board of Elections**
**Ninth Street Office Building**
**200 North Ninth Street, Room 101**
**Richmond, VA 23219-3497**
**(804) 864-8901**

# Agency Administration

## Voter Agency Certification Form

First Block Checked:



Commonwealth of Virginia
Voter Registration Agency Certification

**If you are not registered to vote where you live now, would you like to apply to register to vote here today?**

☒ Yes. I would like to register to vote (please fill out the voter registration form).

☐ I do not want to register to vote.

**IF YOU DO NOT CHECK ANY BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.**

Make sure the individual is provided with a *Virginia Voter Registration Application* form. Provide whatever assistance the individual indicates is needed to complete the form and offer to mail in the completed voter registration application.

# Agency Administration cont.

Second Block Checked:

Commonwealth of Virginia
Voter Registration Agency Certification

**If you are not registered to vote where you live now, would you like to apply to register to vote here today?**

☐ Yes. I would like to register to vote (please fill out the voter registration form).

☒ I do not want to register to vote.

**IF YOU DO NOT CHECK ANY BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.**

se

vo
onl

**For agency use only**

**Voter Registration Form completed:** ☐ **Yes** ☒ **No**

Voter Registration Form given to applicant for later mailing (at applicant's request):

☐ Yes ☐ No

| Agency Staff Signature | Date |
|---|---|

Mark the 'No' box next to the "Voter Registration Form Completed" statement.

Sign and date the form.

Do not mail the certifications form. Place the form in the client's case record.

# Agency Administration cont.

If the individual requests to take the form to be filled out later, mark the box, "*Voter Registration Form given to applicant for later mailing*".

**Secretary of the Virginia State Board of Elections**
**Ninth Street Office Building**
**200 North Ninth Street, Room 101**
**Richmond, VA 23219-3497**
**(804) 864-8901**

| Applicant Name | | Signature | | Date |
|---|---|---|---|---|

**For agency use only**

Voter Registration Form completed: ☐ Yes ☐ No

Voter Registration Form given to applicant for later mailing (at applicant's request):

☒ Yes ☐ No

# Agency Administration cont.

Once the applicant has completed the Voter Registration Agency Certification form, review for the following:

- Has the applicant printed his/her name in the *Applicant Name* space?
- Has the applicant signed the form in the *Signature* space?
- Has the applicant dated the form with the current date in the *Date* space?
- If any information is missing or not legible, return the form to the applicant for completion or clarification.

# Agency Administration cont.

- If a person does not fill out the form or refuses to sign the form, print the individual's name on the form and place your initials beside the name.

  **This will be considered a declination to register to vote.**

- After the certification form has been filled in correctly, you may accept it and complete the agency portion of the form.

**For agency use only**

Voter Registration Form completed: ☐ Yes ☐ No

Voter Registration Form given to applicant for later mailing (at applicant's request):

☐ Yes ☐ No

| | | | |
|---|---|---|---|
| Agency Staff Signature | | Date | |

# Agency Administration cont.

## Filing the Voter Agency Certification Form

- The certification form should be kept in the client's file so other agency personnel will know that the individual has been offered an opportunity to register. This form should be retained in accordance with Virginia’s record retention requirement.

– Additional forms may be photocopied or ordered.

# Forms Must Be Available

Local agencies ***must*** have a supply of voter registration applications on hand at all times.





# Forms Must Be Available

Local departments of social services must also have voter registration forms available for the public in the lobby. Agencies should prominently display for public viewing posters, flyers, and/or display boxes advertising voter registration applications and related services.



# When Requesting Voter Registration Forms and Related Documents from the State Board of Elections

Request are to be sent to:

State Board of Elections
200 North Ninth Street
Room 100
Richmond, VA 23219
E-mail Address:
garry.ellis@sbe.virginia.gov

Request must include:

1. Form name: "Virginia Voter Registration Application Form" -- Form number: VANVRA-1(Rev. 10/07)
2. Number of forms requested;
3. Name of local department of social services (LDSS);

# When Requesting Forms

continued

4. Name, title, department, and phone number of LDSS contact person;

5. Physical mailing address of LDSS (i.e., street address, not post office box). Shipping is handled by United Parcel Service (UPS) and must meet UPS address requirements; and

6. If forms should be mailed to satellite offices, include the address and number of forms requested for each office where forms are to be sent.



If you have any questions about ordering forms, please contact Mr. Ellis at (804) 864-8910 or 1-800-552-9745. You may also fax your request to (804) 371-0914.

# Agency Administration

Weekly, the local agency NVRA contact must complete all of the following steps:

1. Submit voter registration applications to the local registrar every Friday or the last working day before Friday if Friday is a holiday.

2. Enclose all completed application forms in a pre-addressed, coded envelope, supplied by the State Board of Elections.

3. Include agency name at the return address area.

# Agency Administration

4. Envelopes with completed registration forms must be marked with an “A” in the upper left corner along with the number of registration forms in the envelope.

5. Deliver the envelope to your local registrar.

NOTE: As election day approaches, the local agency NVRA contact must submit the registration application forms daily; agency contacts will be notified by broadcast when these forms must be submitted daily.

# Local DSS Reporting Requirement

## Beginning July 2008

- By the 15th of each month report the number of voter registration applications submitted to the local registrar and to the State Board of Elections for the prior month.

- An electronic reporting mechanism will be available through SPARK.



# Local NVRA Contact Person

## Responsibilities:

- Submitting completed registration forms to the registrar each week
- Submitting monthly report to VDSS each month
- Maintaining a supply of:
  - ✓voter registration applications
  - ✓Training manuals/references
  - ✓Display boxes
  - ✓Agency transmittal envelopes and posters

  (Complete list of voter registration materials are available through the State Board of Elections)

# Restoration of Voting Rights

Information flyers from the American Civil Liberties Union (ACLU) are available:

American Civil Liberties Union of Virginia

530 East Main Street, Suite 310

Richmond, VA 23219

(804) 644-8080

# Management Evaluation Reviews

NVRA compliance will be an element of the federal Food Stamp Management Evaluation (ME) review.

- The United States Department of Agriculture has granted approval to include NVRA compliance in the ME review process.
- Effective with reviews completed for the month of June 2008.
- This ensures our efforts to afford individuals an opportunity to apply to register to vote, are achieved.

# Compliance

Compliance with the NVRA is mandatory as we seek to ensure that those that we serve have the opportunity to register to vote.




**It's the Law!**

# THANK YOU!




On behalf of Anthony Conyers, Jr., Commissioner of the Virginia Department of Social Services and Thomas Steinhauser, Director for the Division of Benefit Programs, we thank you for your commitment to make our democracy stronger and to serve our fellow citizens.

A special thank you to Stephanie Napper, VDSS Program Consultant, for her assistance in this project.

Questions about this training may be directed to

Walter S. Burton, Jr., Assistant Director for Benefit Programs

(804) 726-7365 or

walter.burton@dss.virginia.gov

# Appendix F

April 28, 2008

TO: Members of the Interdepartmental NVRA Section 7 Work Group

FROM: Brian Moe, Deputy Secretary of State

RE: Required Voter Registration Services in Agency Sites -- Procedures to Follow

**Purpose**

The purpose of this memorandum is to outline required procedures that will assist agency staff in complying with the National Voter Registration Act (NVRA). It focuses on mandated procedures for providing voter registration applications and declinations to clients and transmitting applications promptly to election authorities.

The Interdepartmental NVRA Section 7 Work Group is currently working with all state agencies that provide voter registration to assess, evaluate, and enhance their current NVRA voter registration procedures. It is possible that the Work Group may find some changes in procedures are needed to ensure the availability of voter registration services. If so, additional memoranda may be distributed.

**Background**

The National Voter Registration Act (NVRA) is an important federal civil rights law that requires public assistance agencies to offer voter registration services to all persons applying for benefits, recertifying or renewing their eligibility, or recording a change of address.

Pursuant to the NVRA, Maryland has designated as voter registration agencies all local offices of the Maryland Children's Health Program, all local departments of social services units providing Temporary Cash Assistance, Food Stamps, or Medicaid, all offices primarily engaged in providing State-funded services to individuals with disabilities, including the Maryland Transit Administration Paratransit Certification Office, all offices for students with disabilities at private and public colleges and universities, offices on aging, and recruitment offices of the armed forces of the United States. Marriage license offices and public institutions of higher education also have certain responsibilities with respect to voter registration, but their responsibilities have been outlined in a separate memorandum.

Agency employees are to provide the same assistance with voter registration applications as they would with any other agency form. In addition, agency sites are required to transmit completed voter registration applications to election authorities within five days of receipt.

## A. Materials to Be Kept on Hand

1. The director or supervisor of each office must make sure the following materials are on hand in sufficient quantities:

   a. Voter Registration Applications. Each office must maintain a supply of voter registration applications for distribution to each client who applies for benefits, recertifies eligibility, or seeks to record a change of address. Do not wait until forms run out before requesting additional forms.

   b. Declination forms. This is the form, separate from the voter registration application itself, on which persons indicate whether or not they would like to register to vote. It is a required part of record keeping under the NVRA. See below, Section B.4, for details on completing the declination form.

2. Posters informing the public that voter registration services are available should be displayed; they can be obtained from SBE.

## B. Required Procedures for Client Interactions.

1. Who Must Receive Voter Registration Services. Voter registration applications and declination forms must be provided by staff to **all** clients or applicants with each of the following:
   a. Any application for benefits;
   b. Any renewal or recertification for benefits; and
   c. Any change of address form.

2. Assistance with Voter Registration Application. Staff members must provide each applicant who does not decline to register to vote the same degree of assistance with regard to completion of the voter registration application as the office provides in completing its own benefits applications, including bilingual assistance if needed, unless the applicant refuses such assistance. This should include reviewing voter registration applications to assure they are filled out completely and signed by the applicant.

3. Declination Form. All persons seeking to apply for, renew or recertify their benefits, or to register a change of address or name, must be asked to fill out a declination form, whether or not they also fill out a voter registration application. Clients should check the appropriate box indicating their preference concerning registration, and then sign and date the form. If, for whatever reason, the client refuses to do so, staff should initial the form and date it. Declination forms, even if left blank by the client, should be retained in office records. Federal law requires that these forms be retained for no less than 22 months from the federal election to which the form would first apply.

4. Services at Client's Home. If the office provides services to an individual with a disability at the individual's home, the agency must provide the services described herein at the individual's home.

5. Out-of-office Transactions. Agencies should use best efforts to facilitate voter registration during out-of-office transactions with clients. For example, if clients pick up application forms to take home, or request any services by phone, mail or internet, the declination form and voter registration application should be included in what is given or mailed to the clients. Agencies also should provide links to voter registration information on their websites.

6. Avoiding improper political activity. An individual who provides any voter registration services described above may not:
   a. seek to influence an applicant's political preference or party registration;
   b. display any political preference or party allegiance; or
   c. make any statement to an applicant or take any action the purpose or effect of which is to discourage an applicant from registering to vote, or to lead the applicant to believe that a decision to register or not to register has any bearing on the availability of services or benefits.

7. Confidentiality. No information relating to a declination to register to vote in connection with an application made at an office designated as a voter registration agency may be used for any purpose other than the maintenance of voter registration statistics. The identity of a voter registration agency through which a particular voter has registered may not be disclosed to the public.

**C. Completed Voter Registration Applications.**

1. Accepting Completed Forms. Each office must accept completed voter registration applications for transmittal to the appropriate election board. Clients who are interested in registering should be encouraged to complete the form at the office to help ensure that the form is turned in. An applicant also has the option of mailing the voter registration application to the appropriate local election official or returning it to the agency for transmittal to the appropriate election official after completing it elsewhere.

2. Stamping Completed Forms. When a voter registration application is completed and returned to a voter registration agency, the agency shall stamp the voter registration application with the date and time received.

3. Forwarding Applications to Election Officials. Within 5 days from the acceptance of a voter registration application, the voter registration agency shall forward the application to the appropriate local election board.

   In order to facilitate required reporting on the numbers of voter registration applications received at public assistance offices, please be sure that any

applications you submit to the local election board are submitted in an envelope or package indicating your office address.

**D. Contact Information for Assistance or Materials**

For answers to questions about voter registration laws, rules, and procedures, contact your Assistant Attorney General. To order more voter registration applications, contact the State Board of Elections.

# Appendix G

STATE OF MICHIGAN
DEPARTMENT OF HUMAN SERVICES
LANSING

RICK SNYDER
GOVERNOR

MAURA D. CORRIGAN
DIRECTOR

March 29, 2012

Lisa J. Danetz
Demos
Suite 303
358 Chestnut Hill Avenue
Brighton, MA 02135

Sabrina Khan
Project Vote
Suite 1250
1350 I Street, NW
Washington, D.C. 20005

Mark Posner
Lawyers' Committee for Civil Rights Under Law
Suite 400
1401 New York Avenue, NW
Washington, D.C. 20005

Anson Asaka
NAACP
4805 Mount Hope Drive
Baltimore, MD 21215

In its letter dated January 27, 2012, the Michigan Department of Human Services (DHS) outlined its action plan to ensure continued compliance with the National Voter Registration Act of 1993 (NVRA). As a result of your questions and feedback, DHS is sending this supplemental letter to provide clarification and outline additional updates to its NVRA action plan.

**Statewide Coordinator**

In addition to the responsibilities outlined in the January 27, 2012 letter, the statewide coordinator's NVRA oversight responsibilities will include:

- Analyzing the monthly data and taking action to address apparent problems. This obligation will begin with the March 2012 data. DHS will set a benchmark percentage to be determined after receiving data from comparable states, which will trigger follow-up action by the statewide coordinator. If a significant number of local offices fail to meet the benchmark in a given month, the statewide coordinator will follow-up with, at a minimum, three local offices with the lowest percentages.
- Working with local coordinators to identify and resolve any problems with NVRA compliance and, if necessary, to implement a corrective action plan.

**Performance Reviews**

Beginning in 2012, NVRA compliance will be included in performance reviews for county office directors as well as the statewide voting coordinator. NVRA compliance will remain a part of these performance reviews until at least December 31, 2014.

**Management Evaluation Reviews**

If, after implementation of the changes outlined here and in the letter dated January 27, 2012, it appears that additional oversight mechanisms are necessary, DHS will consider incorporating NVRA compliance into its management evaluation review process.

**Modification to DHS-1171 (Assistance Application)**

The DHS-1171 is reviewed annually in June and revised as needed (based on policy changes, legislative changes and/or federal changes) for the following fiscal year. As part of the annual review process, DHS will consider:

- Changing the title of Subsection U to "Offer of State of Michigan Voter Registration Application"
- Adding all the program assistance icons at the top of Section U to indicate that an individual seeking any type of assistance should fill out this section
- Adding the following text at the end of the note that follows the voter registration question: "Checking 'yes' does not register you to vote. If you check 'yes' or do not respond, a voter registration application will be provided to you."

**Communication with the Field**

Since your letter dated August 19, 2011, DHS has issued the following communications regarding NVRA policies, procedures and practices:

- On January 31, 2012, DHS issued a memo notifying DHS deputy directors, local office directors, and district managers of upcoming policy and technology changes and emphasizing voter registration requirements including: (1) Caseworkers will continue to offer clients voter registration applications at the time of application, redetermination, address change, and upon request; (2) Voter registration applications must be available in local offices at all times (information about where to obtain forms was also provided); (3) Voter registration posters have been provided to all local offices and must be displayed in all office lobbies (information about obtaining additional posters was also provided); (4) Each DHS local office is required to identify a voter registration coordinator and a back-up coordinator, and changes must be reported to the statewide coordinator. A copy of the memo is enclosed with this letter.
- During the statewide directors' conference call on February 2, 2012, NVRA compliance was discussed and emphasized. The voter registration application distribution requirement was reiterated, and participants were asked to ensure that their staff had read the January 31, 2012, memo. They were also advised of the upcoming mandatory training.

- On February 27, 2012, DHS posted a headline in the "What's New" section of the main page of the DHS-Net, along with a paragraph reiterating the requirement that a voter registration application be distributed with each application, redetermination, address change, and provided upon customer request. This paragraph emphasizes that if the voter registration question in Section U of the DHS-1171 or other DHS application or redetermination forms is left blank, a voter registration application must be distributed. A link to the January 31, 2012, communication was also included in the "What's New" section. A screen print of the "What's New" section of the main page is enclosed with this letter.
- Finally, DHS recently issued a memo alerting DHS county directors and other key field operations administration (FOA) staff that, when processing a DHS-1171 or other DHS application or redetermination form that includes the voter registration question, a voter registration application must be issued unless the individual declines in writing by checking the "no" box. The memo is explicit that, if the question is left blank, a voter registration application must be given to the customer. The memo also provides relevant dates and information about the mandatory caseworker and local coordinator training programs. On March 14, 2012, an alert and the memo were posted on the DHS FOA Sharepoint site, which is used to communicate information and updates to the field. Additionally, the memo was emailed to DHS county directors and other key FOA staff on March 15, 2012, and asked them to review the memo then share it with appropriate staff. A copy of this memo and a screen print of the Sharepoint site are enclosed with this letter.

**Forms in Lobbies**

Revised DHS policy requires local coordinators to ensure that voter registration applications are available in lobbies at local DHS offices.

**Distribution and Assistance Policy**

As stated in the letter dated January 27, 2012, DHS employees will distribute a voter registration application with each benefits application, redetermination, or change of address unless the client declines a voter registration application in writing. This policy applies regardless of whether the DHS benefits form involved in the transaction includes the voter registration question, and regardless of whether information is entered into Bridges during or after an in-person interview. To be clear, this policy also means that DHS will provide a voter registration application to all individuals responding "yes" or leaving a blank response to the voter registration question within DHS benefits forms.

The Bridges "hard stops" apply to all transactions that involve forms containing the voter registration question, which includes most assistance applications and redeterminations. Application and redetermination forms that include the voter registration question are the DHS-1171 (Assistance Application), DHS-1011 (Medicaid Supplemental Questionnaire), DHS-1010 (Redetermination Form), MiCAP FAP Application, DHS-4583 (Child Development and Care Application), and the MiCap Redetermination form.

For some programs, it is possible to apply for or renew benefits by submitting only a form that does not include the voter registration application question. Examples include the DHS-4574 (Medicaid Application for Patient of Nursing Home), and the DHS-1514 (State Emergency Assistance Application). When an individual fills out these forms in person, a voter registration application also will be distributed. If these forms are distributed by mail, a voter registration application will be mailed along with the assistance application or redetermination form.

**In-Person Transactions** – Revised DHS policy, enclosed with this letter, will become effective at approximately the same time as the Bridges changes and still requires caseworkers to distribute a voter registration application during all in-person transactions (including changes of address reported in-person). DHS has adopted two practices to ensure this occurs. First, training specifically includes and emphasizes the need to distribute a voter registration application in person. Second, as a fail-safe mechanism, the revised policy emphasizes that if, for any reason, a form is not distributed in person, the caseworker completing Bridges must select "Yes—out of office" in response to the Bridges voter registration question so that a voter registration application is automatically generated from Bridges and mailed to the client. For DHS assistance application/redetermination forms that do not include the voter registration question, the caseworker must mail a voter registration application to the client. The requirements and fail-safe provision are emphasized in the new caseworker training program that DHS has finalized, and will be required for all applicable DHS employees by April 9, 2012.

**Change of Address** – With the Bridges changes that will be introduced by March 31, 2012, Bridges will automatically generate and mail a voter registration application when an individual reports a change of address. Revised DHS policy emphasizes that a voter registration application must be distributed in-person if an individual reports a change of address in-person in a local DHS office, unless the individual declines a voter registration application in writing. This is emphasized in the training that caseworkers are required to complete by April 9, 2012.

**Remedial Mailing**

Revised DHS policy creates a procedure for remedial mailing. If it is determined or a report is received that an individual was not given the appropriate opportunity to register to vote, the local coordinator must ensure that a voter registration application, along with an explanatory letter, is mailed to the individual.

DHS is developing a standardized explanatory letter that will include instructions to the individual advising that: (1) s/he may receive assistance in filling out the voter registration application by calling or visiting a local DHS, or county, city or township clerk's office; (2) s/he may return the completed registration application by mailing it or delivering it to the local DHS, or county, city, or township clerk's office; (3) s/he is receiving the mailing because DHS has determined it has a record of the individual not being offered the opportunity to register to vote, and that the mailing does not affect the individual's registration status if the individual is already registered to vote at the individual's current address; and (4) receipt of this mailing does not indicate any information about the individual's eligibility to register to vote.

Revised policy instructs that a copy of the letter shall be retained in the local office. The new local coordinator training, which all local coordinators are required to complete by April 9, 2012, includes information about this new requirement.

**Abeyance of Civil Action and Data Reporting/Information Sharing**

At this point, DHS believes that it has taken the appropriate affirmative steps to address the NVRA violations alleged in your August 19, 2011, letter to the Michigan Secretary of State.

It is our understanding that, as a result of the presumed implementation of the NVRA action plan outlined in our letters of January 27, 2012, and this letter, the signatories to the August 19, 2011, letter are not planning to bring any lawsuit, and we request written assurance to that effect, as detailed below. Moreover, we request that, if your clients feel litigation becomes necessary, you will notify DHS and provide DHS the opportunity to resolve the concerns with some time before filing a lawsuit.

To that end, before we provide the data and information sharing described in the next paragraph, DHS must receive the following written assurance from all counsel: "At this time, the NAACP, Demos, Project Vote and the Lawyers' Committee for Civil Rights Under Law will not bring litigation against DHS for alleged violations of Section 7 of the NVRA. Between the date of this letter and November 6, 2012, if plans in this regard change -- because of problems in implementing the outlined action plan or for any other reason—counsel will provide DHS with 20 days written notice prior to initiating any lawsuit. If plans in this regard change between November 6, 2012 and December 31, 2014, counsel will provide DHS with 90-days written notice prior to initiating any lawsuit." This proposal should not be construed as a waiver of any notice requirements set forth in the NVRA.

Upon receipt of the aforementioned written assurance and agreement to the length of notice, DHS will provide you with the data the Michigan Secretary of State requires DHS to report beginning with the March 2012 reporting period, and will thereafter provide monthly reports of this data until December 31, 2014. DHS will also provide written updates and verification of the NVRA policy changes, technology changes and/or screen shots once the changes are complete. The Bridges changes will be complete by March 31, 2012. DHS expects the additional MiBridges improvements, including the option to have a voter registration application mailed to the client, to be in place by the end of April 2012.

Sincerely,

Duane Berger, Chief Deputy Director

c: Joseph Potchen
Christopher Thomas
Mike Senyko
Stan Bien

# Appendix H

DELBERT HOSEMANN
*Secretary of State*

# NATIONAL VOTER REGISTRATION ACT AGENCY GUIDE AND TRAINING MANUAL

**Prepared by the**
**Mississippi Secretary of State's Office**
**Updated 2010**

## OVERVIEW

| | |
|---|---|
| Who is eligible: | All Mississippians who apply for or receive services or benefits under one of the following agencies or programs:<br><br>Mississippi Department of Health<br>Division of Medicaid<br>Mississippi Department of Mental Health<br>Mississippi Department of Rehabilitation Services<br>Mississippi Department of Human Services |
| Services Provided: | All Mississippians who apply or receive services from these agencies must be given the opportunity to register to vote or update voter registration data. Employees at agencies must provide a voter registration application and a declination form to every person who applies for benefits, renews or recertifies benefits, or reports a change of address in connection with benefits. |
| Why: | Pursuant to the National Voter Registration Act, these voter registration services are required by federal law. The purpose of the law is to make voter registration tools more accessible to all eligible voters. Voter registration services at all voter registration agencies in Mississippi are applicable to all elections, not just federal elections. |
| How: | Agencies and their staff are required to offer the applicant the opportunity to register to vote, and provide all necessary forms – voter registration applications and declination forms. Agency staff must also provide the same level of assistance in completion of the voter registration forms as would be offered in the completion of agency forms, unless the client declines such assistance. Completed voter registration forms must be transmitted by the agency within five business days to the appropriate county circuit clerk. |

## PROCEDURES FOR VOTER REGISTRATION AT DESIGNATED AGENCIES

Information contained in this section outlines the procedures for administering the agency voter registration program. Each subsection details the procedures for different situations. The term "client" in this manual refers to an applicant for or a client currently receiving services. It also refers to an adult applying for, or receiving services, on behalf of a child. The term "covered transaction" in this manual refers to a client who applies for benefits, renews, or recertifies benefits, or reports a change of address in connection with benefits.

If after reading the information here you have questions, or if a situation occurs for which there are no guidelines printed here, please contact the Mississippi Secretary of State's Office Elections Division at 1-800-829-6786 or at www.sos.ms.gov.

### A. How to Provide Voter Registration to Clients

(1) Initial Agency Communication With Clients

When an agency employee meets with or speaks by telephone with a client, he/ she must verbally ask:

**If you are not registered to vote where you live now, would you like to apply to register to vote here today?**

(2) Delivery of Voter Registration and Declination Forms

Whenever a client applies for, recertifies, or changes an address in connection with benefits, the agency caseworker must provide both a voter registration application and a declination form (see below) to the client. This must be done whether the interview is conducted in person, or over the telephone, or by Internet. The caseworker must provide the same level of assistance to the client in completing the forms, just as he/ she would with any other benefits form. It should be made clear that the voter registration questions are clearly separated from the benefit eligibility process. It should also be made clear to the client that a decision to complete an application to register, or to decline to register, will in no way affect the services or benefits provided by the agency.

(3) How a Client Interacts With an Agency Does Not Alter Requirement to Provide Registration Opportunity

Clients who initiate a covered transaction by picking up a form and taking it home, or requesting the delivery of forms by mail, or even requesting a form to engage in a covered transaction by communicating with agency employees over the telephone or Internet, must receive voter registration materials when other agency materials are sent or provided to the client.

If a client initiates an application or recertification by mail, telephone, or Internet but must come into the office for a face-to-face interview as part of the application or recertification process, voter registration services should also be provided at the in-person interview. Similarly, if a client engages in an application, recertification, or change of address without coming into the office at any point, a voter registration application must be included in what is sent to the clients. (An agency contact name and toll-free number should be included in the mailing, so the client may call the agency if he or she has questions or needs help in completing the voter registration application.).

Finally, a voter registration application *must* be mailed to a client who contacts the office via phone, mail, or Internet to report a *change of address*. This is especially important because a change of address will often require the voter's registration address to be updated as well.

## B. Voter Registration Declination Forms

Regardless of whether or not the client wishes to register, each client must complete a voter registration declination form. This form is also known as a "declination" form. This form records whether a client wishes either to register or not register to vote. Agency staff should remind clients that this form is only for voter registration purposes and has no affect on the client's eligibility to receive benefits. This form requires the client's signature.

Procedure for Completion of the Declination Form

- The client should check the box next to the appropriate answer to the question of whether he or she wishes to register to vote.
- The client should sign and date the form. It is also recommended that the client print his name beside his signature. If the client receives assistance from agency staff in completing the form, the staff person assisting should sign and date the form as well.
- If the client refuses to sign the declination form, the agency employee processing the form should print the client's name and date the form. The staff person should initial the form. The forms must be stored in a central location or in the client's file for 22 months.

## C. Client Wishes to Complete a Voter Registration Application

Please remember that agency staff should provide assistance to clients in completing the voter registration form and ensuring that the required information has been provided (including signature), if assistance is requested.

## D. Client wishes to register, but does not want to complete form at the agency office

If the client wants to register to vote but does not wish to complete the voter registration application at that time, offer the client the opportunity to take the application home to complete at a later time. Clients should not be discouraged from completing the form in the office, and should be informed that the agency will deliver completed applications to the circuit clerk.

Clients who want to complete the form at home should be told that the application can be returned in any of the following ways:

1) Mail the completed application to the circuit clerk of the county where the voter resides;
2) Hand deliver the application to the circuit clerk of the county where the voter resides;
3) Return the application to the agency office for transmittal to the circuit clerk's office.

**E. Client is registered, but needs to update registration information**

The client may use the voter registration application to update name and address information. If the client is updating registration data, Section II of the Voter Registration application should be completed with the old information. Section II should be completed *in addition to all other sections* of the Voter Registration Application.

**F. Client does not wish to register at this time**

When the client completes the declination form, he will indicate if he does not wish to register to vote. If the client does not wish to register, please reassure the client that declining to register to vote or applying to register to vote will have no effect on the services or benefits provided to them by the agency. Also reassure the client that the declination form is used only for voter registration purposes and serves to protect the client from any coercion.

**G. Posters**

All agency offices must prominently display posters announcing the availability of voter registration services at that location.

**Completing the Agency Voter Registration Application/Update Form**

Agency employees should use the information below to familiarize themselves with the voter registration application. Familiarity with the form will facilitate the application completion process for both the client and the agency.

Please note the statement above Section I which states: "***If this form is completed at an NVRA voter registration agency, record the name of the agency.***" It is extremely important that this information be completed by the agency employee or client. Those offices that have stamps for this purpose may use them. This will allow the county circuit clerk to account for the source of the application. This information may only be used by the agency and the circuit clerk for purposes of tracking the source of the registration. *The source of the registration is considered to be confidential pursuant to NVRA, and it should never be disclosed pursuant to a public records request. Should a public records request be submitted to an agency, the agency source, even if the information has been left blank, must be redacted prior to disclosing the application.*

## Section 1. Application to Register to Vote

Clients should complete all questions in Section 1. Please make sure the client checks the appropriate box indicating whether the registration is new or an update. If the client does not answer questions 1 and 2 in the affirmative, they are not legally qualified to register to vote and should not complete the application. It is critical that the client provide a full legal name, physical address, mailing address, date of birth and either his Mississippi driver's license number or the last four digits of his social security number. If the client does not have either of these numbers, it should be left blank. *Please remember that pursuant to a public records request, date of birth and the last four digits of the social security number should be redacted as neither are considered public record under the Mississippi Elections Code.* When a client has completed the voter registration application, the agency caseworker should review it to ensure it is complete and has been signed. If it is not complete, the caseworker should return the form to the client so that he or she can include any missing information. Once the form is complete, it is ready for submission to the Circuit Clerk.

Please do not use Post Office Boxes or rural route addresses in the physical address section. If a client does not have a street address, they may draw a locational map or diagram outlining landmarks or roads near their home.

## Section II. If You Were Previously Registered Under a Different Name or Address

This section should be completed if the client is completing the application to update registration information. Please have the client complete all items in Section II.

## Section III. Voter Declaration

The client must read, sign and date the declaration. If the applicant is unable to sign, any person *(including agency employees)* assisting the applicant must also sign and date the application under the applicant's signature. The applicant must provide a telephone number where he can be reached in the event the application is incomplete. *Please remember that pursuant to a public records request, telephone numbers should be redacted as they are not considered public record under the Mississippi Elections Code.*

## Agency Coordinator Duties and Responsibilities

To oversee and coordinate agency and local office compliance with the NVRA, each agency should designate an Agency NVRA Coordinator. The Agency NVRA Coordinator's responsibilities include:

1. Developing and maintaining an up-to-date list of Site NVRA Coordinators (see below).

2. Compiling and analyzing the voter registration data provided by the Site NVRA Coordinators.

3. Answering any questions from Site NVRA Coordinators regarding voter registration policies and procedures.

4. Serving as a liaison to the Secretary of State's office on issues of voter registration and NVRA compliance.

5. Ensuring that NVRA training materials are incorporated into Agency training materials and that staff are trained semi-annually in voter registration.

6. Ensuring that NVRA compliance is incorporated into standard monitoring procedures.

7. Ensuring that the agency offices have an adequate supply of voter registration materials at all times.

## SITE COORDINATOR DUTIES AND RESPONSIBILITIES

In order to ensure the Agency Voter Registration Program is successful, each site providing voter registration services must designate a Site Coordinator. Agencies may use a district or county coordinator as a Site Coordinator if the agency determines this is adequate based upon the smaller size of the site.

The Site Coordinator has the following responsibilities:

1. Maintain adequate supplies, including:
   - Agency Voter Registration Applications;
   - Agency Declination Forms
   - Agency Transmittal Forms
   - Training materials, including the *National Voter Registration Act Agency Voter Registration Training Manual & Guide*
   - Posters announcing the availability of voter registration at the office

2. Train new or reassigned employees on voter registration duties immediately upon hiring or reassignment and ensure re-training twice annually.

3. Resolve site questions and problems relating to the voter registration process.

4. Monitor the administration of the program.

5. Ensure the timely and accurate transmittal of completed voter registration applications to the county circuit clerks within 5 business days of completion by the client.

6. Communicate with local and state election officials to ensure that materials are current.

7. Collect data (as listed below) and report it to the Secretary of State's office, with a copy to the Agency Coordinator, each month.

8. Serve as the contact person on voter registration matters for state and county elections officials.

9. Review completed voter registration applications and declination forms to ensure that the forms are being filled out completely. A review should be completed weekly.

10. Display NVRA posters and instructions in the office's lobby.

***Training***

All new employees should be provided a current manual on the voter registration procedures implemented at the agency location. To obtain copies of this training manual, please visit our website at www.sos.ms.gov. Each agency must train its employees on voter registration requirements on a semi-annual basis using this manual and the Power Point presentation attached. Each agency must also create its own agency-specific voter registration manual that is based on the Secretary of State's manual; the agency manual must be used in all agency NVRA trainings and must also be provided to all staff. In addition to holding semi-annual trainings, the agency must train all new employees, or those who have returned from leave, within one month. The Site Coordinator must compile a list of those employees who attended the training and forward it along to the Agency Site Coordinator (see below) within a month of the training date. Those employees whose names are not on the list must complete the training within a month of that list's date. (For training assistance, contact the Secretary of State's Office Elections Division at 1-800-829-6786 or 601-359-1350.)

***Resolving Questions and Problems***

Most questions and problems can be easily resolved on site by referring to the *National Voter Registration Act Agency Voter Registration Training Manual and Guide.* If issues persist or you are unable to resolve questions related to your registration duties, please contact the Elections Division of the Secretary of State's office at 1-800-829-6786 or 601-359-5137.

***Monitor Administration***

The Site Coordinator is responsible for supervising the daily voter registration activities at the location. The Site Coordinator should be well trained in the registration practices required of the agency. The Site Coordinator should monitor the agencies activities and quickly work with employees to resolve any noted deficiencies.

The Agency Coordinator will review the data compiled by Site Coordinators from the reports (see Attachment D) on a monthly basis to determine whether offices are performing their NVRA responsibilities. If a review of the numbers indicates that an office is underperforming in its obligations, as required by this manual, the Agency Coordinator shall require the Site Coordinator to take immediate action and submit a report on such follow-up measures within a

month of being notified by the Agency Coordinator. The Agency Coordinator shall forward copies of all such communications to the Secretary of State's office. If the Agency does not take appropriate remedial measures, the Secretary of State shall perform an audit of the office's voter registration practices.

NVRA performance should be included in all employees' evaluations.

***Transmittal***

All voter registration applications must be submitted to the circuit clerk's office of the county in which the client resides *within five business days* of completion of the application. This includes any applications completed to update an existing registration. When transmitting the applications you should use the transmittal form provided (Attachment C). This will allow you to keep a record and accounting of the number of forms sent to each circuit clerk's office.

***Transmittal of Monthly Report to the Agency Coordinator and the Secretary of State's Office***

Attachment D should be used to transmit your monthly registration report to the agency coordinator and the Secretary of State's office. This form should be completed and mailed, or emailed, to the Secretary of State on the first day of each month. This will allow our office to have a record of the number of applications transmitted by your agency to each circuit clerk's office.

## REPORTING

Each local official should provide NVRA reports that memorialize NVRA activity at each agency. Site Coordinators must include the data outlined in Attachment D and forward the report, and any other information that is helpful in monitoring local office results, to the Agency Coordinator and Secretary of State's Office the first of each month.

## TRACKING AND TRANSMITTING VOTER REGISTRATION APPLICATIONS

***The timely delivery of voter registration applications to the appropriate circuit clerk is extremely important. Timely delivery will ensure that all individuals are properly registered to vote.***

### Transmitting Materials

Completed voter registration applications should be transmitted within 5 business days to the respective circuit clerk's office. Please follow the procedure outlined below when transmitting voter registration applications:

- All voter registration applications should be placed in a secure and sealed envelope. Date of birth, social security numbers, telephone numbers and the agency of registration are confidential and should be kept from public view.

- Please enclose with the applications the *NVRA Agency Voter Registration Application Transmittal Form*. (See Attachment C.) You should complete *all fields* on the form, and retain a copy of the form for your records.

- For every Mississippi election, the voter registration deadline falls 30 days prior to the election. Agency employees should be aware of these deadlines and transmit applications as soon as possible when a registration deadline is near.

## FREQUENTLY ASKED QUESTIONS

1. **Where are Voter Declination Forms kept on file?**

   Voter Declination Forms are kept in a central file at the local agency office where the form is completed.

2. **Can the Secretary of State's office provide agency offices with a list of all circuit clerks and their contact information?**

   A current contact list of all county circuit clerks including the clerk's name, mailing address, telephone number and facsimile number can be found on the Secretary of State's website at www.sos.ms.gov. On the left side of the home page, click on "Mississippi Blue Book".

3. **Who registers applicants to vote in Mississippi?**

   County circuit clerks register applicants. Circuit clerks receive voter registration applications and determine whether an applicant meets the registration requirements under State law. If an applicant's voter registration application is rejected, the applicant may appeal the matter to the county election commission. Agency personnel do not determine the eligibility of clients who apply to register to vote.

4. **If a circuit clerk needs additional information before processing a voter registration application, will the circuit clerk contact the client or the agency?**

   The circuit clerk will contact the client. Only in rare situations will it be necessary for the circuit clerk to contact the agency taking the application. Please be sure to have the client provide a telephone number under the signature section of the application.

5. **How will clients who complete applications know where to vote?**

   The county circuit clerk who receives the application will send the applicant a voter registration card once the application is processed. The voter registration card will contain a voter registration number and information regarding the voter's assigned precinct and polling place.

6. **If the client prefers to take the application home and complete it, do we use the same application that is used for in agency registrations?**

   Yes, the application completed at the agency may also be used if the client prefers to complete the application outside of the agency. When the client completes the application he may mail or hand deliver it to the county circuit clerk where he resides, or the applicant may return it to agency.

7. **Once a person is registered to vote, is there a need to re-register at any time?**

   If a voter has been removed from the voter roll for a reason specified in state or federal law, he will need to submit an application to re-register in order to vote again. If a voter moves to a new county, he must cancel any previous registration and submit an application to register in the new county. A client can accomplish both by completing the information on the voter registration application. If a client moves to another address in the same county the voter must update his physical address, but the client does not have to re-register. If a client is unsure of his registration status, he may complete the application and the county circuit clerk will determine if he is already registered. If the circuit clerk determines that the client is already a voter in the county, the clerk will not re-register the client.

8. **Are agency employees required to offer clients under the age of 18 the opportunity to complete a voter registration application?**

   Yes. Mississippi law allows persons to vote in a primary election associated with a general election if the person will be 18 years of age on or before the date of the general election. Therefore, the agency employees may encounter circumstances where a 17-year-old is eligible to register to vote. If a 17-year-old will turn 18 before the general election date in November, that 17-year-old can register and vote in the primary election held earlier the same year.

9. **Can homeless persons register to vote?**

   Yes. If the client resides at a non-traditional address, the client may provide a physical address by drawing a map of where he resides. The client should also provide a mailing address (or the address where the client receives mail). The circuit clerk must have an address where the client can receive mail.

10. **Are polling places and voting machines accessible to voters with disabilities?**

    Under federal law, both polling places and voting machines must be accessible to the disabled. Clients who have concerns about accessibility should contact the circuit clerk's office of the county where the client votes or the Secretary of State's Office.

11. **How do agency personnel assist a visually impaired client with completing the application?**

    The law requires that agency staff provide the same degree of assistance during the voter registration process as would be provided during the completion of standard agency forms and applications. In the case of a visually impaired client, it may be necessary for the agency employee to complete the application for the client (only providing answers as instructed by the client) and assist the client in making a mark in the signature block. The

agency employee providing assistance must sign in the place provided under the applicant's signature box.

**12. What should an agency employee do if a client is unable to sign the application?**

If a client is unable to sign the application, the client should attempt to make a mark in the signature block. If the client cannot make a mark, the employee may assist the client in signing. ***The client must ask for assistance from the agency employee.*** The client should be touching the pen as his name is written by the agency employee. The agency employee providing assistance must sign in the place provided under the applicant's signature box.

**13. Can a disabled voter receive assistance at the polling place?**

Yes. Any voter who is blind, physically disabled or unable to read or write may request assistance. Anyone can provide assistance other than the voter's employer, an agent of the voter's employer, or an officer or agent of the voter's union. ***The voter must declare to the pollmanagers one of the reasons stated above in order to receive assistance. Please remind clients that accessible voting machines for voters with disabilities are located in every Mississippi polling place.***

**14. Will agency voter registration offices be audited or monitored for following correct registration practices under this program?**

When voter registration applications are processed by the county circuit clerk, the circuit clerk will record the agency from which the application originated. This data should be entered into the Statewide Elections Management System (the voter registration roll for the State of Mississippi), and it will allow the Secretary of State's office to verify that agencies are following appropriate procedures. We will also rely on feedback we receive from the public. Please note that failure to offer voter registration services to clients is a violation of the National Voter Registration Act.

**15. If an agency client wishes to take the voter registration application outside of the agency to complete, who is responsible for paying the postage to mail it to the county circuit clerk?**

If the client takes the application home to complete, he is responsible for the cost of postage required to return the application to the circuit clerk. The client may also hand deliver the application to the circuit clerk or return it to the agency. The agency is required to transmit the application to the circuit clerk if the client returns it to the agency.

**16. Do agency offices serving more than one county register voters for each of those counties?**

Yes. It is important to verify that applications are transmitted to the appropriate county circuit clerk for processing.

**17. How does the agency comply with the 5 day transmittal deadline if the client completes the application at home?**

The 5 day deadline begins to run from the date the completed application is received by the agency office.

**18. How should an agency employee handle a situation where the client refuses to complete the declination form?**

Before the client is asked to complete the form, it should be explained by the agency employee. If the client refuses to complete the form after a thorough explanation, the agency employee should enter the client's name, date the form, and sign under the client's name. You may tell them the form is required under National Voter Registration Act. Please inform the client that if they do not sign the form, they will be considered to have declined to register to vote.

**19. What procedure should be followed if a client is unable to complete a voter declination or registration form at the time of application for services at the agency?**

If a client presents at the agency in a condition that prohibits him from completing the transaction, the agency employee must use some discretion in determining if the client has the ability to complete the appropriate paperwork. If the agency employee determines the client is unable to complete the transaction (due to intoxication, mental deficiency or some other condition that might inhibit the client's competency), the transaction should be delayed. The agency employee should complete a declination form by entering the client's name, dating the form and signing the agency employee's name to the form. The agency employee should also include a brief explanation of circumstances that the required the employee to complete the form.

**20. Who should agency personnel contact if it is believed an applicant is providing fraudulent information?**

The agency should contact the circuit clerk of the county where the registration will occur. The agency should also contact the Secretary of State's office.

**21. If a client has previously declined to register, are agency employees required to offer the opportunity to register to vote at subsequent visits?**

Yes. Agency personnel must provide voter registration services to clients at each application for service or benefits, and with each recertification, renewal or change of

address with respect to such benefits. Each time a client is offered voter registration services, the declination form must be completed.

**22. Are agency employees required to check voter registration applications for completeness?**

Agency employees must provide the same degree of assistance in completing a voter registration application as they do in helping clients to complete a benefits application or other agency forms. Agency employees should offer assistance to the client in completing a voter registration application if the client requests assistance. Agency employees should attempt to ensure that all sections of the application are complete and that the form has been signed.

## PROHIBITIONS

Agency employees providing voter registration services may NOT engage in any of the following:

- Seek to influence a client's political preference or party designation; (*Please note that Mississippi does not require voter registration applicants to declare party affiliation.*)
- Display any political preference or party allegiance;
- Make any statement to a client or take any action for the purpose of discouraging the client from registering to vote; or
- Make any statement to a client or take any action that would lead a client to believe that a decision to register or not to register has any bearing on the availability of services or benefits the client will receive.

## ATTACHMENT A: VOTER REGISTRATION APPLICATION

# MISSISSIPPI MAIL-IN AND NVRA AGENCY VOTER REGISTRATION APPLICATION

**IMPORTANT!**

- If you are not registered to vote where you now live, you can use this form to register to vote or report that your name or address has changed.
- If you have questions call your county Circuit Clerk or call the Secretary of State at 1-800-829-6786.
- Complete all sections of this form and mail it to your county Circuit Clerk AT LEAST 30 days before the election in which you want to vote.
- If you are qualified and the information on your form is complete, you will be mailed a voter card that tells you where to vote.
- If you decline to register to vote, your decision not to register will remain confidential and will be used only for voter registration purposes.
- If you do register to vote, the office at which you submit this application will remain confidential and will be used only for voter registration persons.

If this form is completed at an NVRA voter registration agency, record the name of the agency: ______________________

## Section I. APPLICATION TO REGISTER TO VOTE

**Please select one of the following:** New Registration ☐ Change of Information ☐

1) Are you a citizen of the United States of America? Yes ☐ No ☐
2) Will you be 18 years of age on or before election day? Yes ☐ No ☐
3) Would you like to serve as an Election Day Poll Worker? Yes ☐ No ☐

*NOTE: If you checked "No" in response to questions 1 or 2, do not complete this form.*

| CIRCLE Mr. Mrs. Miss Ms. | Last Name: | First Name: | Middle/Maiden Name: | Suffix: (JR, III) |
|---|---|---|---|---|
| Physical Home Address (Number & Street/Road/Dorm/Apt. #): * | | City: | County: | State: MS Zip: |
| Mailing Address (if different from above, include zip code): | | | Date of Birth: (mm/dd/yy) | |
| Mississippi Driver's License Number (If you do not have a driver's license, then list the last 4 digits of your Social Security Number): ** | | | | |

**If you reside at a non-traditional address attach a drawing or locational map of your address.*

***Identification Requirement: If you do not have a driver's license or social security number, and this form is submitted by mail, and you have never registered to vote in the county you are now registering in, you must send, with this application, either a) a copy of current and valid photo identification, or b) a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter. If you do not provide the information requested above, you may be required to provide to election officials either (a) or (b) above the first time you vote after January 1, 2004 at a voting place or by absentee ballot.*

## Section II. IF YOU WERE PREVIOUSLY REGISTERED UNDER A DIFFERENT NAME OR ADDRESS, LIST THAT NAME OR ADDRESS

| CIRCLE Mr. Mrs. Miss Ms. | Last Name: | First Name: | Middle/Maiden Name: | Suffix: (JR, III) |
|---|---|---|---|---|
| Previous Address (Number & Street/Road/Dorm/Apt. or Lot #) | | | | |
| Previous City: | Previous County: | Previous State: | Previous Zip: | |

## Section III. VOTER DECLARATION- Read and Sign

I swear/affirm, under penalty of perjury, that: I am a U.S. citizen. I will have lived in this state and county for at least 30 days before voting, and if a resident of a municipality, I will have lived in the municipality for at least 30 days before voting. I have never been convicted of any of the following crimes against the State of Mississippi: murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement, bigamy, armed robbery, extortion, felony bad check, felony shoplifting, larceny, receiving stolen property, robbery, timber larceny, unlawful taking of a motor vehicle, statutory rape, carjacking, or larceny under lease or rental agreement, or I have had my rights restored as required by law. I have not been declared mentally incompetent by a court. Furthermore, I certify that I am at least eighteen (18) years old (or I will be before the next general election), the information given by me is true and correct and that I have truly answered all questions on this application for registration, and that I will faithfully support the Constitution of the United States and of the State of Mississippi, and will bear true faith and allegiance to the same.

X______________________________ Date: ______________
Signature (or mark) of applicant

X______________________________ Date: ______________
If applicant is unable to sign, the person who assisted the applicant must sign above

Daytime phone number(s) where applicant can be reached: ______________________

Was any person or group involved in the process of completing this form other than the voter? If yes, the person or group must provide the information below:

Name:______________________

Address:______________________

WARNING: FALSE REGISTRATION IS A FELONY. The penalty for conviction of false registration is imprisonment for not more than five (5) years or a fine of not more than five thousand dollars ($5000), or both. *Miss. Code Ann § 23-15-17.*

**FOR OFFICIAL USE ONLY**

# ATTACHMENT B: VOTER DECLINATION FORM

## THIS FORM MUST BE COMPLETED BY VOTER REGISTRATION APPLICANTS COMPLETING REGISTRATION FORMS AT NVRA DESIGNATED AGENCIES

If you are not registered to vote where you live now, would you like to apply to register to vote here today? **Yes** ☐ **No** ☐

**IF YOU DO NOT CHECK EITHER BOX YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.**

**X Signature:** ______________________________

**X** ______________________________

If applicant is unable to sign, the signature of the person who assisted applicant in completing this form.

***Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency. (If applicable.)***

***If you would like help in filling out the voter registration application form, we will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private.***

***If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register or in applying to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with: Mississippi Secretary of State, Elections Divisions, P.O. Box 136, Jackson, MS 39205-0136***

## ATTACHMENT C: NVRA AGENCY TRANSMITTAL FORM

### NVRA Agency Voter Registration Program

### VOTER REGISTRATION APPLICATION TRANSMITTAL FORM

**Please complete the fields below and enclose this form with the materials to be transmitted to the County Circuit Clerk.**
**Retain a copy for your records.**

| | |
|---|---|
| **Today's Date:** | |
| **Agency Name:** | |
| **Agency Representative:** | |
| **Agency Location:** | |
| **Notes:** | |

| | |
|---|---|
| **County applications delivered to:** | |
| **Number of Applications Enclosed:** | |
| **Method of Delivery:** | __**Hand Delivery**<br>__**Mail** |

## ATTACHMENT D: MONTHLY REPORT TO SOS

# NVRA Agency Voter Registration Program

## VOTER REGISTRATION APPLICATION MONTHLY REPORTING FORM

**Please complete the fields below and return this form to:**
**MISSISSIPPI SECRETARY OF STATE'S OFFICE**
**ELECTIONS DIVISION**
**ATTN: AGENCY VOTER REGISTRATION REPORTING**
**401 MISSISSIPPI STREET**
**JACKSON, MISSISSIPPI 39201**

**RETURN A COPY OF THIS FORM TO THE AGENCY COORDINATOR TOO**
**[ADD AGENCY CONTACT INFO HERE]**

**(You may also email this form. Please contact the Elections Division at 1-800-829-6786 or 601-359-1499 for specific email instructions.)**

| | |
|---|---|
| **Today's Date:** | |
| **Number of Applications Transmitted this Month:** | |
| **Number of completed Voter Registration Forms submitted** | |
| **Number of clients who applied, recertified, or changed an address in connection with benefits** | |
| **Number of clients who checked "Yes" on the declination** | |
| **Number of clients who checked "No" on the declination** | |
| **Number who left the declination blank** | |
| **Agency Representative (Signature):** | |

Additional Information: ______________________________________________

______________________________________________

______________________________________________

(Contents of informational poster to be displayed in NVRA agencies.)

# ✓ REGISTER TO VOTE.

Ask for a voter registration application form and fill it out while you wait – or during your appointment.

Our staff is here to help.

# Appendix I

# NORTH CAROLINA
# STATE BOARD OF ELECTIONS

# NATIONAL VOTER REGISTRATION ACT
# AGENCY VOTER REGISTRATION
# TRAINING MANUAL & GUIDE

**STATE BOARD OF ELECTIONS 4**

**NATIONAL VOTER REGISTRATION ACT (NVRA) 5**

**DESIGNATED PROGRAMS AND AGENCIES 5**

**PROCEDURES FOR VOTER REGISTRATION AT DESIGNATED AGENCY OFFICES 6**

A. SUGGESTED Openers ........ 6

B. Voter Registration Preference forms ........ 6

C. Client is not registered and wishes to complete an application to register ........ 7

D. Client is not registered, wishes to become registered, but does not wish to complete the form at the agency office ........ 7

E. Client is registered, but needs to update a name, address and/or party affiliation ........ 7

F. Client is already registered ........ 7

G. Client is not registered and does not wish to register at this time ........ 7

**COMPLETING THE AGENCY VOTER REGISTRATION APPLICATION/UPDATE FORM8**

Yes/No Questions – Voter Attestation (REQUIRED) ........ 8

Section 1 – Full Legal Name & Date of Birth (REQUIRED) ........ 8

Section 2 – Personal Identification Number (REQUIRED) ........ 8

Section 3 – Residence Address (REQUIRED) ........ 9

Section 4 – Mailing Address (REQUIRED ONLY IF DIFFERENT FROM PHYSICAL ADDRESS) ........ 9

Section 5 – Gender / Section 6 – Race/Ethnicity / Section 7 – Political Party Affiliation ........ 9

Section 8 – Name & address used for your last voter registration (REQUIRED ONLY IF PREVIOUSLY REGISTERED) 9

Signature (REQUIRED) ........ 10

**TIPS FOR COMPLETING A VOTER REGISTRATION TRANSACTION 11**

**SITE COORDINATOR-DUTIES & RESPONSIBILITIES12**

**TRACKING & TRANSMITTING VOTER REGISTRATION MATERIALS 14**

Transmitting Materials ........ 14

Tracking Voter Registration Applications & Preference forms ........ 14

**FREQUENTLY ASKED QUESTIONS 15**

**POLITICAL ACTIVITY: 16**

**DETERMINING VOTER ELIGIBILITY: 17**

**DISABLED VOTERS: 19**

**AGENCY REQUIREMENTS: 20**

**ATTACHMENT A: AGENCY DECLINATION FORM 25**

**ATTACHMENT B: NVRA AGENCY TRANSMITTAL FORM 26**

**ATTACHMENT C: PROHIBITIONS 27**

**ATTACHMENT D: SPECIAL INSTRUCTIONS FOR MENTAL HEALTH, DEVELOPMENTAL DISABILITIES AND SUBSTANCE ABUSE SERVICES OFFICES 28**

**ATTACHMENT E: CONTACT US 29**

**ATTACHMENT F: 30**

**ORDER FORM FOR VOTER REGISTRATION SUPPLIES 30**

**ATTACHMENT G: NORTH CAROLINA GENERAL STATUTES 31**

**ATTACHMENT H: NVRA AGENCY REGISTRATION 54**

# STATE BOARD OF ELECTIONS

6400 Mail Service Center • Raleigh, North Carolina 27699-6400

**GARY O. BARTLETT**
**Executive Director**

**Mailing Address:**
**P.O. BOX 27255**
**RALEIGH, NC 27611-7255**
**(919) 733-7173**
**FAX (919) 715-0135**

February 28th, 2007

*To All Agency Voter Registration Employees:*

*Welcome to the North Carolina voter registration program! The agency voter registration program seeks to help North Carolina registration officials reach unregistered eligible voters in the State. Your participation is critical in our efforts to reach 100% registration in North Carolina. We sincerely appreciate your hard work and dedication.*

*Since the implementation of the agency voter registration program on January 4, 1995, agency voter registration has produced outstanding results. State agencies have reached many of the underrepresented eligible voters in North Carolina.*

*Materials enclosed in this* ***Reference Guide and Training Manual*** *should help you through the voter registration process and answer any questions you may have. If you encounter any specific problems, or have questions not answered by material in this manual, please contact the county board of elections. A county board roster is available on our website www.sboe.state.nc.us . If necessary, the State Board staff is also available to answer questions regarding voter registration laws and procedures.*

*Very best regards,*

Gary O. Bartlett

*Gary O. Bartlett*
*Executive Director*

## NATIONAL VOTER REGISTRATION ACT (NVRA)
## DESIGNATED PROGRAMS AND AGENCIES

***Who:*** All North Carolinians who apply for or receive services or benefits under one of the following programs or agencies: Employment Security Commission (ESC), Food Stamps, Division of Medical Assistance (Medicaid), Division of Mental Health, Developmental Disabilities and Substance Abuse Services (MHDDSAS), Services for the Blind, Services for the Deaf and Hard of Hearing, Vocational Rehabilitation, WIC, Work First, Office for Veteran Services, State County Special Assistance for Adults, and Low Income Energy Assistance Program.

***What:*** The opportunity to register to vote or update voter registration while applying for benefits, renewing benefits, or reporting a change of address at one of the above programs.

***When***: At original application for service and at each renewal of service or when providing a change of address or name to the agency.

***Where*** ***At any*** agency office that administers services or benefits under one of the programs listed above.

***Why***: ***It's the law.*** The purpose of the law is to make the voter registration process more accessible to all eligible voters.

***How***: Agency staff must offer the applicant the opportunity to register to vote, and the necessary form. Staff are required to provide the same level of assistance in completion of the voter registration form as would be offered in the completion of agency forms. Completed voter registration forms must be transmitted within five business days to the county Board of Elections.

## PROCEDURES FOR VOTER REGISTRATION AT DESIGNATED AGENCY OFFICES

Information contained in this section outlines the procedures for administering the new agency voter registration program. Each subsection details the procedures for different situations. The term "client" in this manual means both applicants for and clients currently receiving services.

If after reading the information here you have questions, or if a situation occurs for which there are no guidelines printed here, please contact the county Director of Elections. Contact information for county boards of elections, can be found on our website www.sboe.state.nc.us. You may also call toll-free 1-866-522-4723.

### A. SUGGESTED Openers

**If you are not registered to voter where you live now, would you like to apply to register to vote here today?**

**~OR~**

**You may now register at this office to vote in all elections in which you may be eligible to vote after registering. Would you like to register to vote while you are here today?**

The opportunity to register to vote should be offered at the beginning of the client interview so that the voter registration questions are clearly separated from the benefit eligibility process. (Staff working under the Division of Mental Health, Developmental Disabilities and Substance Abuse Services needs to review Attachment D for special instructions as to offering registration.)

It should also be made clear to the client that a decision to complete an application to register, or to decline that opportunity, will in no way affect the services or benefits provided by the agency.

### B. Voter Registration Preference forms

**Regardless of whether or not the client wishes to register, each client must complete a "Voter Registration Preference Form."** This form records whether each client (1) wishes to register to vote or update an existing registration, (2) does not wish to register to vote, (3) is already registered to vote, or (4) wishes to register to vote but prefers to take the voter registration application home. The Voter Registration Preference form is used only for voter registration purposes, and serves to protect the client from any coercion. Agency staff should reassure clients of this fact in order to obtain a signature on the Voter Registration Preference form. Please note that the current "Voter Registration Preference forms" used to be called "declination" forms.

***Procedures for Completion of the Voter Registration Preference Form***

- The client should check the box next to the appropriate answer to the question of whether s/he wishes to register to vote. Declining the opportunity to register does not prohibit the client from registering to vote any time in the future.
- The client should print his/her full name and date of birth.
- The client should sign his/her name and print the transaction date (that day).

***If the Client Refuses to Complete the Preference Form***

Should the client decline to register but refuse to sign the Voter Registration Preference form, the agency employee processing the application should print the client's name and date of birth. Then, initial the form and print the transaction date.

Completed Voter Registration Preference forms should be transmitted to the appropriate county board of elections office in the same timely manner as Voter Registration applications; unless there has been a written agreement between the State Board office and the agency allowing the agency to keep the Voter Registration Preference forms under certain terms and conditions.

**C. Client is not registered and wishes to complete an application to register**

After the client fills out a Voter Registration Preference form indicating a desire to complete a voter registration application, provide the client with the voter registration application or direct the client to the voter registration application in their packet. Agency staff is required to provide the same degree of assistance as would be given for the completion of standard agency forms.

**D. Client is not registered, wishes to become registered, but does not wish to complete the form at the agency office**

After the client fills out a Voter Registration Preference form indicating they are not registered to vote at their current address and would like to be registered, but does not wish to complete the voter registration application at that time, offer the client the opportunity to take the application home to complete at a later time. The client should be told that the registration application can be returned in **any of three ways**:

1) **MAIL** the completed application to the board of elections office in the county where they live,
2) **HAND DELIVER** the application to the county board of elections office, or have a third party return it to the county board of elections or the agency office, or
3) **RETURN** the application to the agency office for transmittal to the county board of elections office.

There is a place on the Voter Registration Preference form for a client to mark showing s/he chose not to register at the agency at that time but wished to take a voter registration application to complete at a later date.

**E. Client is registered, but needs to update a name, address and/or party affiliation**

After the client fills out a Voter Registration Preference form indicating they are registered to vote, but needs to update their information, s/he may use the voter registration application to change any or all of the following: name, physical address, mailing address (if different), and party affiliation. ***If the client is updating an address or a name, Section 8 of the Voter Registration application should be completed with the old information. Completing Section 8 should be <u>in addition</u> to all other sections of the Voter Registration application.***

Each time a client moves and notifies the agency of a change of address, agency employees are required to offer the opportunity to complete a change of address for voter registration.

**F. Client is already registered**

After the client fills out a Voter Registration Preference form indicating they are already registered to vote at their current address, inform the client that their response on the Voter Registration Preference form, **will not prohibit voter registration at a later date or changes to existing registrations.** In completing the Voter Registration Preference form, make sure that the client checks the box that indicates they are already registered to vote.

**G. Client is not registered and does not wish to register at this time**

After the client fills out a Voter Registration Preference form indicating they are registered to vote, and declines when offered the opportunity to complete the application to register, please reassure the client that applying to register to vote or declining to register to vote will have no effect on the services or benefits provided to them by the agency. Also reassure the client that the Voter Registration Preference form is used only for voter registration purposes, and serves to protect the client from any coercion.

# COMPLETING THE AGENCY VOTER REGISTRATION APPLICATION/UPDATE FORM

Sections from the most current voter registration application (approved April 2006) are set out below. It is still permissible to use voter registration applications marked as “1/04” in the upper right hand corner. These “1/04” applications are 81/2” by 14” as opposed to the newer 81/2” by 11” applications.

Agency employees should use the information below to familiarize themselves with the voter registration application. Doing so, will make it easier to assist clients who request help completing the application and shorten the time it takes to complete the voter registration transaction. Individual sections which that ask for required information are marked (**REQUIRED**)

## Yes/No Questions – Voter Attestation (REQUIRED)

North Carolina Voter Registration Application/Update Form

01

Print Information and Sign Below

**I Attest, Under Penalty of Perjury, that, Required:** (Answer YES or NO to the following questions.)

YES NO (Check YES or NO)

☐ ☐ I am a United States citizen.

☐ ☐ I am 18 years old, or older, or will be by general election day.

☐ ☐ I have been a resident at this address for 30 days or more. If less than 30 days, I moved here on ___________(date).

☐ ☐ I will not vote in any other county or state after submission of this form. If I am registered elsewhere, I am canceling that registration at this time.

☐ ☐ If I have been convicted of a felony, my rights of citizenship have been restored.

STOP ▶ If you checked “NO” in response to any of these questions, **DO NOT COMPLETE THIS FORM**

Each of these questions should be answered. If a client cannot truthfully answer in the affirmative, they should not complete the application. Specific inquires about any of the questions above should be directed to the county board of elections office. This is especially true as to questions as to citizenship and felony convictions, where a client may suffer legal consequences if those questions are not truthfully answered.

## Section 1 – Full Legal Name & Date of Birth (REQUIRED)

Section 1 ▶ **Full legal name and birth date**

Last Name (Required) ☐ Jr. ☐ Sr. ☐ II ☐ III ☐ IV

First Name (Required) Middle Name (Required) Date of Birth - MM DD YYYY (Required)

Each client should provide their full legal name. Nicknames or shortened forms of their legal name should not be used. The name provided in this section will be the name used for all voter registration records and activities, including voting, whether by absentee or in person.

## Section 2 – Personal Identification Number (REQUIRED)

Section 2 ▶ **Personal Identification Number (Required)**

Do you have a NC driver's license or NC identification card? . . . . ☐ Yes ☐ No — NC Driver License or Identification Number

**Or**

Do you have a U.S. issued Social Security Number? . . . . . . . . . . ☐ Yes ☐ No — Social Security Number (Last Four Digits Are Required)

**Or**

Have you been assigned a NC State Voter Number (NCVID)? . . . ☐ Yes ☐ No — NC State Voter Registration Number (NCVID)

If the client has no personal identification number and answers “no” to all three questions, the voter registration application should still be submitted and the Board of Elections will assign a NC State Voter Number upon receipt. At least one of the three options must be provided. With regards to using the Social

Security number, only the last four digits are required, please do not place the full social security number on the form. The *NC Voter ID Number* can be found on the client's voter registration card if they are already registered to vote.

## Section 3 – Residence Address (REQUIRED)

Section 3
**Residence Address (Required)**

Street Address where you live - *No P.O. Boxes or Rural Roads* Apt/Unit

City

County State N C ZIP Code

Have you lived here for 30 days or more? ☐ Yes

If no, date moved ____________ ☐ No

Phone (Optional)

**Map/Diagram**
If you do not have a street address, draw a map of where you reside. Please include roads and landmarks.

The client's physical address should be provided in this section. In most counties, this is usually the E911 address assigned to their home. Please do not use PO Box numbers or rural route address in this section; those can be used in the mailing address section below. If the client does not have a street address, they may draw a map or diagram outlining major landmarks or roads near their home. For a homeless person, the residence address is the place where they sleep or spend the majority of their time.

## Section 4 – Mailing Address (REQUIRED ONLY IF DIFFERENT FROM PHYSICAL ADDRESS)

Section 4
**Mailing Address If Different**

Address where you get your mail *(If different from your residence address.)* Apt/Unit

City State ZIP Code

This section should only be completed if the client's mailing address is different from the physical address. If mail is received via a PO Box, that information should be recorded here. A homeless person's mailing address may be a PO Box, a local shelter, a church, or any other location where the person receives mail. For voters to receive mail from an elections office at an address other than their listed residence address, this mailing address section must be completed.

## Section 5 – Gender / Section 6 – Race/Ethnicity / Section 7 – Political Party Affiliation

Section 5 **Gender**
☐ Female
☐ Male

Section 6 **Race/Ethnicity**
☐ American Indian/ Alaska Native ☐ Asian ☐ Black/African American ☐ Other
☐ Hispanic/Latino ☐ White ☐ Two or More Races

Section 7 **Political Party Affiliation**
☐ Democratic ☐ Republican ☐ Unaffiliated
☐ Other____________

The above information is not required in order to register to vote. New registrants who do not indicate a party affiliation will be registered as unaffiliated. Clients who are already registered and do not check a party affiliation will not have their existing affiliation changed.

## Section 8 – Name & address used for your last voter registration (REQUIRED ONLY IF PREVIOUSLY REGISTERED)

Section 8 ▶ **Name and address used for your last voter registration if applicable**

Last Name used in Previous Registration — First Name

Previous Address — State — ZIP Code

Previous City — Previous County

If the client has changed their name or address, this section should be completed. Providing this information will prevent duplicate registrations.

## Signature (REQUIRED)

Signature (Required) — Date

I HAVE READ AND UNDERSTAND THE CONTENTS OF THIS FORM

WARNING: If you sign this card and know it to be false, you can be convicted of a Class I felony

To Mail - Moisten, fold and seal.

The signature of the voter is required for all transactions covered by this form. This includes initial registrations, as well as address, name and/or party affiliation changes.

## TIPS FOR COMPLETING A VOTER REGISTRATION TRANSACTION

1. If any of the required information is left blank, the application still must be turned in within five business days. The county board of elections will contact the voter and collect any missing information.

2. The law requires that assistance in completing the forms be offered; however, it is solely the client's decision whether or not to accept that help.

3. When completing voter registration applications, it is important to print clearly. Most counties use image scanners to handle data entry. Clearly printing all information will ensure that voter information is accurately recorded.

4. Under North Carolina voter registration laws, **mental incompetence** is not a basis for exclusion of a client for purposes of voter registration. However, persons deemed to be mentally incompetent may require special consideration. For further information regarding special provisions for dealing with mentally incompetent clients, please refer to Attachment D in this manual.

5. North Carolina allows a 17 year old to register and vote in primaries if the person will be 18 years old by the general election. If you have 17-year-old clients who meet this qualification and wish to complete a voter registration application, they may do so. These forms should be sent to the county board of elections for processing.

## SITE COORDINATOR-DUTIES & RESPONSIBILITIES

In order to facilitate the continued success and the future growth of the Agency Voter Registration Program, each site providing voter registration services shall designate a Site Coordinator. Subject to mutual approval of the agency and the State Board of Elections, an agency may use a district or county coordinator in lieu of a Site Coordinator.

The Site Coordinator will have the following responsibilities:

1. Maintain adequate supplies, including:
   - properly coded Agency Voter Registration applications,
   - Agency Voter Registration Preference Forms,
   - Voter Registration/Preference Transmittal forms, and
   - training materials including the *NATIONAL VOTER REGISTRATION ACT AGENCY VOTER REGISTRATION TRAINING MANUAL & GUIDE* and others that may be available in the future.
2. Train new or reassigned employees in the voter registration process. (Contact the county board of elections or the State Board of Elections at 866-522-4723 for assistance)
3. Resolve site questions and problems relating to the voter registration process. (Contact the county board of elections or State Board of Elections office 866-522-4723 for assistance.)
4. Monitor the day-to-day administration of the program.
5. Ensure the timely and accurate transmittal of completed Voter Registration applications and Voter Registration Preference forms to the county board of elections within 5 business days of completion by client.
6. Regularly communicate with local and state election officials to ensure that materials are current and to report weekly to the State Board of Elections numbers of Voter Registration applications and Voter Registration Preference forms sent to county board of elections offices.
7. Serve as the contact person on voter registration matters for state or county boards of elections and their staff.

***To order supplies***

Use the North Carolina Voter Registration Materials Order Form found at http://www.app.sboe.state.nc.us/pdf/orderfrm_2000.pdf. This form can also be requested by calling 1-866-522-4723. Complete in full, including Site Coordinator's name, agency name and shipping address, the quantity and item needed. Remember, if your agency uses a certain numbered type of voter registration form (such as 01 or 03) note the type of voter registration form needed. This form can be sent using any of the following methods:

- By faxing to the State Board office at 919-715-0135 or the respective county board office
- By email – elections.sboe@ncmail.net, or
- By mail – NC State Board of Elections, PO Box 27255, Raleigh, NC 27611-7255

***Training***

All new or reassigned employees should be provided a current manual and training opportunity on the voter registration procedures implemented at the agency location. To obtain copies of the training manual, please contact the State Board of Elections at 1-866-522-4723. Electronic copies are also available on the State Board of Elections website www.sboe.state.nc.us . Multiple copies may be downloaded free of charge.

***Resolving questions and problems***

Most questions can be easily handled on site, by referring to the *National Voter Registration Act Agency Voter Registration Training Manual & Guide*. If additional assistance is needed, please

contact the county board of elections office. You may also contact the State Board of Elections at 1-866-522-4723.

***Monitor administration***
The Site Coordinator is responsible for supervising the daily voter registration activities at the location. The Site Coordinator should actively participate in the program, communicating clearly with all employees conducting voter registration activities.

***Transmittal***
All Voter Registration applications and Voter Registration Preference forms must be submitted to the county board of elections of a client's residence, within five business days. This also includes any applications used to update an existing registration. Use the transmittal form provided (Attachment B) to send counts of clients that have registered or filled out a Voter Registration Preference form along with the actual Voter Registration applications and Voter Registration preference forms to the county board of elections of the county where the clients reside. If an agency services clients from multiple counties, transmittal reports with the required attached applications and/or forms must be sent to each county board of elections where the clients served voter registration services by the agency reside.

***Communication***
On a weekly basis, transmit electronically to the State Board of Elections, by way of an email report or a web based report, (a link has been provided to all voter registration agencies) the number of Voter Registration applications and Voter Registration Preference forms executed by clients and sent to the county board of elections. Also communicate or respond as needed to county or state election officials.

## TRACKING & TRANSMITTING VOTER REGISTRATION MATERIALS

One of the most important parts of the agency voter registration program is the timely delivery of voter registration materials to the appropriate county board office. Timely delivery will ensure that all individuals are properly registered for all elections and insuring that the integrity of elections are protected.

### Transmitting Materials

All completed Voter Registration applications and Voter Registration Preference forms should be transmitted within 5 business days to the respective county board of elections office. Please adhere to the following procedure when transmitting materials:

- All materials should be placed in a sealed envelope. While most voter information is public, information such as date of birth and social security numbers are not and should be kept from public view. Please use an envelope that will allow materials to be transmitted without folding or bending.
- In addition to voter registration materials, please enclose or attach the Voter Registration Materials Transmittal Form and note the number clients served, the total number of Voter Registration applications, and the total number of Voter Registration Preference forms. A sample of the Transmittal Form is included in the attachments.
- For each election in NC, voter registration books close 25 days prior to the election. When transmitting materials near this deadline, all eligible applications should be transmitted as soon as possible as most county board offices are inundated with voter registration applications at this time. Applications completed in your office on the 25th day prior to the election are considered timely and should be delivered promptly.

### Tracking Voter Registration Applications & Preference forms

In order to track the progress of the agency voter registration program, the number of clients appearing in person along with the number of completed Voter Registration applications and Voter Registration Preference forms. The agency, pursuant to direction from the State Board of Elections, should electronically report this information weekly to a designated State Board of Elections contact.

This information can be tracked manually or electronically depending on the resources and best fit for the individual agency; however, all agencies are required to report the requested data and store it in such a manner as to promptly produce such information upon request.

At a minimum, the following should be reported weekly to the NC State Board of Elections:

- The total number of clients applying, recertifying, renewing or changing their addresses with respect to benefits under a covered program who are served in person by the agency for a given time period;
- The total number of completed Voter Registration applications;
- The total number of completed Voter Registration Preference Forms. (If completed properly, this number should equal the number of clients applying, recertifying, renewing or changing their addresses with respect to benefits under a covered program who are served in person by the agency for the given time period.)

If assistance in setting up a tracking procedure is needed, please contact the NC State Board of Elections at 1-866-522-4723.

## FREQUENTLY ASKED QUESTIONS

1. ***Do the county boards of elections cancel the previous registration if an applicant was registered in another county or state?***

   Yes. The law requires that the county board of elections, upon approval of an application to register, cancel any previous registration of that applicant.

2. ***Where are Voter Registration Preference forms filed and for how long?***

   Voter Registration Preference forms are kept on file at the county board of elections for a period covering two list maintenance periods, approximately 24 months. There are limited situations where Voter Registration Preference forms may be kept by an agency where such arrangement is mutually approved by the agency and the State Board of Elections.

3. ***Can the State Board of Elections provide the agency voter registration offices with a list of all county board of elections offices?***

   A current roster of county board offices, including the Director's name, mailing address, phone number and fax number can be found on the State Board of Elections website (www.sboe.state.nc.us ).

4. ***If the county board of elections needs additional information before processing an a voter registration application, will the elections officials contact the client or the agency?***

   In most cases, the contact will be with the client. There may be some individual situations that would necessitate the board of elections staff contacting the agency; however, this type of contact will be kept at an absolute minimum.

5. ***Why does North Carolina now have so many different registration applications; and, with a code number identifying the location from which the form came? How can we ensure agency clients their privacy will be protected?***

   North Carolina now uses nine different registration applications: Three separate agency registration applications, Military recruitment office applications, a Drivers' License registration application, a Mail-In application, an In-Person/Voter Registration Drive application, Libraries and High School applications and a Spanish language application. Each application serves a different purpose. The coding on the various registration applications is used by elections officials to comply with reporting requirements set by the NVRA. This code in no way directly links the applicant to a specific agency or office, but is a means of reporting aggregated voter registration applications received from or generated by different agencies.

6. ***Will clients who complete voter registration applications be contacted regarding their applications; and, will these new voters know where to vote?***

   The county board of elections that receives the application will send a verification notice to the client, informing them of their assigned precinct and voting place. Clients can

always contact the county board office if they have any questions or to correct information.

7. ***If an agency accepts applications for service and changes of addresses by other methods, other than in-person, how do we process that client for purposes of voter registration?***

Because the law requires that we have a signed application or statement by the voter before we proceed with a voter registration or changes of information, the agency client will need to make application or change for voter registration whenever the client is physically present. Whoever handles applications for service and changes of address other than in-person, should send a voter registration packet in the mail to the client. A client may not register to vote or change a voter registration name or address unless they personally sign the voter registration application. If changes are made by mail and if a voter packet is sent along with documents for updating, for example, an address, the voter registration application and a Voter Registration Preference form should be sent in the voter packet.

## POLITICAL ACTIVITY:

1. ***Will the political activity of agency voter registration personnel be limited?***

Political activity conducted outside of the agency office will not be limited; however, the law specifically prohibits agency voter registration personnel from seeking to influence a client's selection of political party affiliation. This includes the display of any political preference or party allegiance. In other words, agency voter registration personnel should refrain from displaying campaign bumper stickers, wearing campaign or party buttons or pins, etc., during office hours or while serving as an agency voter registration employee. These legal prohibitions are outlined in NCGS §163-82.20(e) (1) & (2) and are included in the Attachment G.

2. ***What is the penalty associated with violation of the prohibition against influencing a party choice?***

There is no direct penalty provided by North Carolina law; however, the NVRA does make it a criminal offense to intimidate or attempt to intimidate a person who is completing a voter registration transaction. Should the State Board office receive information that a violation of this sort may be occurring, we will investigate. If the investigation produces results that affirm the alleged violation, evidence will be turned over to the appropriate authorities.

3. ***What can be said to a client who wishes to know what the different parties stand for?***

The best response in this case would be to refer the client to the political parties for information. Let the client know if they would like to register at the present time to vote as an unaffiliated or with a party, that party affiliation can be changed at a later date. Never indicate a preference or make any assumptions.

4. ***If an agency registration employee reads the application to an illiterate client, and assists that client in completing the application, should the employee also complete the party affiliation portion? If yes, what would be the procedure if the client refuses to give a party affiliation?***

The agency employee should inform the client of the opportunity to choose a party affiliation. If the client refuses to choose a party affiliation, the employee should inform the client that leaving the space blank will cause the county board of elections to record the party affiliation as "unaffiliated" on the applicant's official voter registration record. Again, remind the client they are free to change party affiliation after registering with you.

***5. Do political parties allow unaffiliated voters to vote in party primaries?***

By law, a recognized political party may allow unaffiliated voters to vote in that party's primaries. Because a party's choice in this matter is subject to change, it is best to call the board of elections if an applicant has a question about a specific party. As of 2006, all recognized parties in NC allow unaffiliated voters to participate in party primaries, a position that has been consistent by all recognized political parties since the 1990's.

## DETERMINING VOTER ELIGIBILITY:

**1. Who is responsible for determining the eligibility of a person to register to vote?**

It is the responsibility of the county boards of elections, and not agency personnel, to determine the eligibility of clients to register and vote in North Carolina. If agency registration staff questions the eligibility of a particular client, the best procedure would be to allow the client to complete the Voter Registration application and then transmit the application to the proper county board of elections. The county board of elections will utilize all available resources to verify the information on the application and to correctly determine eligibility.

***2. If a client is unsure about registration qualifications or eligibility to register, should a voter registration application be completed?***

This situation may arise when a client is unsure about their citizenship status or restoration of citizenship rights. It is a felony to register to vote if you are not an American citizen or an active felon whose citizenship has not been restored. In such a situation, the client will need to proceed with caution. Agency personnel should not assist the client to complete the application inaccurately, if agency personnel are aware the information is untrue. If there is no way to ascertain the missing information, the client should not complete the voter registration application because the client attests to the accuracy of the information under penalty of perjury. Instead, the client should decline to complete the voter registration application until they are certain about the requested information. Although the client should not register at the agency, the client may be given the application to complete at home if they so desire.

***3. Once a person is registered to vote, is there a need to re-register at any time?***

A voter's registration is permanent unless the voter, as determined by a county board of elections:

1. requests in writing to be removed from the active registration list,
2. fails to respond to confirmation procedures as outlined in NCGS §163-82.14(d)(2),
3. dies, or
4. is convicted of a felony.

If a person moves into a new county, they must cancel any previous registration and submit an application to register in the new county. A client may accomplish both by completing the relevant information on the voter registration application. If a person

moves to another address in the same county they must update the residential address, but do not have to re-register.

4. ***Can migrant workers register to vote in their current county of employment?***

Any person meeting the qualifications to register and vote as outlined in NCGS §163-55 and §163-57 can register to vote. (See Attachment G) Remember that the county board of elections will determine whether an applicant meets those qualifications. However, agency personnel should not assist the client to complete the application inaccurately, if agency personnel are aware the information is untrue. So, if the migrant worker has told the agency employee they are not a citizen, the agency should not aid in preparing and submitting the voter registration application.

5. ***Are agency registration employees required to offer the voter registration opportunity to clients under the age of 18?***

Yes. The county board of elections is the office responsible for determining the eligibility and qualifications of voter registration applicants. For clients under the age of 18, the county board of elections will either deny the registration or hold it, if the client is seventeen, until such time as the person would be qualified by age to register and vote in the State. Individuals, who will be 18 by the next general election, are eligible to vote in that election's primary at the age of 17.

6. ***Can homeless persons register to vote?***

Yes. For homeless persons the residence address would be defined as the place where they sleep or spend the majority of their time. In addition, an elections office must have a mailing address to which they can send mail to the person. This can be a Post Office box, a local shelter, church, etc., or any place else where the person receives mail. Therefore, the homeless client may need to fill out the mailing address section of the voter registration application.

7. **There has been a lot of attention in the press regarding illegal aliens and access to government services. What prevents non-citizens from registering to vote? Can agencies be held liable if a non-citizen falsely registers at our office?**

Only individuals who are citizens of the United States are eligible to register to vote. Legal residents holding "green cards" or persons holding visas allowing them to reside in the United States are not citizens and may not register to vote. The voter registration application requires that each person registering to vote affirms citizenship once by checking a box and another time by attestation. Falsely answering the citizenship question is a felony, can be grounds for immediate deportation, and will forever bar the client from ever becoming an American citizen. If it is determined that a non-citizen has registered to vote and subsequently is not eligible to vote, the registration will be cancelled and the individual reported to the U.S. or District Attorney. Agency staff, unless knowingly aiding the non-citizen in providing false information on the voter registration application, cannot be held liable for any person who falsely completes a voter registration application. Agency staff should notify the county elections office if they believe a person has deliberately completed a registration application with false information.

8. ***Should the voter registration service be offered to inmates of the county jail brought to mental health offices for review?***

If an inmate is considered a client of the mental health office, s/he should be offered the opportunity to register to vote. If s/he has been convicted of a felony and has not had citizenship rights restored, which would deprive the inmate of the right to vote, that fact will be revealed when s/he answers Question 1 on the voter registration application and the inmate should not complete the application. As stated earlier, however, **agency personnel should not make eligibility determinations.**

## DISABLED VOTERS:

***1. Are voting places and voting machines accessible to voters with disabilities?***

Under federal law both voting places and voting machine systems must be accessible for the disabled. Clients who have concerns should contact the county board of elections as to voting accessibility issues.

***2. Please advise agency personnel how to register a visually impaired person.***

The law requires that agency staff provide the same degree of assistance during the voter registration process as would be provided during the completion of standard agency forms and applications. In the case of visually impaired clients, we recommend that the agency employee complete the application for the client (writing the answers provided by the client) and assist the client in making a mark in the signature block. The agency employee should sign or initial the application in the vicinity of the mark, and enter that day's date. Rulers or other items with a defined straight edge can be used to identify the signature area of the application for clients with limited vision and thus allow them to sign or mark the application.

***3. Should agency employees offer voter registration to clients regardless of mental or intellectual capacity?***

Yes. North Carolina law does not make mental competency or intellectual capacity a qualification for citizens to register to vote.

***4. If an agency client is unable to sign the application, what procedure is necessary?***

In North Carolina, an applicant's mark is considered as good as a signature. We recommend that if a client is unable to sign the document, the client should make some mark in the signature block (an "X" is sufficient). The agency employee should then initial or sign in the vicinity of the mark, and date the application. If the client cannot make a mark, the employee may sign for the client provided that the client has given verbal permission and the client touches the pen as his or her name is written. The agency employee should document that this method was used.

***5. What address is required for agency clients that live in group homes or hospitals?***

Registration officials need a residence address to process a voter registration application. They also need a mailing address if it is different than the residence address. In cases where giving the residence address may violate a client's right to privacy, we suggest using a street address with no identifier (for example, leave off the hospital or group home name). If this solution is not satisfactory to the client or the agency, contact the county board of elections to discuss other options. See Attachment D as to further information as to clients served by DMNDDSBS.

***6. Is assistance provided at the voting place for disabled voters?***

Yes. Even though there are accessible voting machines for voters with disabilities located at every North Carolina voting location, the disabled voter has the option of requesting assistance. A voter needing assistance must make a request for assistance to the chief judge at the voting place. Qualified voters are entitled to assistance getting to and from the voting booth and marking a ballot. A voter may receive assistance from a near relative or other person of the voter's choice (other than the voter's employer, an agent of the voter's employer, or an officer or agent of the voter's union). Another option for disabled or elderly voters is curbside voting. NCGS §163-166.9 allows qualified voters who are able to travel to the voting place, but because of age or physical disability cannot enter the voting enclosure, to mark a ballot from the vehicle.

## AGENCY REQUIREMENTS:

1. ***Will agency voter registration offices be periodically audited or monitored for correct conduct of the voter registration program?***

Election offices will conduct random unannounced checks to ensure the integrity of the agency registration program. We generally rely upon information received from the public to determine if possible misconduct exists. Failure to offer the voter registration service to all clients is a violation of NVRA and state law. If we have reason to believe that registration officials are engaged in practices that violate voter registration laws, the State Board of Elections will investigate. Agencies should refer to attachment C at the end of this manual for a list of prohibitions regarding the administration of the voter registration program.

2. ***Do agency registration personnel need to take an oath before performing voter registration functions?***

No.

3. ***Does the agency voter registration program intend to include the parents and caretakers of clients, or only to adult participants?***

It depends on the clients served. For example, in the case of the WIC program, the mother of the infant child receiving the benefits, should be offered the voter registration service provided the individual meets all qualifications, including a Voter Registration Preference form and a voter registration application. Also, any legal guardian accompanying the client should be offered the services. If the client receiving the benefits requests that other members of the family be registered also, additional voter registration applications may be given to take home to those family members. If the client receiving the benefits is represented by another person (guardian, power of attorney, etc.), this should be noted on the Voter Registration Preference form and the representative should be given a voter registration application to take to the client. The representative or legal guardian cannot register for the client. The agency employee is not required to provide the voter registration service to the representative, but the representative may be given a voter registration application to fill out at home. The representative may also referred to the local county board of elections.

4. ***Must agencies offer the voter registration service at times other than application, and recertification, renewal, or notice of change of address?***

No. The law requires contained in NCGS §163-82.20(b)(1) states that agency registration personnel to will offer the voter registration services opportunity only during original applications for service or benefits, and with each recertification, renewal or change of address.

5. ***Beyond the Voter Registration Preference form required from all clients, what documentation is required of those clients who take voter registration applications home?***

If a client chooses to take an application out of the agency office, it is no longer the responsibility of the agency office to transmit that application, unless the client brings the completed application back to the agency at the next visit. As with all clients, a Voter Registration Preference form should be completed at the agency office.

6. ***If an agency client wishes to take the voter registration application home, who pays the postage to have it mailed back to the county board of elections?***

If the client mails the application to the county board of elections, the client must pay the postage. Clients may also hand-deliver the application to the county board office or return it to the agency office for transmittal to the county board office.

7. ***Do agency offices serving more than one county register voters for each of those counties?***

Yes. The completed voter registration applications and Voter Registration Preference forms would then be transmitted to the appropriate county board of elections.

8. ***How do agency employees proceed if the client does not know his/her voter registration status?***

In this situation, agency employees have three options:
1) Call the county board of elections to determine if the client is already registered, or
2) If the agency has access to the Internet, check the statewide voter registration database located on the State Board of Elections website (www.sboe.state.nc.us), or
3) Complete a voter registration application and send to the county board of elections office, where the county board staff will process it according to correct procedures.

9. ***How do agency offices comply with the five-day transmittal deadline if the client takes the voter registration application home and brings it back at a later date?***

The five-day deadline is counted from the date the completed application is received by the agency office.

10. ***If a client informs agency personnel that they will be moving to another county in the State but the client has not yet moved, is the agency office responsible for any paperwork associated with this move?***

No. When the actual move occurs, an agency office in the county where the client is moving would complete the registration transaction (cancellation of the old registration and a new application to register in the new county) if the clients seeks services in the new county. The client is also free to handle the registration transaction themselves if they wish.

***11. Are agency voter registration employees required to give an oath to clients who complete an application to register to vote?***

No.

***12. Some agency clients may refuse to complete the Voter Registration Preference form. How should the agency employee handle this situation?***

When the visit with the client is completed, simply enter the client's name and date of birth, then sign and date the form. Transmit the form to the county board of elections along with other completed Voter Registration Preference forms and applications. If the client complains about being asked to fill out a Voter Registration Preference form, you are free to tell them it is required by the NVRA, but that law will not force them to sign the Voter Registration Preference form. You will sign it on their behalf.

***13. If the agency employee prints the client's name and date of birth, initials the form and transmits it to the county board of elections, would this action not violate the client's right to privacy?***

No. The Federal law requires that we maintain signed Voter Registration Preference forms for every agency client choosing not to register to vote. The Voter Registration Preference form serves two purposes: (1) It ensures elections officials that agency clients are not being coerced or influenced to register to voter, and (2) it allows elections officials to trace registration actions should the client appear on Election Day and seek to vote. The forms also allow the State Board of Elections to ensure that agencies are in compliance with the law. The Voter Registration Preference form, once received by the county board of elections, is confidential, and cannot be traced to a particular agency or office. Furthermore, an individual who refuses to sign the Voter Registration Preference form is considered to have declined to register to vote. See statement four on the Voter Registration Preference form which reads: "If I do not sign this form or complete a voter registration application, I will be considered to have decided not to register to vote at this time".

***14. What is the procedure for clients who are unable to complete a voter registration transaction at the time of initial application for services or admission?***

In rare cases such as this, the agency staff must use some discretion in determining if the client is able to complete a voter registration transaction (this includes mental deficiency, intoxication, for example etc.). The voter registration service may be postponed until a later date. Agency staff should fill out a Voter Registration Preference form noting the name and DOB of the client and write a short explanation on the Voter Registration Preference form.

***15. Who should agency personnel contact if it is believed an applicant is providing false information?***

The county board of elections where the agency is located.

***16. Is identification required before registering at the agency office?***

No. Current voter registration laws do not require any type of identification at the time of "in-person" registration at an agency or at the county or State Board of Elections; however, the Help America Vote Act of 2002 (HAVA) does requires of all voter

registration applicants to provide either a drivers license number, at least the last four digits of their social security number, or an applicant's state assigned voter ID number. If the client has no driver's license or social security number, and has not been assigned a North Carolina Voter ID number, the completed voter registration application should be transmitted as is. Upon receipt, the client will be assigned a Voter ID number and will be registered. If any further information is required to complete the registration, the county board of elections office will contact the voter if further ID is needed.

**_17. If a client has declined to register once, are agency employees required to offer the opportunity to register to vote at subsequent visits?_**

Yes. Regardless of past refusals to register, agency personnel must provide voter registration services to clients at each application for service or benefits, and with each recertification, renewal or change of address with respect to such benefits. If the client declines such services, it must be noted on a Voter Registration Preference form. Each time the voter registration service is offered, if the client declines, a signed declination is required.

**_18. What information is absolutely required on the voter registration application before it can be processed?_**

For original voter registrations the essential information fields are:

- citizenship status,
- name,
- residence address (If the client's mailing address if different from their residence address, it should be included also),
- date of birth,
- if the applicant has a drivers license number, or the a last four digits of the social security number, or North Carolina Voter ID number, such information must be provided; however, if the applicant has none of the three, the applicant must indicate that fact on the application form, and
- signature.

**_19. What is the procedure if completed voter registratiom materials are mistakenly lost or discarded?_**

Without an application, the county board of elections will have no way to process a voter registration transaction. If it is known by an agency that a voter registration application was lost, discarded, or destroyed, the client should be contacted and the agency should aid them in filling out a new voter registration application and promptly transmitting it to the county board of elections.

When the status of a lost or discarded application is not known to either the client or agency, and a client, claiming to have registered at the agency, does not appear on the voter registration rolls at the time of an election, they will be allowed to complete an affidavit stating they had registered at the agency, and vote a provisional ballot. The county board staff will then determine whether to count the provisional ballot based upon research of documentation, including Voter Registration Preference forms sent to it by the agency, as to whether they register at the agency as alleged.

**_20. Are agency employees required to check voter registration materials for completeness?_**

If an agency employee assists the client in completing any of the voter registration materials, then yes, the employee should attempt to ensure completion of all required items. If the client completes the materials independently, the county board of elections staff will contact the applicant to request any missing information.

21. ***Must voter registration agencies transmit completed applications no later than the 25th day before an election in order for the application to be accepted by the board of elections?***

No. If the agency office receives the application by the 25-day deadline, it is considered valid for the election. We do request that as the deadlines for voter registration approach, agency offices be very sensitive to timely transmittal of the completed applications. County boards of elections generally receive several times the usual number of applications during the final days of registration.

22. ***Is the five-day transmittal deadline five calendar days or five business days?***

Five business days.

23. ***Do North Carolina voter registration laws apply to persons living on the Cherokee Reservation?***

Yes.

**ATTACHMENT A: AGENCY DECLINATION FORM**

# STATE OF NORTH CAROLINA
# Voter Registration Preference Form

To Register to Vote You Must:

1. Be a citizen of the United States of America
2. Be a resident of North Carolina for 30 days before the next election in which you intend to vote
3. Be 18 years old by the time of the next election in which you intend to vote
4. If you have been convicted of a felony, your rights of citizenship must have been restored. In NC your rights are restored automatically after you are discharged from a felony.
5. You must not be registered to vote in any other county or state after submission of a voter registration form. If you register to vote today, any voter registration you have elsewhere will be canceled.

**Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency.**

I, ________________________________, have been offered the opportunity to register to vote by this agency. (Please Print Clearly)

**If you are not registered to vote where you live now, would you like to apply to register to vote here today?**

Please select ONE of the options below:

- □ YES, I would like to apply to register to vote in the here today.
- □ YES, I would like to apply to register to vote, but I will take a voter registration application home to complete at a later time.
- □ NO, I am declining the opportunity to register to vote today.
- □ I am ALREADY REGISTERED to vote at my current address.
- □ I would like to update my residential or mailing address.

If you do not check a box, you will be considered to have decided not to register to vote at this time.

I understand that I will be offered the opportunity to register to vote at initial application for service or assistance and with each recertification, renewal or change of address relating to such service or assistance.

I understand that I may request and receive assistance from this agency in completing the voter registration form. The decision to seek or accept help is mine. I may fill out the application in private.

If I choose to register to vote, the location where I completed the voter registration application form will be used only for voter registration purposes. If I decline to register to vote, the fact that I declined will be used only for voter registration purposes.

________________________________________ ________________________________

Signature DOB __/___/_______

________________________________________ ________________________________

Agency Name Interviewer Initials and Date

If you believe that someone has interfered with any of your rights listed below, you may file a complaint with Gary Bartlett, North Carolina State Board of Elections, PO Box 27255, Raleigh, NC 27611-7255, or you may call the toll free number 1-866-522-4723.

- your right to register or to decline to register to vote
- your right to privacy in deciding whether to register
- your right to choose your own political party or other political preference

**ATTACHMENT B: NVRA AGENCY TRANSMITTAL FORM**

## NVRA Agency Voter Registration Program
## VR Materials Transmittal Form

**Please complete the fields below and enclose this form with the materials to be transmitted to the County Board of Elections. Retain a copy for your records.**

| | |
|---|---|
| Today's Date: | |
| Forms for Week Ending Date: | |
| Agency Name | |
| Agency Representative: | |
| County: | |
| Notes: | |

| | |
|---|---|
| CBE County: | |
| # of Voter Registration Applications Enclosed: | |
| # of Preference Forms Enclosed: | |
| Method of Delivery: | ☐ In Person<br>☐ By Mail<br>☐ Courier<br>☐ County Mail |

## ATTACHMENT C: PROHIBITIONS

The law directly prohibits certain actions and behaviors in the administration of voter registration in designated agency offices.

1) Agency employees must not attempt to influence a client's decision regarding party affiliation. Agency employees may explain that political parties may require a person to be registered with that political party in order to participate in that party's primary, but a person may register as unaffiliated if he does not wish to be registered with a particular party. Agency employees must not seek to persuade a client to register with a particular party.

2) Agency employees serving as voter registration officials must not display any political preference or party affiliation. This includes displaying bumper stickers, pins, posters, etc. endorsing a particular party or candidate.

3) Agency employees must not attempt to dissuade a client from completing a voter registration transaction. This includes any statements or actions that would discourage the client from registering to vote or updating their voter registration records.

4) Agency employees must not say or do anything that would lead a client to believe that a decision to register or to decline to register will in any way affect the services or benefits provided by the agency.

## ATTACHMENT D: SPECIAL INSTRUCTIONS FOR MENTAL HEALTH, DEVELOPMENTAL DISABILITIES AND SUBSTANCE ABUSE SERVICES OFFICES

The Executive Director of the State Board of Elections has determined that staff falling under the direction of the Division of Mental Health, Developmental Disabilities and Substance Abuse Services and working at **designated** State Operated Facilities ***should make the agency voter registration program available to clients, but are not required to actively offer the voter registration service to every client***. These designated facilities and centers are:

1. Broughton Hospital, Morganton, NC;
2. Cherry Hospital, Goldsboro, NC;
3. Dorothea Dix Hospital, Raleigh, NC;
4. John Umstead Hospital, Butner, NC;
5. Black Mountain Center, Black Mountain, NC;
6. Caswell Center, Kinston, NC;
7. Murdoch Center, Butner, NC;
8. O'Berry Center, Goldsboro, NC;
9. J. Iverson Riddle Developmental Center, Morganton, NC;
10. Julian F. Keith ADATC , Black Mountain, NC;
11. R.J. Blackley ADATC, Butner, NC;
12. Walter B. Jones ADATC--Greenville, NC; and,
13. North Carolina Special Care Center, Wilson, NC.
14. The Central Regional Hospital, Butner, N.C.

We suggest that these State Operated Facilities make the voter registration applications available to interested clients, and possibly post a notice informing clients that voter registration transactions may be completed in this location.

## ATTACHMENT E: CONTACT US

Name of county election directors, addresses, e-mails, phone and fax numbers for all 100 county boards of elections may be obtained through the State Board of Elections website: www.sboe.state.nc.us

Questions or inquiries for the State Board of Elections can be sent through the following:

| | |
|---|---|
| By phone: | (919) 733-7173<br>(866) 522-4723 |
| By fax: | (919) 715-0135 |
| By mail: | PO Box 27255<br>Raleigh, NC 27611-7255 |
| By email: | elections.sboe@ncmail.net |

Our office is located at 506 N. Harrington Street, Raleigh, NC 27603

## ATTACHMENT F:
## ORDER FORM FOR VOTER REGISTRATION SUPPLIES

### North Carolina Voter Registration Supplies Order Form

NC State Board of Elections,
PO Box 27255, Raleigh, NC 27611-7255, (866)522-4723, Fax (919) 715-0135

**To ensure that your order is filled correctly please complete all fields. Forms come in boxes of 1000, so please round off your request to the nearest 1000. To order fewer forms, call 1-866-522-4723**

| | |
|---|---|
| **Date:** | |
| **Contact Name:** | **Phone:** |
| | **Phone (Alternate):** |
| **Agency:** | **Fax:** |
| | **Email:** |

| Description of Form | Quantity |
|---|---|
| **01– Division of Social Services** | |
| **02– Disabilities Services Agencies** | |
| **03– Employment Security Commission** | |
| **06– Mail-in** | |
| **07– In-Person/Voter Registration Drives*** | |
| **08– Libraries, High Schools, Institutes of Higher Learning** | |
| **09– Español/Spanish** | |
| | **Total:** |

| **Shipping (Physical) Address:** | **Mailing Address:** ☐ **Same as shipping** |
|---|---|
| | |

**Under North Carolina law, it is the obligation of any individual who receives a completed voter registration application from an applicant who entrusts that individual to submit the application for him or her, to submit it to the appropriate board of elections office by the 25th day before an election. Failure of that individual to do so may result in a Class 2 Misdemeanor.*

| ***For Office Use Only*** | |
|---|---|
| Order Number: | |
| Date Order R'cvd: | |
| Ship Date: | |

Signature of person ordering: ______________________

Date ______________________

**§ 163-82.20. Voter registration at other public agencies.**

(a) Voter Registration Agencies. – Every office in this State which accepts:

(1) Applications for a program of public assistance under Article 2 of Chapter 108A of the General Statutes or under Article 13 of Chapter 130A of the General Statutes;

(2) Applications for State-funded State or local government programs primarily engaged in providing services to persons with disabilities, with such office designated by the State Board of Elections; or

(3) Claims for benefits under Chapter 96 of the General Statutes, the Employment Security Law,

is designated as a voter registration agency for purposes of this section.

(b) Duties of Voter Registration Agencies. – A voter registration agency described in subsection (a) of this section shall, unless the applicant declines, in writing, to register to vote:

(1) Distribute with each application for service or assistance, and with each recertification, renewal, or change of address relating to such service or assistance:

a. The voter registration application form described in G.S. 163-82.3(a) or (b); or

b. The voter registration agency's own form, if it is substantially equivalent to the form described in G.S. 163-82.3(a) or (b) and has been approved by the State Board of Elections, provided that the agency's own form may be a detachable part of the agency's paper application or may be a paperless computer process, as long as the applicant is required to sign an attestation as part of the application to register.

(2) Provide a form that contains the elements required by section 7(a) (6) (B) of the National Voter Registration Act; and

(3) Provide to each applicant who does not decline to register to vote the same degree of assistance with regard to the completion of the registration application as is provided by the office with regard to the completion of its own forms.

(c) Provided that voter registration agencies designated under subdivision (a)(3) of this section shall only be required to provide the services set out in this subsection to applicants for new claims, reopened claims, and changes of address under Chapter 96 of the General Statutes, the Employment Security Law.

(d) Home Registration for Disabled. – If a voter registration agency provides services to a person with disability at the person's home, the voter registration agency shall provide the services described in subsection (b) of this section at the person's home.

(e) Prohibitions. – Any person providing any service under subsection (b) of this section shall not:

(1) Seek to influence an applicant's political preference or party registration, except that this shall not be construed to prevent the notice provided by G.S. 163-82.4(c) to be given if the applicant refuses to declare his party affiliation;

(2) Display any such political preference or party allegiance;

(3) Make any statement to an applicant or take any action the purpose or effect of which is to discourage the applicant from registering to vote; or

(4) Make any statement to an applicant or take any action the purpose or effect of which is to lead the applicant to believe that a decision to register or not to register has any bearing on the availability of services or benefits.

(f) Confidentiality of Declination to Register. – No information relating to a declination to register to vote in connection with an application made at a voter registration agency may be used for any purpose other than voter registration.

(g) Transmittal From Agency to Board of Elections. – Any voter registration application completed at a voter registration agency shall be accepted by that agency in lieu of the applicant's mailing the application. Any such application so received shall be transmitted to the appropriate board of elections not later than five business days after acceptance, according to rules which shall be promulgated by the State Board of Elections.

(h) Twenty-Five-Day Deadline for an Election. – Applications to register accepted by a voter registration agency shall entitle a registrant to vote in any primary, general, or special election unless the registrant shall have made application later than the twenty-fifth calendar day immediately preceding such primary, general, or special election, provided that nothing shall prohibit voter registration agencies from continuing to accept applications during that period.

(i) Ineligible Applications Prohibited. – No person shall make application to register to vote under this section if that person is ineligible to vote on account of age, citizenship, lack of residence for the period of time provided by law, or because of conviction of a felony. (1993 (Reg. Sess., 1994), c. 762, s. 2; 1995, c. 507, s. 25.10(c); 1995 (Reg. Sess., 1996), c. 608, s. 1.)

## SUBCHAPTER III. QUALIFYING TO VOTE.

Article 6.

Qualifications of Voters.

### § 163-54. Registration a prerequisite to voting.

Only such persons as are legally registered shall be entitled to vote in any primary or election held under this Chapter. (1901, c. 89, s. 12; Rev., s. 4317; C. S., s. 5938; 1967, c. 775, s. 1.)

### § 163-55. Qualifications to vote; exclusion from electoral franchise.

(a) Residence Period for State Elections. – Every person born in the United States, and every person who has been naturalized, and who shall have resided in the State of North Carolina and in the precinct, ward, or other election district in which the person offers to vote for 30 days next preceding an election, shall, if otherwise qualified as prescribed in this Chapter, be qualified to vote in any election held in this State. Removal from one precinct, ward, or other election district to another in this State shall not operate to deprive any person of the right to vote in the precinct, ward, or other election district from which he has removed until 30 days after the person's removal.

Except as provided in G.S. 163-59, the following classes of persons shall not be allowed to vote in this State:

(1) Persons under 18 years of age.

(2) Any person adjudged guilty of a felony against this State or the United States, or adjudged guilty of a felony in another state that also would be a felony if it had been committed in this State, unless that person shall be first restored to the rights of citizenship in the manner prescribed by law.

(b) Precincts and Election Districts. – For purposes of qualification to vote in an election, a person's residence in a precinct, ward, or election district shall be determined in accordance with G.S. 163-57. When an election district encompasses more than one precinct, then for purposes of those offices to be elected from that election district a person shall also be deemed to be resident in the election district which includes the precinct in which that person resides. An election district may include a portion of a county, an entire county, a portion of the State, or the entire State. When a precinct has been divided among two or more election districts for purposes of elections to certain offices, then with respect to elections to those offices a person shall be deemed to be resident in only that election district which includes the area of the precinct in which that person resides. Qualification to vote in referenda shall be treated the same as qualification for elections to fill offices. (19th amendt. U.S. Const.; amendt. State Const., 1920; 1901, c. 89, ss. 14, 15; Rev., ss. 4315, 4316; C.S., ss. 5936, 5937; Ex. Sess. 1920, c. 18, s. 1; 1933, c. 165, s. 4; 1945, c. 758, s. 7; 1955, c. 871, s. 2; 1967, c. 775, s. 1; 1971, c. 1231, s. 1; 1973, c. 793, s. 18; 2005-2, s. 2.)

**§ 163-56. Repealed by Session Laws 1973, c. 793, s. 19.**

**§ 163-57. Residence defined for registration and voting.**

All election officials in determining the residence of a person offering to register or vote, shall be governed by the following rules, so far as they may apply:

(1) That place shall be considered the residence of a person in which that person's habitation is fixed, and to which, whenever that person is absent, that person has the intention of returning.

a. In the event that a person's habitation is divided by a State, county, municipal, precinct, ward, or other election district, then the location of the bedroom or usual sleeping area for that person with respect to the location of the boundary line at issue shall be controlling as the residency of that person.

b. If the person disputes the determination of residency, the person may request a hearing before the county board of elections making the determination of residency. The procedures for notice of hearing and the conduct of the hearing shall be as provided in G.S. 163-86. The presentation of an accurate and current determination of a person's residence and the boundary line at issue by map or other means available shall constitute prima facie evidence of the geographic location of the residence of that person.

c. In the event that a person's residence is not a traditional residence associated with real property, then the location of the usual sleeping area for that person shall be controlling as to the residency of that person. Residence shall be broadly construed to provide all persons with the opportunity to register and to vote, including stating a mailing address different from residence address.

(2) A person shall not be considered to have lost that person's residence if that person leaves home and goes into another state, county, municipality, precinct, ward, or other election district of this State, for temporary purposes only, with the intention of returning.

(3) A person shall not be considered to have gained a residence in any county, municipality, precinct, ward, or other election district of this State, into which that

person comes for temporary purposes only, without the intention of making that county, municipality, precinct, ward, or other election district a permanent place of abode.

(4) If a person removes to another state or county, municipality, precinct, ward, or other election district within this State, with the intention of making that state, county, municipality, precinct, ward, or other election district a permanent residence, that person shall be considered to have lost residence in the state, county, municipality, precinct, ward, or other election district from which that person has removed.

(5) If a person removes to another state or county, municipality, precinct, ward, or other election district within this State, with the intention of remaining there an indefinite time and making that state, county, municipality, precinct, ward, or other election district that person's place of residence, that person shall be considered to have lost that person's place of residence in this State, county, municipality, precinct, ward, or other election district from which that person has removed, notwithstanding that person may entertain an intention to return at some future time.

(6) If a person goes into another state, county, municipality, precinct, ward, or other election district, or into the District of Columbia, and while there exercises the right of a citizen by voting in an election, that person shall be considered to have lost residence in that State, county, municipality, precinct, ward, or other election district from which that person removed.

(7) School teachers who remove to a county, municipality, precinct, ward, or other election district in this State for the purpose of teaching in the schools of that county temporarily and with the intention or expectation of returning during vacation periods to live where their parents or other relatives reside in this State and who do not have the intention of becoming residents of the county, municipality, precinct, ward, or other election district to which they have moved to teach, for purposes of registration and voting shall be considered residents of the county, municipality, precinct, ward, or other election district in which their parents or other relatives reside.

(8) If a person removes to the District of Columbia or other federal territory to engage in the government service, that person shall not be considered to have lost residence in this State during the period of such service unless that person votes in the place to which the person removed, and the place at which that person resided at the time of that person's removal shall be considered and held to be the place of residence.

(9) If a person removes to a county, municipality, precinct, ward, or other election district to engage in the service of the State government, that person shall not be considered to have lost residence in the county, municipality, precinct, ward, or other election district from which that person removed, unless that person votes in the place to which the person removed, and the place at which that person resided at the time of that person's removal shall be considered and held to be the place of residence.

(9a) The establishment of a secondary residence by an elected official outside the district of the elected official shall not constitute prima facie evidence of a change of residence.

(10) For the purpose of voting a spouse shall be eligible to establish a separate domicile.

(11) So long as a student intends to make the student's home in the community where the student is physically present for the purpose of attending school while the student is attending school and has no intent to return to the student's former home after graduation, the student may claim the college community as the student's domicile. The student need not also intend to stay in the college community beyond graduation in order to establish domicile there. This subdivision is intended to codify the case law. (19th amendt. U.S. Const.; amendt. State Const., 1920; 1901, c. 89, s. 15; Rev., s. 4316; C.S., s. 5937; Ex. Sess. 1920, c. 18, s. 1; 1933, c. 165, s. 4; 1945, c. 758, s. 7; 1955, c. 871, s. 2; 1967, c. 775, s. 1; 1981, c. 184; 1991, c. 727, s. 5.1; 1993 (Reg. Sess., 1994), c. 762, s. 22; 2001-316, s. 1; 2005-428, s. 3(b); 2006-262, s. 2.1.)

**§ 163-58: Repealed by Session Laws 1985, c. 563, s. 3.**

**§ 163-59. Right to participate or vote in party primary.**

No person shall be entitled to vote or otherwise participate in the primary election of any political party unless he

(1) Is a registered voter, and

(2) Has declared and has had recorded on the registration book or record the fact that he affiliates with the political party in whose primary he proposes to vote or participate, and

(3) Is in good faith a member of that party.

Notwithstanding the previous paragraph, any unaffiliated voter who is authorized under G.S. 163-116 may also vote in the primary if the voter is otherwise eligible to vote in that primary except for subdivisions (2) and (3) of the previous paragraph.

Any person who will become qualified by age or residence to register and vote in the general election or regular municipal election for which the primary is held, even though not so qualified by the date of the primary, shall be entitled to register for the primary and general or regular municipal election prior to the primary and then to vote in the primary after being registered. Such person may register not earlier than 60 days nor later than the last day for making application to register under G.S. 163-82.6(c) prior to the primary. In addition, persons who will become qualified by age to register and vote in the general election or regular municipal election for which the primary is held, who do not register during the special period may register to vote after such period as if they were qualified on the basis of age, but until they are qualified by age to vote, they may vote only in primary elections. (1915, c. 101, s. 5; 1917, c. 218; C.S., s. 6027; 1959, c. 1203, s. 6; 1967, c. 775, s. 1; 1971, c. 1166, s. 4; 1973, c. 793, s. 20; 1981, c. 33, s. 1; 1983, c. 324, s. 3; 1987, c. 408, s. 4; c. 457, s. 1; 1991 (Reg. Sess., 1992), c. 1032, s. 5; 1993 (Reg. Sess., 1994), c. 762, s. 23.)

## Article 7A.

## Registration of Voters.

**§ 163-82.1. General principles of voter registration.**

(a) Prerequisite to Voting. – No person shall be permitted to vote who has not been registered under the provisions of this Article or registered as previously provided by law.

(b) County Board's Duty to Register. – A county board of elections shall register, in accordance with this Article, every person qualified to vote in that county who makes an application in accordance with this Article.

(c) Permanent Registration. – Every person registered to vote by a county board of elections in accordance with this Article shall remain registered until:

(1) The registrant requests in writing to the county board of elections to be removed from the list of registered voters; or

(2) The registrant becomes disqualified through death, conviction of a felony, or removal out of the county; or

(3) The county board of elections determines, through the procedure outlined in G.S. 163-82.14, that it can no longer confirm where the voter resides. (1953, c. 843; 1955, c. 800; 1963, c. 303, s. 1; 1965, c. 1116, s. 1; 1967, c. 775, s. 1; 1973, c. 793, s. 25; 1975, c. 395; 1981, c. 39, s. 1; c. 87, s. 1; c. 308, s. 1; 1985, c. 211, ss. 1, 2; 1993 (Reg. Sess., 1994), c. 762, s. 2.)

**§ 163-82.2. Chief State Election Official.**

The Executive Director of the State Board of Elections is the "Chief State Election Official" of North Carolina for purposes of P.L. 103-31, The National Voter Registration Act of 1993, subsequently referred to in this Article as the "National Voter Registration Act". As such the Executive Director is responsible for coordination of State responsibilities under the National Voter Registration Act. (1993 (Reg. Sess., 1994), c. 762, s. 2; 2001-319, s. 11.)

**§ 163-82.3. Voter registration application forms.**

(a) Form Developed by State Board of Elections. – The State Board of Elections shall develop an application form for voter registration. Any person may use the form to apply to do any of the following:

(1) Register to vote;

(2) Change party affiliation or unaffiliated status;

(3) Report a change of address within a county;

(4) Report a change of name.

The county board of elections for the county where the applicant resides shall accept the form as application for any of those purposes if the form is submitted as set out in G.S. 163-82.3.

(b) Interstate Form. – The county board of elections where an applicant resides shall accept as application for any of the purposes set out in subsection (a) of this section the interstate registration form designed by the Federal Election Commission pursuant to section 9 of the National Voter Registration Act, if the interstate form is submitted in accordance with G.S. 163-82.6.

(c) Agency Application Form. – The county board of elections where an applicant resides shall accept as application for any of the purposes set out in subsection (a) of this section a form developed pursuant to G.S. 163-82.19 or G.S. 163-82.20. (1991 (Reg. Sess., 1992), c. 1044, s. 18(a); 1993, c. 74, s. 1; 1993 (Reg. Sess., 1994), c. 762, s. 2.)

**§ 163-82.4. Contents of application form.**

(a) Information Requested of Applicant. – The form required by G.S. 163-82.3(a) shall request the applicant's:

(1) Name,

(2) Date of birth,

(3) Residence address,

(4) County of residence,

(5) Date of application,

(6) Gender,

(7) Race,

(7a) Ethnicity,

(8) Political party affiliation, if any, in accordance with subsection (c) of this section,

(9) Telephone number (to assist the county board of elections in contacting the voter if needed in processing the application),

(10) Drivers license number or, if the applicant does not have a drivers license number, the last four digits of the applicant's social security number,

and any other information the State Board finds is necessary to enable officials of the county where the person resides to satisfactorily process the application. The form shall require the applicant to state whether currently registered to vote anywhere, and at what address, so that any prior registration can be cancelled. The portions of the form concerning race and ethnicity shall include as a choice any category shown by the most recent decennial federal census to compose at least one percent (1%) of the total population of North Carolina. The county board shall make a diligent effort to complete for the registration records any information requested on the form that the applicant does not complete, but no application shall be denied because an applicant does not state race, ethnicity, gender, or telephone number. The application shall conspicuously state that provision of the applicant's telephone number is optional. If the county board maintains voter records on computer, the free list provided under this subsection shall include telephone numbers if the county board enters the telephone number into its computer records of voters.

(a1) No Drivers License or Social Security Number Issued. – The State Board shall assign a unique identifier number to an applicant for voter registration if the applicant has not been issued either a current and valid drivers license or a social security number. That unique identifier number shall serve to identify that applicant for voter registration purposes.

(b) Notice of Requirements, Attestation, Notice of Penalty, and Notice of Confidentiality. – The form required by G.S. 163-82.3(a) shall contain, in uniform type, the following:

(1) A statement that specifies each eligibility requirement (including citizenship) and an attestation that the applicant meets each such requirement, with a requirement for the signature of the applicant, under penalty of a Class I felony under G.S. 163-275(13).

(2) A statement that, if the applicant declines to register to vote, the fact that the applicant has declined to register will remain confidential and will be used only for voter registration purposes.

(3) A statement that, if the applicant does register to vote, the office at which the applicant submits a voter registration application will remain confidential and will be used only for voter registration purposes.

(c) Party Affiliation or Unaffiliated Status. – The application form described in G.S. 163-82.3(a) shall provide a place for the applicant to state a preference to be affiliated with one of the political parties in G.S. 163-96, or a preference to be an "unaffiliated" voter. Every person who applies to register shall state his preference. If the applicant fails to declare a preference for a party or for unaffiliated status, that person shall be listed as "unaffiliated", except that if the person is already registered to vote in the county and that person's registration already contains a party affiliation, the county board shall not change the registrant's status to "unaffiliated" unless the registrant clearly indicates a desire in accordance with G.S. 163-82.17 for such a change. An unaffiliated registrant shall not be eligible to vote in any political party primary, except as provided in G.S. 163-119, but may vote in any other primary or general election. The application form shall so state.

(d) Citizenship and Age Questions. – Voter registration application forms shall include all of the following:

(1) The question "Are you a citizen of the United States of America?" and boxes for the applicant to check to indicate whether the applicant is or is not a citizen of the United States.

(2) The question "Will you be 18 years of age on or before election day?" and boxes for the applicant to check to indicate whether the applicant will be 18 years of age or older on election day.

(3) The statement "If you checked 'no' in response to either of these questions, do not complete this form."

(e) Correcting Registration Forms. – If the voter fails to answer the question set out in subdivision (1) of subsection (d) of this section, the voter shall be notified of the omission and given the opportunity to complete the form at any time before casting a vote in the election on election day. If the voter corrects that omission within that time, the voter may vote in the election. (1901, c. 89, s. 12; Rev., s. 4319; C.S., s. 5940; Ex. Sess. 1920, c. 93; 1933, c. 165, s. 5; 1951, c. 984, s. 1; 1953, c. 843; 1955, c. 800; c. 871, s. 2; 1957, c. 784, s. 2; 1963, c. 303, s. 1; 1967, c. 775, s. 1; 1971, c. 1166, s. 6; 1973, c. 793, s. 27; c. 1223, s. 3; 1975, c. 234, s. 2; 1979, c. 135, s. 1; c. 539, ss. 1-3; c. 797, ss. 1, 2; 1981, c. 222; c. 308, s. 2; 1991 (Reg. Sess., 1992), c. 1044, s. 18(a); 1993, c. 74, s. 1; 1993 (Reg. Sess., 1994), c. 762, s. 2; 1999-424, s. 7(c), (d); 1999-453, s. 8(a); 2003-226, s. 9; 2004-127, s. 4; 2005-428, s. 15.)

**§ 163-82.5. Distribution of application forms.**

The State Board of Elections shall make the forms described in G.S. 163-82.3 available for distribution through governmental and private entities, with particular emphasis on making them available for organized voter registration drives. (1991 (Reg. Sess., 1992), c. 1044, s. 18(a); 1993, c. 74, s. 1; 1993 (Reg. Sess., 1994), c. 762, s. 2.)

**§ 163-82.6. Acceptance of application forms.**

(a) How the Form May Be Submitted. – The county board of elections shall accept any form described in G.S. 163-82.3 if the applicant submits the form by mail, facsimile transmission, transmission of a scanned document, or in person. The applicant may delegate the submission of the form to another person. Any person who communicates to an applicant acceptance of that delegation shall deliver that form so that it is received by the appropriate county board of elections in time to satisfy the registration deadline in subdivision (1) or (2) of subsection (c) of this section for the next election. It shall be a Class 2 misdemeanor for any person to communicate to the applicant acceptance of that delegation and then fail to make a good faith effort to deliver the form so that it is received by the county board of elections in time to satisfy the registration deadline in subdivision (1) or (2) of subsection (c) of this section for the next election. It shall be an affirmative defense to a charge of failing to make a good faith effort to deliver a delegated form by the registration deadline that the delegatee informed the applicant that the form would not likely be delivered in time for the applicant to vote in the next election. It shall be a Class 2 misdemeanor for any person to sell or attempt to sell a completed voter registration form or to condition its delivery upon payment.

(b) Signature. – The form shall be valid only if signed by the applicant. An electronically captured image of the signature of a voter on an electronic voter registration form offered by a State agency shall be considered a valid signature for all purposes for which a signature on a paper voter registration form is used.

(c) Registration Deadlines for an Election. – In order to be valid for an election, the form:

(1) If submitted by mail, must be postmarked at least 25 days before the election, except that any mailed application on which the postmark is missing or unclear is validly submitted if received in the mail not later than 20 days before the election,

(2) If submitted in person, by facsimile transmission, or by transmission of a scanned document, must be received by the county board of elections by a time established by that board, but no earlier than 5:00 P.M., on the twenty-fifth day before the election,

(3) If submitted through a delegatee who violates the duty set forth in subsection (a) of this section, must be signed by the applicant and given to the delegatee not later than 25 days before the election, except as provided in subsection (d) of this section.

(c1) If the application is submitted by facsimile transmission or transmission of a scanned document, a permanent copy of the completed, signed form shall be delivered to the county board no later than 20 days before the election.

(d) Instances When Person May Register and Vote on Election Day. – If a person has become qualified to register and vote between the twenty-fifth day before an election and election day, then that person may apply to register on election day by submitting an application form described in G.S. 163-82.3 (a) or (b) to:

(1) A member of the county board of elections;

(2) The county director of elections; or

(3) The chief judge or a judge of the precinct in which the person is eligible to vote,

and, if the application is approved, that person may vote the same day. The official in subdivisions (1) through (3) of this subsection to whom the application is submitted shall decide whether the applicant is eligible to vote. The applicant shall present to the official written or documentary evidence that the applicant is the person he represents himself to be. The official, if in doubt as to the right of the applicant to register, may require other evidence satisfactory to that official as to the applicant's qualifications. If the official determines that the person is eligible, the person shall be permitted to vote in the election and the county board shall add the person's name to the list of registered voters. If the official denies the application, the person shall be permitted to vote a challenged ballot under the provisions of G.S. 163-88.1, and may appeal the denial to the full county board of elections. The State Board of Elections shall promulgate rules for the county boards of elections to follow in hearing appeals for denial of election day applications to register. No person shall be permitted to register on the day of a second primary unless he shall have become qualified to register and vote between the date of the first primary and the date of the succeeding second primary.

(e) For purposes of subsection (d) of this section, persons who "become qualified to register and vote" during a time period:

(1) Include those who during that time period are naturalized as citizens of the United States or who are restored to citizenship after a conviction of a felony; but

(2) Do not include persons who reach the age of 18 during that time period, if those persons were eligible to register while 17 years old during an earlier period. (1901, c. 89, ss. 18, 21; Rev., ss. 4322, 4323; C.S., ss. 5946, 5947; 1923, c. 111, s. 3; 1933, c. 165, s. 5; 1947, c. 475; 1953, c. 843; 1955, c. 800; 1957, c. 784, ss., 3, 4; 1961, c. 382; 1963, c. 303, ss. 1, 2; 1967, c. 761, s. 3; c. 775, s. 1; 1969, c. 750, ss. 1, 2; 1977, c. 626, s. 1; 1979, c. 539, s. 5; c. 766, s., 2; 1981, c. 33, s. 2; 1981 (Reg. Sess., 1982), c. 1265, s. 6; 1983, c. 553; 1985, c. 260, s. 1; 1991, c. 363, s. 1; 1991 (Reg. Sess., 1992), c. 1032, s. 1; 1991 (Reg. Sess., 1992), c. 1044, s. 18(a); 1993, c.

74, s. 1; 1993 (Reg. Sess., 1994), c. 762, s. 2; 1995, c. 243, s. 1; 1997-456, s. 27; 1999-426, s. 1(a), (b); 2001-315, s. 1; 2001-319, s. 6(a); 2003-226, s. 4; 2004-127, s. 9(a).)

**§ 163-82.7. Verification of qualifications and address of applicant; denial or approval of application.**

(a) Tentative Determination of Qualification. – When a county board of elections receives an application for registration submitted pursuant to G.S. 163-82.6, the board either:

(1) Shall make a determination that the applicant is not qualified to vote at the address given, or

(2) Shall make a tentative determination that the applicant is qualified to vote at the address given, subject to the mail verification notice procedure outlined in subsection (c) of this section

within a reasonable time after receiving the application.

(b) Denial of Registration. – If the county board of elections makes a determination pursuant to subsection (a) of this section that the applicant is not qualified to vote at the address given, the board shall send, by certified mail, a notice of denial of registration. The notice of denial shall contain the date on which registration was denied, and shall be mailed within two business days after denial. The notice of denial shall inform the applicant of alternatives that the applicant may pursue to exercise the franchise. If the applicant disagrees with the denial, the applicant may appeal the decision under G.S. 163-82.18.

(c) Verification of Address by Mail. – If the county board of elections tentatively determines that the applicant is qualified to vote at the address given, then the county board shall send a notice to the applicant, by nonforwardable mail, at the address the applicant provides on the application form. The notice shall state that the county will register the applicant to vote if the Postal Service does not return the notice as undeliverable to the county board. The notice shall also inform the applicant of the precinct and voting place to which the applicant will be assigned if registered.

(d) Approval of Application. – If the Postal Service does not return the notice as undeliverable, the county board shall register the applicant to vote.

(e) Second Notice if First Notice Is Returned as Undeliverable. – If the Postal Service returns the notice as undeliverable, the county board shall send a second notice by nonforwardable mail to the same address to which the first was sent. If the second notice is not returned as undeliverable, the county board shall register the applicant to vote.

(f) Denial of Application Based on Lack of Verification of Address. – If the Postal Service returns as undeliverable the notice sent by nonforwardable mail pursuant to subsection (e) of this section, the county board shall deny the application. The county board need not try to notify the applicant further.

(g) Voting When Verification Process Is Incomplete. – In cases where an election occurs before the process of verification outlined in this section has had time to be completed, the county board of elections shall be guided by the following rules:

(1) If the county board has made a tentative determination that an applicant is qualified to vote under subsection (a) of this section, then that person shall not be denied the right to vote in person in an election unless the Postal Service has returned as undeliverable two notices to the applicant: one mailed pursuant to subsection (c) of this section and one mailed pursuant to subsection (e) of this section. This subdivision does not preclude a challenge to the voter's qualifications under Article 8 of this Chapter.

(2) If the Postal Service has returned as undeliverable a notice sent within 25 days before the election to the applicant under subsection (c) of this section, then the applicant may vote only in person in that first election and may not vote by absentee ballot except in person under G.S. 163-227.2. The county board of elections shall establish a procedure at the voting site for:

a. Obtaining the correct address of any person described in this subdivision who appears to vote in person; and

b. Assuring that the person votes in the proper place and in the proper contests.

If a notice mailed under subsection (c) or subsection (e) of this section is returned as undeliverable after a person has already voted by absentee ballot, then that person's ballot may be challenged in accordance with G.S. 163-89.

(3) If a notice sent pursuant to subsection (c) or (e) of this section is returned by the Postal Service as undeliverable after a person has already voted in an election, then the county board shall treat the person as a registered voter but shall send a confirmation mailing pursuant to G.S. 163-82.14(d)(2) and remove or retain the person on the registration records in accordance with that subdivision. (1991 (Reg. Sess., 1992), c. 1044, s. 18(a); 1993, c. 74, s. 1; 1993 (Reg. Sess., 1994), c. 762, s. 2; 1999-455, s. 16.)

**§ 163-82.8. Voter registration cards.**

(a) Authority to Issue Card. – With the approval of the board of county commissioners, the county board of elections may issue to each voter in the county a voter registration card, or may issue cards to all voters registered after January 1, 1995.

(b) Content and Format of Card. – At a minimum, the voter registration card shall:

(1) List the voter's name, address, and voting place;

(2) Contain the address and telephone number of the county board of elections, along with blanks to report a change of address within the county, change of name, and change of party affiliation; and

(3) Be wallet size.

No voter registration card may be issued by a county board of elections unless the State Board of Elections has approved the format of the card.

(c) Ways County Board and Registrant May Use Card. – If the county board of elections issues voter registration cards, the county board may use that card as a notice of tentative approval of the voter's application pursuant to G.S. 163-82.7(c), provided that the mailing contains the statements and information required in that subsection. The county board may also satisfy the requirements of G.S. 163-82.15(b), 163-82.16(b), or 163-82.17(b) by sending the registrant a replacement of the voter registration card to verify change of address, change of name, or change of party affiliation. A registrant may use the card to report a change of address, change of name, or change of party affiliation, satisfying G.S. 163-82.15, 163-82.16, or 163-82.17.

(d) Card as Evidence of Registration. – A voter registration card shall be evidence of registration but shall not preclude a challenge as permitted by law.

(e) Display of Card May Not Be Required to Vote. – No county board of elections may require that a voter registration card be displayed in order to vote. (1901, c. 89, ss. 18, 21; Rev., ss. 4322, 4323; C.S., ss. 5946, 5947; 1923, c. 111, s. 3; 1933, c. 165, s. 5; 1947, c. 475; 1953, c. 843; 1955, c. 800; 1957, c. 784, ss. 3, 4; 1961, c. 382; 1963, c. 303, ss. 1, 2; 1967, c. 761, s. 3; c. 775, s. 1; 1969, c. 750, ss. 1, 2; 1977, c. 626, s. 1; 1979, c. 539, s. 5; c. 766, s. 2; 1981, c. 33, s. 2; 1981 (Reg.

Sess., 1982), c. 1265, s. 6; 1983, c. 553; 1985, c. 260, s. 1; 1991, c. 363, s. 1; 1991 (Reg. Sess., 1992), c. 1032, s. 1; 1993 (Reg. Sess., 1994), c. 762, s. 2.)

**§ 163-82.9. Cancellation of prior registration.**

If an applicant indicates on an application form described in G.S. 163-82.3 a current registration to vote in any other county, municipality, or state, the county board of elections, upon registering the person to vote, shall send a notice to the appropriate officials in the other county, municipality, or state and shall ask them to cancel the person's voter registration there. If an applicant completes an application form described in G.S. 163-82.3 except that the applicant neglects to complete the portion of the form that authorizes cancellation of previous registration in another county, the State Board of Elections shall notify the county board of elections in the previous county of the new registration, and the board in the previous county shall cancel the registration. The State Board of Elections shall adopt rules to prevent disenfranchisement in the implementation of this section. Those rules shall include adequate notice to the person whose previous registration is to be cancelled. (1973, c. 793, s. 28; c. 1223, s. 4; 1977, c. 265, s. 3; 1983, c. 411, ss. 1, 2; 1993 (Reg. Sess., 1994), c. 762, s. 2; 1995, c. 509, s. 115; 2005-428, s. 9.)

**§ 163-82.10. Official record of voter registration.**

(a) Official Record. – The State voter registration system is the official voter registration list for the conduct of all elections in the State. A completed and signed registration application form, if available, described in G.S. 163-82.3, once approved by the county board of elections, becomes backup to the official registration record of the voter. Electronically captured images of the signatures of voters, full or partial social security numbers, dates of birth, and drivers license numbers that may be generated in the voter registration process, by either the State Board of Elections or a county board of elections, are confidential and shall not be considered public records and subject to disclosure to the general public under Chapter 132 of the General Statutes. Disclosure of drivers license numbers or dates of birth in violation of this subsection shall not give rise to a civil cause of action. This limitation of liability does not apply to the disclosure of drivers license numbers or dates of birth in violation of this subsection as a result of gross negligence, wanton conduct, or intentional wrongdoing that would otherwise be actionable. The county board of elections shall maintain custody of any paper hard copy registration records of voters in the county and shall keep them in a place where they are secure.

(a1) Paperless, Instant Electronic Transfer. – The application described in G.S. 163-82.3 may be either a paper hard copy or an electronic document.

(b) Access to Registration Records. – Upon request by that person, the county board of elections shall provide to any person a list of the registered voters of the county or of any precinct or precincts in the county. The county board may furnish selective lists according to party affiliation, gender, race, date of registration, precinct name, precinct identification code, congressional district, senate district, representative district, and, where applicable, county commissioner district, city governing board district, fire district, soil and water conservation district, and voter history including primary, general, and special districts, or any other reasonable category. No list produced under this section shall contain a voter's date of birth. However, lists may be produced according to voters' ages. Both the following shall apply to all counties:

(1) The county board of elections shall make the voter registration information available to the public on electronic or magnetic medium. For purposes of this section, "electronic or magnetic medium" means any of the media in use by the State Board of Elections at the time of the request.

(2) Information requested on electronic or magnetic medium shall contain the following: voter name, county voter identification number, residential address, mailing address, sex, race, age but not date of birth, party affiliation, precinct name, precinct identification code, congressional district, senate district, representative district, and, where applicable, county commissioner district, city governing board district, fire district, soil and water conservation district, and any other district information available, and voter history including primary, general, and special districts, or any other reasonable category.

The county board shall require each person to whom a list is furnished to reimburse the board for the actual cost incurred in preparing it, except as provided in subsection (c) of this section. Actual cost for the purpose of this section shall not include the cost of any equipment or any imputed overhead expenses. When furnishing information under this subsection to a purchaser on a magnetic medium provided by the county board or the purchaser, the county board may impose a service charge of up to twenty-five dollars ($25.00).

(c) Free Lists. – A county board shall provide, upon written request, one free list of all the registered voters in the county to the State chair of each political party and to the county chair of each political party once in every odd-numbered year, once during the first six calendar months of every even-numbered year, and once during the latter six calendar months of every even-numbered year. Each free list shall include the name, address, gender, age but not date of birth, race, political affiliation, voting history, precinct, precinct name, precinct identification code, congressional district, senate district, representative district, and, where applicable, county commissioner district, city governing board district, fire district, soil and water conservation district, and voter history including primary, general, and special districts of each registered voter. All free lists shall be provided as soon as practicable on one of any electronic or magnetic media, but no later than 30 days after written request. Each State party chair shall provide the information on the media received from the county boards or a copy of the media containing the data itself to candidates of that party who request the data in writing. As used in this section, "political party" means a political party as defined in G.S. 163-96.

(d) Exception for Address of Certain Registered Voters. – Notwithstanding subsections (b) and (c) of this section, if a registered voter submits to the county board of elections a copy of a protective order without attachments, if any, issued to that person under G.S. 50B-3 or a lawful order of any court of competent jurisdiction restricting the access or contact of one or more persons with a registered voter or a current and valid Address Confidentiality Program authorization card issued pursuant to the provisions of Chapter 15C of the General Statutes, accompanied by a signed statement that the voter has good reason to believe that the physical safety of the voter or a member of the voter's family residing with the voter would be jeopardized if the voter's address were open to public inspection, that voter's address is a public record but shall be kept confidential as long as the protective order remains in effect or the voter remains a certified program participant in the Address Confidentiality Program. That voter's name, precinct, and the other data contained in that voter's registration record shall remain a public record. That voter's signed statement submitted under this subsection is a public record but shall be kept confidential as long as the protective order remains in effect or the voter remains a certified program participant in the Address Confidentiality Program. It is the responsibility of the voter to provide the county board with a copy of the valid protective order in effect or a current and valid Address Confidentiality Program authorization card issued pursuant to the provisions of Chapter 15C of the General Statutes. The voter's actual address shall be used for any election-related purpose by any board of elections. That voter's address shall be available for inspection by a law enforcement agency or by a person identified in a court order, if inspection of

the address by that person is directed by that court order. It shall not be a violation of this section if the address of a voter who is participating in the Address Confidentiality Program is discovered by a member of the public in public records disclosed by a county board of elections prior to December 1, 2001. Addresses required to be kept confidential by this section shall not be made available to the jury commission under the provisions of G.S. 9-2. (1901, c. 89, s. 83; Rev., s. 4382; C.S., s. 6016; 1931, c. 80; 1939, c. 263, s. 31/2; 1949, c. 916, ss. 6, 7; 1953, c. 843; 1955, c. 800; 1959, c. 883; 1963, c. 303, s. 1; 1965, c. 1116, s. 1; 1967, c. 775, s. 1; 1973, c. 793, ss. 22, 25; 1975, c. 12; c. 395; 1979, 2nd Sess., c. 1242; 1981, c. 39, s. 1; c. 87, s.1; c. 308, s. 1; c. 656; 1983, c. 218, ss. 1, 2; 1985, c. 211, ss. 1, 2; c. 472, s. 1; 1993 (Reg. Sess., 1994), c. 762, s. 2; 1995 (Reg. Sess., 1996), c. 688, s. 2; 2001-396, s. 1; 2002-171, s. 8; 2003-226, ss. 2, 3; 2003-278, s. 6; 2004-127, s. 17(c); 2005-428, s. 10(a), (b).)

**§ 163-82.10A. Permanent voter registration numbers.**

The statewide voter registration system shall assign to each voter a unique registration number. That number shall be permanent for that voter and shall not be changed or reassigned by the county board of elections. (2001-319, s. 8.1(a); 2003-226, s. 10.)

**§ 163-82.10B. Confidentiality of date of birth.**

Boards of elections shall keep confidential the date of birth of every voter-registration applicant and registered voter, except in the following situations:

(1) When a voter has filed notice of candidacy for elective office under G.S. 163-106, 163-122, 163-123, or 163-294.2, or 163-323, has been nominated as a candidate under G.S. 163-98 or G.S. 163-114, or has otherwise formally become a candidate for elective office. The exception of this subdivision does not extend to an individual who meets the definition of "candidate" only by beginning a tentative candidacy by receiving funds or making payments or giving consent to someone else to receive funds or transfer something of value for the purpose of exploring a candidacy.

(2) When a voter is serving in an elective office.

(3) When a voter has been challenged pursuant to Article 8 of this Chapter.

(4) When a voter-registration applicant or registered voter expressly authorizes in writing the disclosure of that individual's date of birth.

The disclosure of an individual's age does not constitute disclosure of date of birth in violation of this section.

The county board of elections shall give precinct officials access to a voter's date of birth where necessary for election administration, consistent with the duty to keep dates of birth confidential.

Disclosure of a date of birth in violation of this section shall not give rise to a civil cause of action. This limitation of liability does not apply to the disclosure of a date of birth in violation of this subsection as a result of gross negligence, wanton conduct, or intentional wrongdoing that would otherwise be actionable. (2004-127, s. 17(a).)

**§ 163-82.11. Establishment of statewide computerized voter registration.**

(a) Statewide System as Official List. – The State Board of Elections shall develop and implement a statewide computerized voter registration system to facilitate voter registration and to provide a central database containing voter registration information for each county. The system shall serve as the single system for storing and managing the official list of registered voters in the State. The system shall serve as the official voter registration list for the conduct of all elections in

the State. The system shall encompass both software development and purchasing of the necessary hardware for the central and distributed-network systems.

(b) Uses of Statewide System. – The State Board of Elections shall develop and implement the system so that each county board of elections can do all the following:

(1) Verify that an applicant to register in its county is not also registered in another county.

(2) Be notified automatically that a registered voter in its county has registered to vote in another county.

(3) Receive automatically data about a person who has applied to vote at a drivers license office or at another public agency that is authorized to accept voter registration applications.

(c) Compliance With Federal Law. – The State Board of Elections shall update the statewide computerized voter registration list and database to meet the requirements of section 303(a) of the Help America Vote Act of 2002 and to reflect changes when citizenship rights are restored under G.S. 13-1.

(d) Role of County and State Boards of Elections. – Each county board of elections shall be responsible for registering voters within its county according to law. Each county board of elections shall maintain its records by using the statewide computerized voter registration system in accordance with rules promulgated by the State Board of Elections. Each county board of elections shall enter through the computer system all additions, deletions, and changes in its list of registered voters promptly to the statewide computer system.

(e) Cooperation on List for Jury Commission. – The State Board of Elections shall assist the Division of Motor Vehicles in providing to the county jury commission of each county, as required by G.S. 20-43.4, a list of all registered voters in the county and all persons in the county with drivers license records. (1993 (Reg. Sess., 1994), c. 762, s. 2; 2003-226, s. 6.)

**§ 163-82.12. Promulgation of guidelines relating to computerized voter registration.**

The State Board of Elections shall make all guidelines necessary to administer the statewide voter registration system established by this Article. All county boards of elections shall follow these guidelines and cooperate with the State Board of Elections in implementing guidelines. These guidelines shall include provisions for all of the following:

(1) Establishing, developing, and maintaining a computerized central voter registration file.

(2) Linking the central file through a network with computerized voter registration files in each of the counties.

(3) Interacting with the computerized drivers license records of the Division of Motor Vehicles and with the computerized records of other public agencies authorized to accept voter registration applications.

(4) Protecting and securing the data.

(5) Converting current voter registration records in the counties in computer files that can be used on the statewide computerized registration system.

(6) Enabling the statewide system to determine whether the voter identification information provided by an individual is valid.

(7) Enabling the statewide system to interact electronically with the Division of Motor Vehicles system to validate identification information.

(8) Enabling the Division of Motor Vehicles to provide real-time interface for the validation of the drivers license number and last four digits of the social security number.

(9) Enabling the statewide system to assign a unique identifier to each legally registered voter in the State.

(10) Enabling the State Board of Elections to assist the Division of Motor Vehicles in providing to the jury commission of each county, as required by G.S. 20-43.4, a list of all registered voters in the county and all persons in the county with drivers license records.

These guidelines shall not be considered to be rules subject to Article 2A of Chapter 150B of the General Statutes. However, the State Board shall publish in the North Carolina Register the guidelines and any changes to them after adoption, with that publication noted as information helpful to the public under G.S. 150B-21.17(a)(6). Copies of those guidelines shall be made available to the public upon request or otherwise by the State Board. (1993 (Reg. Sess., 1994), c. 762, s. 2; 2003-226, s. 7(a).)

**§ 163-82.14. List maintenance.**

(a) Uniform Program. – The State Board of Elections shall adopt a uniform program that makes a reasonable effort:

(1) To remove the names of ineligible voters from the official lists of eligible voters, and

(2) To update the addresses and other necessary data of persons who remain on the official lists of eligible voters.

That program shall be nondiscriminatory and shall comply with the provisions of the Voting Rights Act of 1965, as amended, and with the provisions of the National Voter Registration Act. The State Board of Elections, in addition to the methods set forth in this section, may use other methods toward the ends set forth in subdivisions (1) and (2) of this subsection, including address-updating services provided by the Postal Service. Each county board of elections shall conduct systematic efforts to remove names from its list of registered voters in accordance with this section and with the program adopted by the State Board.

(b) Death. – The Department of Health and Human Services shall furnish free of charge to the State Board of Elections every month, in a format prescribed by the State Board of Elections, the names of deceased persons who were residents of the State. The State Board of Elections shall distribute every month to each county board of elections the names on that list of deceased persons who were residents of that county. The Department of Health and Human Services shall base each list upon information supplied by death certifications it received during the preceding month. Upon the receipt of those names, each county board of elections shall remove from its voter registration records any person the list shows to be dead. The county board need not send any notice to the address of the person so removed.

(c) Conviction of a Felony. –

(1) Report of Conviction Within the State. – The clerk of superior court, on or before the fifteenth day of every month, shall report to the county board of elections of that county the name, county of residence, and residence address if available, of each individual against whom a final judgment of conviction of a felony has been entered in that county in the preceding calendar month. Any county board of elections receiving such a report about an individual who is a resident of another

county in this State shall forward a copy of that report to the board of elections of that county as soon as possible.

(2) Report of Federal Conviction. – The Executive Director of the State Board of Elections, upon receipt of a notice of conviction sent by a United States Attorney pursuant to section 8(g) of the National Voter Registration Act, shall notify the appropriate county boards of elections of the conviction.

(3) County Board's Duty Upon Receiving Report of Conviction. – When a county board of elections receives a notice pursuant to subdivision (1) or (2) of this subsection relating to a resident of that county and that person is registered to vote in that county, the board shall, after giving 30 days' written notice to the voter at his registration address, and if the voter makes no objection, remove the person's name from its registration records. If the voter notifies the county board of elections of his objection to the removal within 30 days of the notice, the chairman of the board of elections shall enter a challenge under G.S. 163-85(c)(5), and the notice the county board received pursuant to this subsection shall be prima facie evidence for the preliminary hearing that the registrant was convicted of a felony.

(d) Change of Address. – A county board of elections shall conduct a systematic program to remove from its list of registered voters those who have moved out of the county, and to update the registration records of persons who have moved within the county. The county board shall remove a person from its list if the registrant:

(1) Gives confirmation in writing of a change of address for voting purposes out of the county. "Confirmation in writing" for purposes of this subdivision shall include:

a. A report to the county board from the Department of Transportation or from a voter registration agency listed in G.S. 163-82.20 that the voter has reported a change of address for voting purposes outside the county;

b. A notice of cancellation received under G.S. 163-82.9; or

c. A notice of cancellation received from an election jurisdiction outside the State.

(2) Fails to respond to a confirmation mailing sent by the county board in accordance with this subdivision and does not vote or appear to vote in an election beginning on the date of the notice and ending on the day after the date of the second general election for the United States House of Representatives that occurs after the date of the notice. A county board sends a confirmation notice in accordance with this subdivision if the notice:

a. Is a postage prepaid and preaddressed return card, sent by forwardable mail, on which the registrant may state current address;

b. Contains or is accompanied by a notice to the effect that if the registrant did not change residence but remained in the county, the registrant should return the card not later than the deadline for registration by mail in G.S. 163-82.6(c)(1); and

c. Contains or is accompanied by information as to how the registrant may continue to be eligible to vote if the registrant has moved outside the county.

A county board shall send a confirmation mailing in accordance with this subdivision to every registrant after every congressional election if the county board has not confirmed the registrant's address by another means.

(3) Any registrant who is removed from the list of registered voters pursuant to this subsection shall be reinstated if the voter appears to vote and gives oral or written

affirmation that the voter has not moved out of the county but has maintained residence continuously within the county. That person shall be allowed to vote as provided in G.S. 163-82.15(f). (1953, c. 843; 1955, c. 800; 1963, c. 303, s. 1; 1965, c. 1116, s. 1; 1967, c. 775, s. 1; 1973, c. 793, ss. 25, 28; c. 1223, s. 4; 1975, c. 395; 1977, c. 265, s. 3; 1981, c. 39, s. 1; c. 87, s. 1; c. 308, s. 1; 1983, c. 411, ss. 1, 2; 1985, c. 211, ss. 1, 2; 1987, c. 691, s. 1; 1993 (Reg. Sess., 1994), c. 762, s. 2; 1997-443, s. 11A.117; 1999-453, s. 7(a), (b); 2001-319, ss. 8(a), 11; 2005-428, s. 14.)

**§ 163-82.15. Change of address within the county.**

(a) Registrant's Duty to Report. – No registered voter shall be required to re-register upon moving from one precinct to another within the same county. Instead, a registrant shall notify the county board of the change of address by the close of registration for an election as set out in G.S. 163-82.6(c). In addition to any other method allowed by G.S. 163-82.6, the form may be submitted by electronic facsimile, under the same deadlines as if it had been submitted in person. The registrant shall make the notification by means of a voter registration form as described in G.S. 163-82.3, or by another written notice, signed by the registrant, that includes the registrant's full name, former residence address, new residence address, and the registrant's attestation that the registrant moved at least 30 days before the next primary or election from the old to the new address.

(b) Verification of New Address by Mail. – When a county board of elections receives a notice that a registrant in that county has changed residence within the same county, the county board shall send a notice, by nonforwardable mail, to the registrant at the new address. The notice shall inform the registrant of any new precinct and voting place that will result from the change of address, and it shall state whether the registrant shall vote at the new voting place during the upcoming election or at a later election. If the Postal Service returns the county board's notice to the registrant as undeliverable, the county board shall either:

(1) Send a second notice by nonforwardable mail to the new address and, if it is returned as undeliverable, send to the registrant's old address a confirmation notice as described in G.S. 163-82.14(d)(2); or

(2) Send to the registrant's old address a confirmation notice as described in G.S. 163-82.14(d)(2) without first sending a second nonforwardable notice to the new address.

In either case, if the registrant does not respond to the confirmation notice as described in G.S. 163-82.14(d)(2), then the county board shall proceed with the removal of the registrant from the list of voters in accordance with G.S. 163-82.14(d).

(c) Board's Duty to Make Change. – If the county board confirms the registrant's new address in accordance with subsection (b) of this section, the county board shall as soon as practical change the record to reflect the new address.

(d) Unreported Move Within the Same Precinct. – A registrant who has moved from one address to another within the same precinct shall, notwithstanding failure to notify the county board of the change of address before an election, be permitted to vote at the voting place of that precinct upon oral or written affirmation by the registrant of the change of address before a precinct official at that voting place.

(e) Unreported Move to Another Precinct Within the County. – If a registrant has moved from an address in one precinct to an address in another precinct within the same county more than 30 days before an election and has failed to notify the county board of the change of address before the close of registration for that election, the county board shall permit that person to vote in that

election. The county board shall permit the registrant described in this subsection to vote at the registrant's new precinct, upon the registrant's written affirmation of the new address, or, if the registrant prefers, at a central location in the county to be chosen by the county board. If the registrant appears at the old precinct, the precinct officials there shall send the registrant to the new precinct or, if the registrant prefers, to the central location, according to rules which shall be prescribed by the State Board of Elections. At the new precinct, the registrant shall be processed by a precinct transfer assistant, according to rules which shall be prescribed by the State Board of Elections. Any voter subject to this subsection may instead vote a provisional ballot according to the provisions of G.S. 163-166.11.

(f) When Registrant Disputes Registration Records. – If the registration records indicate that the registrant has moved outside the precinct, but the registrant denies having moved from the address within the precinct previously shown on the records, the registrant shall be permitted to vote at the voting place for the precinct where the registrant claims to reside, if the registrant gives oral or written affirmation before a precinct official at that voting place.

(g) Precinct Transfer Assistants. – The county board of elections shall either designate a board employee or appoint other persons to serve as precinct transfer assistants to receive the election-day transfers of the voters described in subsection (e) of this section. In addition, board members and employees may perform the duties of precinct transfer assistants. The State Board of Elections shall promulgate uniform rules to carry out the provisions of this section, and shall define in those rules the duties of the precinct transfer assistant. (1979, c. 135, s. 2; 1983, c. 392, s. 2; 1984, Ex. Sess., c. 3, ss. 1, 2; 1987, c. 549, s. 1; 1989, c. 427; 1991, c. 12, s. 1; 1991 (Reg. Sess., 1992), c. 1032, s. 3; 1993 (Reg. Sess., 1994), c. 762, s. 2; 2001-314, s. 1; 2005-2, s. 3; 2006-262, s. 2.)

**§ 163-82.16. Change of name.**

(a) Registrant's Duty to Report. – If the name of a registrant is changed in accordance with G.S. 48-1-104, G.S. 50-12, or Chapter 101 of the General Statutes, or if a married registrant assumes the last name of the registrant's spouse, the registrant shall not be required to re-register, but shall report the change of name to the county board not later than the last day for applying to register to vote for an election in G.S. 163-82.6. The registrant shall report the change on a form described in G.S. 163-82.3 or on a voter registration card described in G.S. 163-82.8 or in another written statement that is signed, contains the registrant's full names, old and new, and the registrant's current residence address.

(b) Verification of New Name by Mail. – When a county board of elections receives a notice of name change from a registrant in that county, the county board shall send a notice, by nonforwardable mail, to the registrant's residence address. The notice shall state that the registrant's records will be changed to reflect the new name if the registrant does not respond that the name change is incorrect. If the Postal Service returns the county board's notice to the registrant as undeliverable, the county board shall send to the registrant's residence address a confirmation notice as described in G.S. 163-82.14(d)(2).

If the registrant does not respond to the confirmation notice as described in G.S. 163-82.14(d)(2), then the county board shall proceed with the removal of the registrant from the list of voters in accordance with G.S. 163-82.14(d).

(c) Board's Duty to Make Change. – If the county board confirms the registrant's address in accordance with subsection (b) of this section and the registrant does not deny making the application for the name change, the county board shall as soon as practical change the record of the registrant's name to conform to that stated in the application.

(d) Unreported Name Change. – A registrant who has not reported a name change in accordance with subsection (a) of this section shall be permitted to vote if the registrant reports the name change to the chief judge at the voting place, or to the county board along with the voter's application for an absentee ballot. (1979, c. 480; 1981, c. 33, s. 3; 1989 (Reg. Sess., 1990), c. 991, s. 3; 1991 (Reg. Sess., 1992), c. 1032, s. 2; 1993 (Reg. Sess., 1994), c. 762, s. 2; 1995, c. 457, s. 9.)

**§ 163-82.17. Change of party affiliation.**

(a) Registrant's Duty to Report. – Any registrant who desires to have the record of his party affiliation or unaffiliated status changed on the registration list shall, no later than the last day for making application to register under G.S. 163-82.6 before the election, indicate the change on an application form as described in G.S. 163-82.3 or on a voter registration card described in G.S. 163-82.8. No registrant shall be permitted to change party affiliation or unaffiliated status for a primary, second primary, or special or general election after the deadline for registration applications for that election as set out in G.S. 163-82.6.

(b) Verification of Affiliation Change by Mail. – When a county board of elections receives a notice of change of party affiliation or unaffiliated status from a registrant in that county, the county board shall send a notice, by nonforwardable mail, to the registrant's residence address. The notice shall state that the registrant's records will be changed to reflect the change of status if the registrant does not respond by stating that he does not desire a change in status. The notice shall also inform the registrant of the time that the change of affiliation status will occur, and shall explain the provisions of subsection (d) of this section. If the Postal Service returns the county board's notice to the registrant as undeliverable, the county board shall send to the registrant's residence address a confirmation notice as described in G.S. 163-82.14(d)(2). If the registrant does not respond to the confirmation notice as described in G.S. 163-82.14(d)(2), then the county board shall proceed with the removal of the registrant from the list of voters in accordance with G.S. 163-82.14(d).

(c) Board's Duty to Make Change. – If the county board confirms the registrant's address in accordance with subsection (b) of this section and the registrant does not deny making the application to change affiliated or unaffiliated status, the county board of elections shall as soon as practical change the record of the registrant's party affiliation, or unaffiliated status, to conform to that stated in the application. Thereafter the voter shall be considered registered and qualified to vote in accordance with the change, except as provided in subsection (d) of this section.

(d) Deadline to Change Status Before Primary. – If a registrant applies to change party affiliation or unaffiliated status later than the last day for applying to register under G.S. 163-82.6 before a primary, the registrant shall not be entitled to vote in the primary of a party in which the registrant's status on that last day did not entitle the registrant to vote.

(e) Authority of County Board or Director to Make Correction. – If at any time the chairman or director of elections of the county board of elections is satisfied that an error has been made in designating the party affiliation of any voter on the registration records, then the chairman or director of elections of the county board of elections shall make the necessary correction after receiving from the voter a sworn statement as to the error and the correct status. (1939, c. 263, s. 6; 1949, c. 916, ss. 4, 8; 1953, c. 843; 1955, c. 800; c. 871, s. 3; 1957, c. 784, s. 5; 1963, c. 303, s. 1; 1967, c. 775, s. 1; 1973, c. 793, ss. 30, 31; c. 1223, s. 5; 1975, c. 234, s. 2; 1977, c. 130, s. 1; c. 626, s. 1; 1981, c. 33, s. 4; c. 219, s. 4; 1983, c. 576, s. 4; 1987, c. 408, ss. 1, 6; 1989, c. 635, s. 2; 1991 (Reg. Sess., 1992), c. 1032, s. 4; 1993 (Reg. Sess., 1994), c. 762, s. 2; 1995, c. 243, s. 1.)

**§ 163-82.18. Appeal from denial of registration.**

(a) Right to Appeal. – Any applicant who receives notice of denial of registration pursuant to G.S. 163-82.7 may appeal the denial within five days after receipt of the notice of denial. The county board of elections shall promptly set a date for a public hearing. The notice of appeal shall be in writing and shall be signed by the appealing party, shall include the appealing party's name, date of birth, address, and reasons for the appeal.

(b) Hearing Before County Board of Elections. – The county board of elections shall set a date and time for a public hearing and shall notify the appealing party. Every person appealing to the county board of elections from denial of registration shall be entitled to a prompt and fair hearing on the question of the denied applicant's right and qualifications to register as a voter. All cases on appeal to a county board of elections shall be heard de novo.

Two members of the county board of elections shall constitute a quorum for the purpose of hearing appeals on questions of registration. The decision of a majority of the members of the board shall be the decision of the board. The board shall be authorized to subpoena witnesses and to compel their attendance and testimony under oath, and it is further authorized to subpoena papers and documents relevant to any matters pending before the board.

If at the hearing the board shall find that the person appealing from a denial of registration meets all requirements of law for registration as a voter in the county, the board shall enter an order directing that the appellant be registered and assign the appellant to the appropriate precinct. Not later than five days after an appeal is heard before the county board of elections, the board shall give written notice of its decision to the appealing party.

(c) Appeal to Superior Court. – Any person aggrieved by a final decision of a county board of elections denying registration may at any time within 10 days from the date on which he receives notice of the decision appeal to the superior court of the county in which the board is located. Upon such an appeal, the appealing party shall be the plaintiff and the county board of elections shall be the defendant, and the matter shall be heard de novo in the superior court in the manner in which other civil actions are tried and disposed of in that court.

If the decision of the court is that the order of the county board of elections shall be set aside, then the court shall enter its order so providing and adjudging that the plaintiff is entitled to be registered as a qualified voter in the precinct in which he originally made application to register, and in such case the plaintiff's name shall be entered in the registration book of that precinct. The court shall not order the registration of any person in a precinct in which he did not apply to register prior to the proceeding in court.

From the judgment of the superior court an appeal may be taken to the appellate division in the same manner as other appeals are taken from judgments of that court in civil actions. (1957, c. 287, dd. 2-4; 1967, c. 775, s. 1; 1969, c. 44, s. 82; 1981, c. 542, ss. 1, 2; 1993 (Reg. Sess., 1994), c. 762, s. 2.)

**§ 163-82.19. Voter registration at drivers license offices; coordination on data interface.**

(a) Voter Registration at Drivers License Offices. – The Division of Motor Vehicles shall, pursuant to the rules adopted by the State Board of Elections, modify its forms so that any eligible person who applies for original issuance, renewal or correction of a drivers license, or special identification card issued under G.S. 20-37.7 may, on a part of the form, complete an application to register to vote or to update his registration if the voter has changed his address or moved from one precinct to another or from one county to another. The person taking the application shall ask if the applicant is a citizen of the United States. If the applicant states that the applicant is not a citizen of the United States, or declines to answer the question, the person taking the application shall inform the applicant that it is a felony for a person who is not a citizen of the United States to apply to

register to vote. Any person who willfully and knowingly and with fraudulent intent gives false information on the application is guilty of a Class I felony. The application shall state in clear language the penalty for violation of this section. The necessary forms shall be prescribed by the State Board of Elections. The form must ask for the previous voter registration address of the voter, if any. If a previous address is listed, and it is not in the county of residence of the applicant, the appropriate county board of elections shall treat the application as an authorization to cancel the previous registration and also process it as such under the procedures of G.S. 163-82.9. If a previous address is listed and that address is in the county where the voter applies to register, the application shall be processed as if it had been submitted under G.S. 163-82.9.

Registration shall become effective as provided in G.S. 163-82.7. Applications to register to vote accepted at a drivers license office under this section until the deadline established in G.S. 163-82.6(c)(2) shall be treated as timely made for an election, and no person who completes an application at that drivers license office shall be denied the vote in that election for failure to apply earlier than that deadline.

All applications shall be forwarded by the Department of Transportation to the appropriate board of elections not later than five business days after the date of acceptance, according to rules which shall be promulgated by the State Board of Elections. Those rules shall provide for a paperless, instant, electronic transfer of applications to the appropriate board of elections.

(b) Coordination on Data Interface. – The Department of Transportation jointly with the State Board of Elections shall develop and operate a computerized interface to match information in the database of the statewide voter registration system with the drivers license information in the Division of Motor Vehicles to the extent required to enable the State Board of Elections and the Department of Transportation to verify the accuracy of the information provided on applications for voter registration, whether the applications were received at drivers license offices or elsewhere. The Department of Transportation and the State Board shall implement the provisions of this subsection so as to comply with section 303 of the Help America Vote Act of 2002. The Department of Transportation shall enter into an agreement with the Commissioner of Social Security so as to comply with section 303 of the Help America Vote Act of 2002. (1983, c. 854, s. 1; 1991 (Reg. Sess., 1992), c. 1044, s. 19(a); 1993, c. 74, s. 2; 1993 (Reg. Sess., 1994), c. 762, s. 2; 1998-149, s. 11.1; 2001-319, s. 7(a); 2003-226, s. 7(b).)

**§ 163-82.20. Voter registration at other public agencies.**

(a) Voter Registration Agencies. – Every office in this State which accepts:

(1) Applications for a program of public assistance under Article 2 of Chapter 108A of the General Statutes or under Article 13 of Chapter 130A of the General Statutes;

(2) Applications for State-funded State or local government programs primarily engaged in providing services to persons with disabilities, with such office designated by the State Board of Elections; or

(3) Claims for benefits under Chapter 96 of the General Statutes, the Employment Security Law,

is designated as a voter registration agency for purposes of this section.

(b) Duties of Voter Registration Agencies. – A voter registration agency described in subsection (a) of this section shall, unless the applicant declines, in writing, to register to vote:

(1) Distribute with each application for service or assistance, and with each recertification, renewal, or change of address relating to such service or assistance:

a. The voter registration application form described in G.S. 163-82.3(a) or (b); or

b. The voter registration agency's own form, if it is substantially equivalent to the form described in G.S. 163-82.3(a) or (b) and has been approved by the State Board of Elections, provided that the agency's own form may be a detachable part of the agency's paper application or may be a paperless computer process, as long as the applicant is required to sign an attestation as part of the application to register.

(2) Provide a form that contains the elements required by section 7(a)(6)(B) of the National Voter Registration Act; and

(3) Provide to each applicant who does not decline to register to vote the same degree of assistance with regard to the completion of the registration application as is provided by the office with regard to the completion of its own forms.

(c) Provided that voter registration agencies designated under subdivision (a)(3) of this section shall only be required to provide the services set out in this subsection to applicants for new claims, reopened claims, and changes of address under Chapter 96 of the General Statutes, the Employment Security Law.

(d) Home Registration for Disabled. – If a voter registration agency provides services to a person with disability at the person's home, the voter registration agency shall provide the services described in subsection (b) of this section at the person's home.

(e) Prohibitions. – Any person providing any service under subsection (b) of this section shall not:

(1) Seek to influence an applicant's political preference or party registration, except that this shall not be construed to prevent the notice provided by G.S. 163-82.4(c) to be given if the applicant refuses to declare his party affiliation;

(2) Display any such political preference or party allegiance;

(3) Make any statement to an applicant or take any action the purpose or effect of which is to discourage the applicant from registering to vote; or

(4) Make any statement to an applicant or take any action the purpose or effect of which is to lead the applicant to believe that a decision to register or not to register has any bearing on the availability of services or benefits.

(f) Confidentiality of Declination to Register. – No information relating to a declination to register to vote in connection with an application made at a voter registration agency may be used for any purpose other than voter registration.

(g) Transmittal From Agency to Board of Elections. – Any voter registration application completed at a voter registration agency shall be accepted by that agency in lieu of the applicant's mailing the application. Any such application so received shall be transmitted to the appropriate board of elections not later than five business days after acceptance, according to rules which shall be promulgated by the State Board of Elections.

(h) Twenty-Five-Day Deadline for an Election. – Applications to register accepted by a voter registration agency shall entitle a registrant to vote in any primary, general, or special election unless the registrant shall have made application later than the twenty-fifth calendar day immediately preceding such primary, general, or special election, provided that nothing shall prohibit voter registration agencies from continuing to accept applications during that period.

(i) Ineligible Applications Prohibited. – No person shall make application to register to vote under this section if that person is ineligible to vote on account of age, citizenship, lack of residence for the period of time provided by law, or because of conviction of a felony. (1993 (Reg. Sess., 1994), c. 762, s. 2; 1995, c. 507, s. 25.10(c); 1995 (Reg. Sess., 1996), c. 608, s. 1.)

**(i) Sec. 1973gg-5 Voter registration agencies**

(a) Designation

(1) Each State shall designate agencies for the registration of voters in elections for Federal office.

(2) Each State shall designate as voter registration agencies -

(A) all offices in the State that provide public assistance; and

(B) all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities.

(3)(A) In addition to voter registration agencies designated under paragraph (2), each State shall designate other offices within the State as voter registration agencies.

(B) Voter registration agencies designated under subparagraph (A) may include -

(i) State or local government offices such as public libraries, public schools, offices of city and county clerks (including marriage license bureaus), fishing and hunting license bureaus, government revenue offices, unemployment compensation offices, and offices not described in paragraph (2)(B) that provide services to persons with disabilities; and

(ii) Federal and nongovernmental offices, with the agreement of such offices.

(4)(A) At each voter registration agency, the following services shall be made available:

(i) Distribution of mail voter registration application forms in accordance with paragraph (6).

(ii) Assistance to applicants in completing voter registration application forms, unless the applicant refuses such assistance.

(iii) Acceptance of completed voter registration application forms for transmittal to the appropriate State election official.

(B) If a voter registration agency designated under paragraph

(2)(B) provides services to a person with a disability at the person's home, the agency shall provide the services described in subparagraph (A) at the person's home.

(5) A person who provides service described in paragraph (4) shall not -

(A) seek to influence an applicant's political preference or party registration;

(B) display any such political preference or party allegiance;

(C) make any statement to an applicant or take any action the purpose or effect of which is to discourage the applicant from registering to vote; or

(D) make any statement to an applicant or take any action the purpose or effect of which is to lead the applicant to believe that a decision to register or not to register has any bearing on the availability of services or benefits.

(6) A voter registration agency that is an office that provides service or assistance in addition to conducting voter registration shall -

(A) distribute with each application for such service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance -

(i) the mail voter registration application form described in section 1973gg-7(a)(2) of this title, including a statement that -

(I) specifies each eligibility requirement (including citizenship);

(II) contains an attestation that the applicant meets each such requirement; and

(III) requires the signature of the applicant, under penalty of perjury; or

(ii) the office's own form if it is equivalent to the form described in section 1973gg-7(a)(2) of this title, unless the applicant, in writing, declines to register to vote;

(B) provide a form that includes -

(i) the question, "If you are not registered to vote where you live now, would you like to apply to register to vote here today?";

(ii) if the agency provides public assistance, the statement, "Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency.";

(iii) boxes for the applicant to check to indicate whether the applicant would like to register or declines to register to vote (failure to check either box being deemed to constitute a declination to register for purposes of subparagraph (C)), together with the statement (in close proximity to the boxes and in prominent type), "IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.";

(iv) the statement, "If you would like help in filling out the voter registration application form, we will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private."; and

(v) the statement, "If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register or in applying to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with _ _ _ _ _.", the blank being filled by the name, address, and telephone number of the appropriate official to whom such a complaint should be addressed; and

(C) provide to each applicant who does not decline to register to vote the same degree of assistance with regard to the completion of the registration application form as is provided by the office with regard to the completion of its own forms, unless the applicant refuses such assistance.

(7) No information relating to a declination to register to vote in connection with an application made at an office described in paragraph (6) may be used for any purpose other than voter registration.

(b) Federal Government and private sector cooperation

All departments, agencies, and other entities of the executive branch of the Federal Government shall, to the greatest extent practicable, cooperate with the States in carrying out subsection (a) of this section, and all nongovernmental entities are encouraged to do so.

(c) Armed Forces recruitment offices

(1) Each State and the Secretary of Defense shall jointly develop and implement procedures for persons to apply to register to vote at recruitment offices of the Armed Forces of the United States.

(2) A recruitment office of the Armed Forces of the United States shall be considered to be a voter registration agency designated under subsection (a)(2) of this section for all purposes of this subchapter.

(d) Transmittal deadline

(1) Subject to paragraph (2), a completed registration application accepted at a voter registration agency shall be transmitted to the appropriate State election official not later than 10 days after the date of acceptance.

(2) If a registration application is accepted within 5 days before the last day for registration to vote in an election, the application shall be transmitted to the appropriate State election official not later than 5 days after the date of acceptance.(Pub. L. 103-31, Sec. 7, May 20, 1993, 107 Stat. 80.)

### *1) EX. ORD. NO. 12926. IMPLEMENTATION OF NATIONAL VOTER REGISTRATION ACT OF 1993*

Ex. Ord. No. 12926, Sept. 12, 1994, 59 F.R. 47227, provided:

By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 301 of title 3, United States Code, and in order to ensure, as required by section 7(b) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg) (42 U.S.C. 1973gg-5(b)) ("the Act"), that departments, agencies, and other entities of the executive branch of the Federal Government cooperate with the States in carrying out the Act's requirements, it is hereby ordered as follows:

Section 1. Assistance to States. To the greatest extent practicable, departments, agencies, and other entities of the executive branch of the Federal Government that provide, in whole or in part, funding, grants, or assistance for, or with respect to the administration of, any program of public assistance or services to persons with disabilities within the meaning of section 7(a) of the Act shall:

(a) provide, to State agencies administering any such program, guidance for the implementation of the requirements of section 7 of the Act, including guidance for use and distribution of voter registration forms in connection with applications for service;

(b) assist each such State agency administering any such program with the costs of implementation of the Act (42 U.S.C. 1973gg et seq.), consistent with legal authority and the availability of funds, and promptly indicate to each State agency the extent to which such assistance will be made available; and

(c) designate an office or staff to be available to provide technical assistance to such State agencies.

Sec. 2. Armed Forces Recruitment Offices.

The Secretary of Defense is directed to work with the appropriate State elections authorities in each State to develop procedures for persons to apply to register to vote at Armed Forces recruitment offices as required by section 7(c) of the Act.

Sec. 3. Acceptance of Designation. To the greatest extent practicable, departments, agencies, or other entities of the executive branch of the Federal Government, if requested to be designated as a voter registration agency pursuant to section 7(a)(3)(B)(ii) of the Act, shall: (a) agree to such a designation if agreement is consistent with the department's, agency's, or entity's legal authority and availability of funds; and (b) ensure that all of its offices that are located in a particular State will have available to the public at least one of the national voter registration forms that are required under the Act to be available in that State.

William J. Clinton.

# Appendix J

# NVRA Update For County Departments of Social Services



# Success Of DSS

- Over 24,000 newly registered voters so far this year through DSS
- Twice as many registered voters than in the previous 2 years combined

# Coordination

- 94 County DSS offices have coordinated with the State Board of Elections to meet NVRA regulations by submitting weekly reports.
- Reporting directly to the State Board of Election allows us to follow voter registration trends and assist counties having difficulty with their NVRA activities.

# The Indispensable Site Coordinator

- **It is very important that each site designate a coordinator.**
- **The responsibilities are few but ESSENTIAL to daily voter registration activities.**

# Tasks of the Site Coordinator

- **Maintain adequate supplies, including:**
  - ✓ **properly coded Agency Voter Registration forms,**
  - ✓ **Agency Voter Registration Preference forms,**
  - ✓ **Voter Registration/Declination Transmittal forms,**

    **and current training materials.**
- **Train new or reassigned employees in the voter registration process.**
- **Resolve site questions and problems relating to the voter registration service.**
- **Monitor the day to day administration of the program.**
- **Ensure the timely and accurate transmittal of all voter registration materials (including declinations) within 5 business days of completion.**
- **Communicate with local and state election officials to ensure that materials are current.**

# UPDATE:  Preference Forms

- Declination forms are now called “preference forms”
- ALL clients must fill one out upon new service, renewal of service, recertification, and change of address
- The preference form is required by both Federal (42 USC 1973gg-5) and State (GS 163-82.20) law.

# Instructions and Requirements for Retaining Preference Forms

- Continued submission of voter registration forms and new transmittal forms to the proper county board of elections within 5 days
- Consistent weekly reporting of voter registration and preference form numbers to the State Board of Elections
- Contact the State Board of Elections to set up the arrangements with the County Board of Elections
- Meet the conditions of Preference Form storage…

# Storage Requirements

1. They must be stored as required by NC records retention regulation, which is based upon list maintenance which is required by April 15th of every odd numbered year, set out below:
   - On April 15, 2009, no declinations could be destroyed, since agencies would have started retaining them after the 2007 list maintenance.
   - After April 15, 2011, declinations executed prior to April 15, 2009 could be destroyed since they would have gone through two list maintenance time periods.
   - After April 15, 2013, declinations executed prior to April 15, 2011 could be destroyed since they would have gone through two list maintenance time periods.

# Rules of Retention: Availability

- Forms must be available to a county board of election to allow the research of provisional voters claiming registration at a county DSS office.
- Forms must be available to State Board of Election officials to confirm the required NVRA activities are being performed.

# New Emphasis

- Offering VR services during phone contacts where the client is giving the county DSS new information as to their address or of a new name, perhaps as a result of marriage.
- In phone contacts where there are information changes the client wants to make, send them a VR form with a prepared instruction sheet (The sheet will be prepared by the State Board of Elections for your suggested use).

# Change of Address

- Where a voter lives determines a client's voting districts - having a voter's current address and name is essential.
- Use the Voter Registration form as a change of information form.

# Requirements for Voter Registration

**Anyone can apply to register to vote or change their voting address or party affiliation when they are conducting business with your agency, including application for services, recertification, or renewal. They must meet the following requirements:**

- Must be a United States citizen.
- Must be a resident of North Carolina.
- Must be 18 years old by the time of the next election.
- If previously convicted of a felony, the registrant must be discharged from his/her felony conviction.  Note that citizenship is automatically restored upon completion of sentence, including probation & parole per N.C. law.

# Citizenship Concerns

- Only United States Citizens may register to vote.
- Proof of citizenship is not necessary.
- Do not assume that a person with an accent is not a citizen.
- **UNDER NO CIRCUMSTANCES** allow a client that ***you know*** not to be a U.S. citizen to register, even if they insist. It is a crime both for the person registering and those allowing it with the knowledge that the person is not a citizen. If you have difficulty with such persons, you can call the State Board of Elections and we will be happy to deal with them.

# Assistance to Clients

- You are required to offer the same level of assistance to clients filling out voter registration forms as you would offer for your own agency forms.
- If the person refuses assistance, he/she should be offered a private place to fill out the voter registration form, or he/she can take the form home for completion.

# *Completing Registration Forms at Home*

**The client may take the form to complete at a later time and should be told that the registration form can be returned in any of three ways:**

**1) MAIL the completed form to the board of elections office in the county where he or she lives,**
**2) HAND DELIVER the form to the county board of elections office, or have a third party return the form either to the county board of elections or to the agency, or**
**3) RETURN the form to the agency office for transmittal to the county board of elections.**

**A Preference Form showing denial would also be completed at this time as the client has declined to use the voter registration service as it is offered.**

# Confidentiality

- If a client registers in your office, the office name and location where the client registered is confidential and will be used only for voter registration purposes. This is mandated both by Federal and State law.
- In order to report the number of registered DSS clients to the federal government under the NVRA, the “01” Voter Registration form must be used.

# Political Activity

- When assisting a person to register to vote you may not display any political signs or slogans. You may not wear any political apparel or buttons.
- You may not give advice or information about political parties or persons.
- You may not attempt to influence the political party chosen by the applicant.
- Be careful that the individual makes a voluntary attempt to register to vote. He/she should be assured that this decision will not affect the level of service offered at the agency

# Required Fields on VR Form

- Citizenship box and age box must be checked, if the applicant checks “no” to either he/she should go no further.
- First and last name
- Date of Birth
- Residence address
- Driver’s License Number or the last four digits of the applicant’s social security number.  If the applicant has neither a NCDL or SSN, the State Board of Elections will provide a unique ID to the voter.
- Signature and date at the bottom of the form.
- Race, place of birth, and ethnicity are useful to boards of elections but are NOT required fields.

# Issues of Residence

- Register homeless persons where they sleep on the provided map section of the VR form
- Register at the physical address of Group Homes or other facilities
- Physical Residence Address, can not register at a PO Box

# Ordering VR Supplies

- **Download the North Carolina Voter Registration Materials Order Form from the SBOE website, www.sboe.state.nc.us , or call 1(866) 522-4723(toll free) to request a copy.**

- **Complete all fields in the form and submit completed forms by:**
  - ✓ **Fax to the state board office at 919-715-0135 or the respective county board office**
  - ✓ **Email – davy.lowman@ncmail.net**
  - ✓ **Mail – NC State Board of Elections, PO Box 27255, Raleigh N.C., 27611**

# Accountability

We desire feedback from county DSS personnel in order to make the NVRA process more efficient and less burdensome on agencies. Through the State Division of Social Services at DHHS this can indirectly help county DSS offices.

Understanding the independence of county DSS offices, we would invite regular contact with a county DSS organization.

# State Board of Elections Contact

- Training and other information for Voter Registration Agencies can be found on our website:

  www.sboe.state.nc.us/agency/agency.htm

- To speak to Davy Lowman directly, call (919) 715-1830 or by email:

  davy.lowman@ncmail.net.

- If Mr. Lowman is not available, contact Luis Thompson at (919) 715-8213 or luis.thompson@ncmail.net